**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANGELICA S., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:25-cv-1405 |
| | ) |
| U.S. DEPARTMENT OF HEALTH AND | ) |
| HUMAN SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

STANDARD OF REVIEW ...................................................................................................8

ARGUMENT.......................................................................................................................10

    A.    The Proposed Class Members Are So Numerous That Joinder Is Impracticable.................10

    B.    The Proposed Class Presents Common Questions of Law and Fact .....................................13

    C.    Plaintiffs' Claims Are Typical of the Claims of the Members of the Proposed Class...........16

    D.    Plaintiffs Will Adequately Protect the Interests of the Proposed Class and Counsel are Qualified to Litigate this Action ................................................................................................18

    E.    Class Certification Under Rule 23(b)(2) is Appropriate.......................................................19

    F.    The Proposed Class is Sufficiently Definite and Ascertainable ...........................................21

    G.    Alternatively, Class Certification is Appropriate Under Rule 23(b)(1)(A) ..........................23

    H.    The Court Should Designate Plaintiffs' Counsel as Class Counsel......................................24

CONCLUSION ....................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020) ....................................................14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................................................19

*Berge v. United States*, 949 F. Supp. 2d 36 (D.D.C. 2013)................................................................10

*Bond v. Fleet Bank (RI), N.A.*, No. 1-177, 2002 WL 31500393 (D.R.I. Oct. 10, 2002)....................10

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019) ..............................................9, 10, 20

*Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003)............................................14, 16, 20

*Charles H. v. District of Columbia*, No. 21-cv-00997-CJN, 2021 WL 2946127 (D.D.C. June 16, 2021)..................................................................................................................................10

Class Cert. Order, *J.E.C.M. v. Hayes*, No. 1:19-cv-903 (E.D. Va. Apr. 26, 2019), ECF No. 138, *amended by* ECF No. 149 (E.D. Va. May 2, 2019) .......................................................................16

\*Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68 (D.D.C. 2015).....................passim

\*D.L. v. District of Columbia*, 302 F.R.D. 1 (D.D.C. 2013), *vacated on other grounds*, 713 F.3d 120 (D.C. Cir. 2013)............................................................................................................12, 20, 21

*Damus v. Neilsen*, 313 F. Supp. 3d 317 (D.D.C. 2018) ........................................................10, 15, 17

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) ...............................................................17

*Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3 (D.D.C. 2010) .............................................................25

*Feng Wang v. Pompeo*, 354 F. Supp. 3d 13 (D.D.C. 2018) ..............................................................10

*Franklin v. Barry*, 909 F. Supp. 21 (D.D.C. 1995) ..........................................................................23

*Garnett v. Zeilinger*, 301 F. Supp. 3d 199 (D.D.C. 2018) ........................................................17, 18

*Garza v. Hargan*, 304 F. Supp. 3d 145 (D.D.C. 2018), *aff'd in part, vacated in part on other grounds, sub nom. J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) ............................................11, 13

*Healthy Futures of Tex. v. U.S. Dep't of Health & Hum. Servs.,* 326 F.R.D. 1 (D.D.C. 2018)..........19

*Hoyte v. District of Columbia,* 325 F.R.D. 485 (D.D.C. 2017)....................................................11, 17

*Huashan Zhang v. U.S. Citizenship & Immigr. Servs.,* 344 F. Supp. 3d 32 (D.D.C. 2018), *aff'd*, 978 F.3d 1314 (D.C. Cir. 2020) ................................................................................21, 23

*\*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019)..................................................................12, 17, 21

*J.E.C.M. v. Dunn Marcos*, 689 F. Supp. 3d 180 (E.D. Va. 2023) ....................................................21

*Kirwa v. U.S. Dept. of Defense*, 285 F. Supp. 3d 21 (D.D.C. 2017)................................................10

*Larionoff v. United States*, 533 F.2d 1167 (D.C. Cir. 1976) ...........................................................23

*Lewis v. U.S. Parole Comm'n,* 743 F. Supp. 3d 181 (D.D.C. 2024) ..................................................9

*Lucas R. v. Azar*, Case No. CV 18-5741-DMG (PLAx), 2018 WL 7200716 (C.D. Cal. Dec. 27, 2018)..................................................................................................................................16, 17

*Lucas R. v. Becerra*, Case No. CV 18-5741-DMG (PLAx), 2022 WL 2177454 (C.D. Cal. Mar. 11, 2022)..........................................................................................................................................21

*McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161 (1st Cir. 1987) .........................................11

*Mons v. McAleenan*, No. 19-1593 (JEB), 2019 WL 4225322 (D.D.C. Sept. 5, 2019).....................15

*Moore v. City of East Cleveland*, 431 U.S. 494 (1977) ....................................................................21

*Nat'l ATM Council v. Visa, Inc.*, No. 21-7109, 2023 WL 4743013 (D.D.C. 2023)............................9

*Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32 (D.D.C. 2017).............18

*Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28 (D.D.C. 2017) ................................................23

*\*P.J.E.S. by and through Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020) .......passim

*Pigford v. Glickman*, 182 F.R.D. 341 (D.D.C. 1998)........................................................................21

*\*R.I.L—R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) .............................................10, 13, 17, 20

*Ramirez v. U.S. Immig. & Customs Enf't*, 338 F. Supp. 3d 1 (D.D.C. 2018) ..................................21

*S.R. by and through Rosenbauer v. Penn. Dep't of Human Servs.*, 325 F.R.D. 103 (M.D. Pa. 2018) ..............................................................................................................................................14

*Steele v. United States*, 159 F. Supp. 3d 73 (D.D.C. 2016) ............................................................20

*Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014), *aff'd sub nom. In re District of Columbia*, 792 F.3d 96 (D.C. Cir. 2015) ...................................................................13, 15, 21, 22

*Twelve John Does v. District of Columbia*, 117 F.3d 571 (D.C. Cir. 1997).......................................18

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987) ...........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)................................................................passim

**Statutes**

5 U.S.C. § 552 ................................................................................................................................20

5 U.S.C. § 706 ................................................................................................................................20

8 U.S.C. § 1232 ........................................................................................................................21, 22

**Rules**

 Fed. R. Civ. P. 23 ....................................................................................................................passim

**Regulations**

45 C.F.R. § 410.1200........................................................................................................................22

45 C.F.R. § 410.1201 ..........................................................................................................1, 3, 11, 23

45 C.F.R. § 410.1202..........................................................................................................................2

45 C.F.R. § 410.1205.......................................................................................................................23

**Other Authorities**

Fact Sheets and Data, Office of Refugee Resettlement, *Average Length of Care* (current as of Apr. 7, 2025), https://perma.cc/SPV6-3KBD ...................................................................................3, 12

Fact Sheets and Data, Office of Refugee Resettlement, *Average Monthly Data* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3 ..............................................................................................11

Fact Sheets and Data, Office of Refugee Resettlement, *Referrals* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3 ........................................................................................................3, 4, 11

Fact Sheets and Data, Office of Refugee Resettlement, *Released to Sponsors* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3 ..............................................................................................11

iv

Office of Refugee Resettlement, *ORR Unaccompanied Alien Children Bureau Policy Guide* ("ORR Policy Guide") § 2.2.1, "Identification of Qualified Sponsors" (revised Aug. 1, 2024), https://perma.cc/SLH6-KWQX ...........................................................................3, 11, 22

Office of Refugee Resettlement, *Unaccompanied Alien Children Bureau Fact Sheet* (Apr. 4, 2025), *archived at* https://perma.cc/S68K-5283 ...................................................................4, 12, 13, 24

William A. Kandel, Cong. Rsch. Serv., R43599, *Unaccompanied Alien Children: An Overview* (Sept. 5, 2024), https://perma.cc/DRE3-M7TH ......................................................................3, 12

William B. Rubenstein et al., *Newberg and Rubenstein on Class Actions* § 3:7 (5th ed.) ................22

## INTRODUCTION

This is a class action challenging the Department of Health and Human Services' ("HHS")
improper issuance of an interim final rule ("IFR") and the Office of Refugee Resettlement's
("ORR") concurrent Policy Guide changes which have resulted in prolonged custody of
unaccompanied children who are denied release to their sponsors because of their sponsor's
immigration status. In addition to promulgating an arbitrary, capricious, and unlawful IFR on
March 25, 2025, that immediately rescinded 45 C.F.R. § 410.1201(b) without notice and comment,
ORR has also significantly increased the amount of personal information it is collecting from
sponsors and made changes to its Policy Guide Section 2.2.4 in violation of 45 C.F.R. §
410.1201(b).

As alleged in Plaintiffs' Complaint and demonstrated in Plaintiffs' Motion for a Preliminary
Injunction, Defendants' actions have slowed or stopped releases of nearly all unaccompanied
children from ORR custody, resulting in longer lengths of detention for children. The prolonged
detention and family separation caused by ORR's actions is causing serious harm to children.

Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23 and Local
Rule 23.1(b) of a class of all unaccompanied children who are or will be in the custody of HHS and
who (a) have or had a potential sponsor who has been identified; and (b) have not been released to
a sponsor in whole or in part because they are missing documents newly required on or after March
7, 2025. Plaintiffs easily satisfy the Rule 23 requirements for class certification. *First*, the proposed
class is numerous and consists of thousands of children across the country who are languishing in
federal immigration custody while their parents or relatives are unnecessarily prevented from
sponsoring them. *Second*, the proposed class members share common questions of law and fact
because they all challenge ORR's generally applicable change in policy—implemented through the
IFR and revisions to the ORR Policy Guide—effectively preventing sponsors who are unable to

1

provide newly required documents because of their, or their household members', immigration status from sponsoring children. *Third*, the claims of the named Plaintiffs are typical of the claims of the remainder of the proposed class because all potential class members are subjected to the same ORR policy. *Fourth*, the class representatives and their experienced counsel will fairly and adequately protect class interests as well as vigorously prosecute the action on behalf of the class.

Finally, certification is warranted under Rule 23(b)(2) because Defendants are acting in the same manner with respect to the class of detained immigrant children in their custody, such that a declaration and injunction with respect to the whole class is appropriate. Alternatively, certification under Rule 23(b)(1) is warranted because bringing separate actions by individual detained immigrant children is impracticable and would risk inconsistent outcomes and incompatible standards of conduct for Defendants.

The court should certify the proposed class and appoint class counsel to uniformly resolve the legality of Defendants' conduct. Class certification is likewise appropriate in order to provide uniform relief for the thousands of children currently harmed by the prolonged custody and family separation caused by Defendants' policies.

**FACTUAL BACKGROUND**

Plaintiffs incorporate by reference the facts submitted in the Complaint. ECF No. 1.

Briefly, the Unaccompanied Children Program Foundational Rule, codified in 2024, establishes that "ORR shall release a child from its custody without unnecessary delay" to sponsors in a specific order of preference with parents and legal guardians taking first priority and other family members following. 45 C.F.R. § 410.1202(c). Until the issuance of the IFR, the Foundational Rule clearly stated that "ORR shall not disqualify potential sponsors based solely on their immigration status and shall not collect information on immigration status of potential

sponsors for law enforcement or immigration enforcement related purposes." *Id*. § 410.1201(b) (2024).

Since fiscal year 2012, between 13,625 and 128,904 unaccompanied children have entered ORR custody each year. Fact Sheets and Data, Office of Refugee Resettlement, *Referrals* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3. In fiscal year 2024, 98,356 children were referred to ORR custody. *Id.* These children are usually released to closely related family sponsors in the United States, the majority of whom lack stable immigration status.[1] For example, in October 2024, of the 5,111 children released from ORR custody, 4,653 were released to parents, legal guardians, or non-parent primary caregivers and close relatives like adult siblings. *Id.*; *see also*, Office of Refugee Resettlement, *ORR Unaccompanied Alien Children Bureau Policy Guide* ("ORR Policy Guide") § 2.2.1, "Identification of Qualified Sponsors" (revised Aug. 1, 2024), https://perma.cc/SLH6-KWQX (describing sponsor categories).

Following ORR's recent change in its sponsorship requirements, which demand documentation only available to individuals with legal status, releases of children plummeted, and children began languishing in ORR custody. A total of 343 children were released to sponsors in March 2025, as compared to 1,858 children released in the previous month, a five-fold decrease in the number of children released from custody. Fact Sheets and Data, Office of Refugee Resettlement, *Referrals* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3. Additionally, the total time children spend in ORR custody has skyrocketed. In fiscal years 2021-2024, the average length of time a child remained in ORR custody ranged from 27 days to 33 days.[2] As of April 4,

---

[1] *See* William A. Kandel, Cong. Rsch. Serv., R43599, *Unaccompanied Alien Children: An Overview* 24 (Sept. 5, 2024), https://perma.cc/DRE3-M7TH (in 2018, ICE "estimated that 80% of active UAC sponsors and accompanying family members were residing in the country illegally").
[2] Fact Sheets and Data, Office of Refugee Resettlement, *Average Length of Care* (current as of Apr. 7, 2025), https://perma.cc/SPV6-3KBD.

2025, there were 2,223 unaccompanied children in ORR custody and the average length of time a

child remained in custody was 201 days.[3]

Sponsorship data also suggests that ORR's new policies are functionally keeping families

apart. In October 2024 through January 2025, over 90 percent of unaccompanied children were

released to parents, legal guardians, primary caregivers, or close relatives. Fact Sheets and Data,

Office of Refugee Resettlement, *Referrals* (current as of Apr. 7, 2025), https://perma.cc/23B8-

9FY3. In February 2025 that percentage fell to 87%; in March, it fell to 84%. *Id.* Concerningly, the

proportion of total releases to parents has fallen significantly in February and March, while releases

to more distant relatives have increased. *Id.* ORR all but stopped releasing children to their families

after issuing the IFR and implementing its mandatory sponsorship requirements for documents that

are often only available to those who can show legal immigration status.

Named Plaintiffs are all unaccompanied minors in the custody of ORR. Ex. 4, Decl. of

Angelica S. ¶¶ 2–3, April 16, 2025 ("Angelica S. Decl."); Ex. 5, Decl. of Eduardo M. ¶¶ 2–4, April

16, 2025 ("Eduardo M. Decl."); Ex. 6, Decl. of Liam W. ¶¶ 2–3, 6, May 6, 2025 ("Liam W. Decl.");

Ex. 7, Decl. of Leo B. ¶¶ 2–3, May 8, 2025 ("Leo B. Decl."); Ex. 8, Decl. of Xavier L. ¶¶ 2–3, May

6, 2025 ("Xavier L. Decl."). Each of the named Plaintiffs have sponsors who have identified

themselves to ORR, expressing a desire to sponsor their children or relatives and engaging in the

sponsorship process. Angelica S. Decl. ¶¶ 4, 6; Eduardo M. Decl. ¶¶ 4, 6; Liam W. Decl. ¶ 3; Leo

B. Decl. ¶ 8; Xavier L. Decl. ¶ 3; *see also,* Ex. 9, Decl. of Deisy S. ¶ 6, May 7, 2025 ("Deisy S.

Decl."); Ex. 10, Decl. of Rosa M. ¶ 3, April 29, 2025 ("Rosa M. Decl."); Ex. 11, Decl. of Sofia W. ¶

3, May 7, 2025 ("Sofia W. Decl."); Ex. 12, Decl. of Ximena L. ¶ 4, May 7, 2025 ("Ximena L.

Decl.").

---

[3] Office of Refugee Resettlement, *Unaccompanied Alien Children Bureau Fact Sheet* (Apr. 4,
2025), *archived at* https://perma.cc/S68K-5283.

Angelica S. is a 17-year-old girl being held in California, despite efforts by her sister, Deisy S., to sponsor her. Angelica S. Decl., ¶¶ 2–3, 6–7. After Angelica and her sister believed Deisy's sponsorship application was complete, ORR promulgated the IFR and now required Deisy to provide a form of identification she was not able to obtain because she did not have the necessary immigration status. *Id.*; Deisy S. Decl. ¶¶ 19–22. Angelica remains in ORR custody with her infant child—born while Angelica was held in ORR custody—instead of with her loving sister who wants to care for her. Angelica S. Decl. ¶¶ 4, 8; Deisy S. Decl. ¶¶ 21, 27. Further, Deisy has been unable to find anyone else to sponsor her sister so that Angelica and her infant daughter can be released, because everyone she has approached has been afraid to provide any information to ORR for fear it will be used for immigration enforcement purposes. Deisy S. Decl. ¶¶ 25, 28.

Eduardo M. is a 14-year-old boy in ORR custody with his 7-year-old brother in California. Eduardo M. Decl. ¶¶ 2, 4. Their mother, Rosa M., has been desperately trying to sponsor them since their placement in ORR custody at the end of January 2025. Rosa M. Decl. ¶¶ 2–3. After Rosa believed she had done everything required of her to complete the application, ORR changed its policies and imposed new requirements on Rosa, preventing the release of her sons to her. *Id*. at ¶¶ 3–9. Rosa was forced to find a different alternate caregiver who could satisfy the new identification requirements and applied for a waiver of the identification requirements for herself as the children's mother. *Id*. at ¶ 6. However, ORR then imposed an additional new requirement for proof of income documents that Rosa cannot obtain. *Id*. at ¶ 8. She instead provided her bank statements and a letter confirming her financial status as alternative forms of proof. *Id*. Although Rosa's sponsorship application was submitted with the waiver and alternative documents, she has not received any response, and Eduardo and his brother remain in custody apart from their mother. *Id*. at ¶ 9.

Liam W. is a 15-year-old boy in ORR custody in New York. Liam W. Decl. ¶¶ 2, 6. His mother, Sofia, began the sponsorship process right after he was placed in ORR custody in January 2025. Sofia W. Decl. ¶ 3. After having provided identification and income information for herself and all adult members of her household (Liam's two sisters and his cousin) and undergoing a home study evaluation, ORR changed its policies and imposed new identity documentation requirements on Sofia and all of her adult household members. *Id*. at ¶¶ 4–7. Neither Sofia nor her daughters or nephew have been able to obtain the requisite documentation because they cannot show the necessary immigration status to do so. *Id*. at ¶ 7. Liam remains in ORR custody apart from his mother and family.

Leo B. is a 17-year-old boy who was re-detained and placed in ORR custody for a second time in March 2025. Leo B. Decl. ¶ 3. He had previously been lived with his sister, who had successfully sponsored him in 2023 and who had taken good care of him since that time while Leo attended school and played soccer for his high school team. *Id.* at ¶¶ 5–7. His sister again applied to be his sponsor when he was returned to ORR custody. *Id.* at ¶ 8. Although she had been previously vetted and approved in 2023 and had shown herself to be a capable and loving caregiver for Leo over the intervening years, ORR refuses to release Leo to her because she cannot obtain the newly required identification documents that require stable legal immigration status to obtain. *Id.* at ¶ 9. Leo remains in ORR custody, unable to enjoy his stable and happy life with his sister in their community. *Id.* at ¶¶ 11–13.

Xavier L. is a 17-year-old boy held in ORR custody in New York with his 13-year-old sister. Xavier L. Decl. ¶ 2. Their mother, Ximena L., began the sponsorship process soon after they were placed in ORR custody in December 2024. *Id.* at ¶ 3; Ximena Decl. ¶ 4. Ximena submitted extensive documentation, including her passport as identification. Ximena Decl. ¶ 6. Ximena's partner lives with her, and he also provided his information at the outset of the sponsorship process,

in reliance on ORR's agreement not to share information with DHS for immigration enforcement purposes. *Id.* at ¶¶ 5, 10. In March, based on ORR's changed policies, ORR required new identification and proof of income documents from Ximena before ORR would release Xavier and his sister to her. *Id.* at ¶¶ 7-8, 10. Xavier and his little sister's reunification was stalled while Ximena worked to obtain necessary documents. *Id*. She was able to obtain a new form of identification, but she currently relies in part on her partner for financial support. *Id.* at ¶¶ 8, 10. Ximena's partner cannot obtain the requisite identification or provide the required proof of income documentation because of his immigration status. *Id.* at ¶ 10; Xavier L. Decl. ¶ 5. Fearful of turning 18 and being placed in ICE custody because his mother and her partner cannot provide the requisite documents, Xavier is now pursuing sponsorship with his aunt despite his strong desire to reunify and live with his mother. Xavier L. Decl. ¶ 6.

In sum, after their sponsors completed Family Reunification Applications and provided extensive evidence of their identities, relationship to the child, financial information, and other information ORR required in evaluating sponsor suitability, each child's reunification process was abruptly stalled or terminated because ORR promulgated the IFR and changed Policy Guide Section 2.2.4 to require new forms of documentation necessitating stable immigration status that was unavailable to their sponsor and/or other adults ORR requires to be involved in the sponsorship process. *See* Deisy S. Decl. ¶¶ 22–25 (sister's sponsorship application terminated due to lack of new compliant ID document); Angelica S. Decl. ¶¶ 6-7 (same); Rosa M. Decl. ¶¶ 5-6, 8 (mother's sponsorship application stalled due to delays obtaining a new compliant ID document, new alternate caregiver with compliant ID document, and a lack of new compliant proof of income documentation); Eduardo M. Decl. ¶ 6 (same); Sofia W. Decl. ¶ 7 (mother's reunification application stalled due to lack of new compliant ID documentation for her and her adult household members); Liam W. Decl. ¶ 7 (same); Leo B. Decl. ¶¶ 8–9 (sister's sponsorship application

terminated due to lack of new compliant ID document); Ximena L. Decl. ¶¶ 7–8, 10 (mother's sponsorship application stalled due to delays obtaining a new compliant ID document, and terminated due to lack of new compliant proof of income documentation from her financially supportive partner).

ORR imposes its new requirements on all adults in a sponsorship application, including household members and alternate caregivers. Among the named Plaintiffs, several children's sponsorship processes were stalled or terminated at least in part because other adults in their sponsor's applications were unable to provide the newly requisite documentation to ORR. *See* Rosa M. Decl. ¶ 6 (application stalled to locate new alternate caregiver with the requisite ID documentation); Sofia W. Decl. ¶ 7 (application stalled because household members lack requisite ID documentation).

Finally, fear that ORR will share information with DHS for immigration enforcement purposes has chilled sponsors from coming forward and has prevented at least one household member from providing additional information. *See* Deisy S. Decl. ¶ 28 (unable to find new sponsors willing to provide information to ORR for fear of immigration enforcement); Ximena L. Decl. ¶ 10 (household member afraid to provide additional information to ORR for fear it will be used for immigration enforcement purposes).

As a result of ORR's recent policy changes, generally applicable and applied to all named Plaintiffs, the named unaccompanied children remain detained in ORR custody and separated from their parents and other loving sponsors.

## STANDARD OF REVIEW

Class actions in federal court are governed by Federal Rule of Civil Procedure 23. Class certification demands a "rigorous analysis" under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The issue at this stage is not, however, whether

8

Plaintiffs can or have proven the elements of their claims on the merits. *See Lewis v. U.S. Parole Comm'n,* 743 F. Supp. 3d 181, 194 n.3 (D.D.C. 2024) ("If some objective legal standard applies in common to the entire class and will be dispositive of each plaintiff's success on the merits, plaintiffs need not prove that standard is met at the class certification stage."); *see also Nat'l ATM Council v. Visa, Inc*., No. 21-7109, 2023 WL 4743013, at \*5 (D.D.C. 2023) (probing merits of plaintiffs' claims permissible "insofar as necessary to ensure that the Rule 23 requirements are met"). Instead, class certification focuses on the nature of the issues and whether common proof can resolve them.

Federal Rule of Civil Procedure 23 requires a party moving for class certification to first satisfy four prerequisites: (1) the class must be so numerous that joinder of all the members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4); *see Brown v. District of Columbia*, 928 F.3d 1070, 1079 (D.C. Cir. 2019).

A class that meets all the requirements of Rule 23(a) should be certified if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Certification is proper under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Wal-Mart*, 564 U.S. at 360; *Brown*,

928 F.3d at 1082. The Court must appoint class counsel upon certifying a class. Fed. R. Civ. P. 23(g).

Finally, a class may be provisionally certified in conjunction with a motion for preliminary injunction "to achieve meaningful relief with respect to [an] allegedly unlawful policy." *Damus v. Nielsen*, 313 F.Supp.3d 317, 329 (D.D.C. 2018). This Court has repeatedly granted provisional class certifications for the purposes of preliminary injunctive relief. *See, e.g.*, *Kirwa v. U.S. Dept. of Defense*, 285 F. Supp. 3d 21, 44 (D.D.C. 2017); *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 16 n.1 (D.D.C. 2018). Like class certification, provisional class certification requires Plaintiffs to satisfy the requirements of Federal Rule of Civil Procedure 23, with the understanding that the certification may be "altered or amended" before a decision on the merits of the claims. *R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015) (citing *Berge v. United States*, 949 F. Supp. 2d 36, 49 (D.D.C. 2013)); *see also P.J.E.S. by and through Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 530–31 (D.D.C. 2020) (listing cases).

## ARGUMENT

### A.  The Proposed Class Members Are So Numerous That Joinder Is Impracticable

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability of joinder means only that it is difficult or inconvenient to join all class members, not that it is impossible to do so." *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (citing *Bond v. Fleet Bank (RI), N.A.*, No. 1-177, 2002 WL 31500393, at *4 (D.R.I. Oct. 10, 2002)). There is no minimum threshold number of members making joinder impracticable, but "'[i]n this district, courts have found that numerosity is satisfied when a proposed class has at least forty members.'" *Charles H. v. District of Columbia*, No. 21-cv-00997-CJN, 2021 WL 2946127, at *13 (D.D.C. June 16, 2021) (citations omitted).

Notably, "the Court need only find an approximation of the size of the class, not an exact number of putative class members." *Id.* at 76 (internal quotation marks and citations omitted). Plaintiffs must provide "some evidentiary basis beyond a bare allegation"[4] of a sufficiently numerous class, but the court may draw "reasonable inferences from the facts presented to find the requisite numerosity." *Id.* (citing *McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987)).

The proposed class is sufficiently numerous. In fiscal year 2024, 98,356 children were placed in ORR custody.[5] In March 2025, there were an average of 2,173 unaccompanied children in ORR custody on any given day throughout the month.[6] All of the children currently in ORR custody are subjected to the IFR's rescission of 45 C.F.R. § 410.1201(b), which had prohibited ORR from (1) disqualifying potential sponsors based solely on their immigration status; (2) collecting information on immigration status of potential sponsors for law enforcement or immigration enforcement related purposes; and (3) sharing immigration status information relating to potential sponsors with law enforcement or immigration enforcement related entities.

Moreover, the vast majority of children in ORR custody are released to close family member sponsors.[7] The recent drastic increase in children's time in custody suggests that the class of children impacted by ORR's changed policies is numerous. As of April 4, 2025, there were

---

[4] Plaintiffs may satisfy this evidentiary basis by relying upon a government agency's own records, as well as any expert affidavits. *See Garza v. Hargan*, 304 F. Supp. 3d 145, 155 (D.D.C. 2018), *aff'd in part, vacated in part on other grounds, sub nom. J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019); *Hoyte v. District of Columbia*, 325 F.R.D. 485, 492, 495–96 (D.D.C. 2017).

[5] Fact Sheets and Data, Office of Refugee Resettlement, *Referrals* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3.

[6] Fact Sheets and Data, Office of Refugee Resettlement, *Average Monthly Data* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3.

[7] Fact Sheets and Data, Office of Refugee Resettlement, *Released to Sponsors* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3; ORR Policy Guide § 2.2.1, "Identification of Qualified Sponsors," https://perma.cc/SLH6-KWQX (Category 1 sponsors are parents or legal guardians, and Category 2 sponsors are immediate relatives).

2,223 unaccompanied children in ORR's custody and the average length of time a child remained

in ORR's care was 201 days,[8] compared to a more typical average of 30 days,[9] suggesting that

releases to sponsors have widely been stalled. Historically, a majority of sponsors have lacked

stable legal immigration status.[10]

Based on this information, the Court can easily conclude that the number of unaccompanied

children in ORR custody seeking release to sponsors deemed ineligible because of their

immigration status is sufficiently large to satisfy the numerosity requirement. *See, e.g.*, *P.J.E.S.*,

502 F. Supp. 3d at 531 (relying on government and news reports of the number of immigrant

children apprehended or expelled together with a much smaller number children identified by

counsel as having been subjected to the policy at issue). Moreover, unaccompanied children are

regularly being referred to and released from ORR custody, adding to the impracticability of

joining future class members. *See J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (assessing

"non-numerical considerations that might make joinder impracticable, including the fluidity of

ORR custody, the dispersion of class members across the country, and their limited resources.");

*see also D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), *vacated on other grounds*,

713 F.3d 120 (D.C. Cir. 2013).

Additionally, the class members' inherent vulnerability as minors in federal custody who

are dependent on adults and have no independent financial resources also make joinder

impracticable. *See D.L.*, 302 F.R.D. at 11; *Coleman*, 306 F.R.D. at 80. Unaccompanied children

---

[8] Office of Refugee Resettlement, *Unaccompanied Alien Children Bureau Fact Sheet* (Apr. 4, 2025), *archived at* https://perma.cc/S68K-5283.
[9] Fact Sheets and Data, Office of Refugee Resettlement, *Average Length of Care* (current as of Apr. 7, 2025), https://perma.cc/23B8-9FY3.
[10] *See* Kandel, *Unaccompanied Alien Children: An Overview* at 24, https://perma.cc/DRE3-M7TH (in 2018, ICE "estimated that 80% of active UAC sponsors and accompanying family members were residing in the country illegally").

are held in hundreds of facilities funded by ORR spanning across more than a dozen states,[11]

reflecting a vast "geographic dispersion of class members." *Coleman*, 306 F.R.D. at 80; *see also*

*Garza,* 304 F. Supp. 3d at 157 (finding joinder impractical "especially given that the proposed

class members are undocumented minors who are geographically dispersed and who are not at

liberty—financially or otherwise—to move or act at will inside the United States."). Accordingly,

the proposed class satisfies the numerosity requirement of Rule 23(a)(1).

### B.  The Proposed Class Presents Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class," or

commonality. Fed. R. Civ. P. 23(a)(2). To establish commonality, class members must have

"suffered the same injury," and the class claims must "depend on a common contention" that "is

capable of classwide resolution—which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 564 U.S.

at 350. "The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to

generate common *answers* apt to drive the resolution of the litigation.'" *Coleman*, 306 F.R.D. at 82

(quoting *Wal-Mart*, 564 U.S. at 390 (internal citations omitted) (emphasis in original)). "[E]ven a

single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotation marks, alterations,

and citations omitted).

Courts have consistently held that "commonality is satisfied where the lawsuit challenges a

system-wide practice or policy that affects all putative class members." *Thorpe v. District of*

*Columbia*, 303 F.R.D. 120, 147 (D.D.C. 2014), *aff'd sub nom. In re District of Columbia*, 792 F.3d

96 (D.C. Cir. 2015); s*ee also R.I.L-R*, 80 F. Supp. 3d at 181 ("commonality is satisfied where there

---

[11] Office of Refugee Resettlement, *Unaccompanied Alien Children Bureau Fact Sheet* (Apr. 4, 2025), *archived at* https://perma.cc/S68K-5283.

is 'a uniform policy or practice that affects all class members.'"); *P.J.E.S.*, 502 F.Supp.3d at 532 (commonality means that "if any person in the class has a meritorious claim, they all do.").

"Factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003); *see also Coleman*, 306 F.R.D. at 83; *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 459 (D.D.C. 2020) (certifying a class where "the factual variations among the class members . . . are not fatal to commonality because they do not undermine the class's common characteristics") (internal citations omitted); *S.R. by and through Rosenbauer v. Penn. Dep't of Human Servs.*, 325 F.R.D. 103, 108–09 (M.D. Pa. 2018) (rejecting argument that the "individualized nature of placement and service decisions for each child in the dependency and delinquency systems makes classwide resolution impossible" because the "putative class seeks declaratory and injunctive relief to address systemic deficiencies").

Here, the putative class has at least the following key legal issues in common: (1) whether the IFR and changes to the ORR Policy Guide were improperly promulgated; and (2) whether the new sponsorship requirements are unlawful, beyond statutory authority, contrary to law, and arbitrary and capricious.

ORR issued an IFR rescinding a key term of the Foundational Rule which prohibits (1) disqualification of sponsors based solely on their immigration status; (2) the collection of sponsors' immigration status for law enforcement purposes; and (3) the sharing of sponsors' immigration status with law enforcement. Issuance of the IFR together with changes to the ORR Policy Guide drastically modified Family Reunification Application requirements by restricting acceptable forms of documentation from sponsors, household members, and alternate caregivers, such that the required documents are obtainable only by individuals with certain forms of immigration or residency status. This "system-wide" policy affects "all putative classmembers," by preventing

14

release from custody regardless of sponsor category, suitability, or any other differences in children's cases. *Thorpe*, 303 F.R.D. at 147. The resolution of these questions is a prerequisite to any challenge to ORR's adjudication of an individual class member's application for release to a sponsor, and each of these questions can be resolved for the "class as a whole." *Wal-Mart*, 564 U.S. at 360.

Furthermore, courts have found that plaintiffs asserting that an agency has failed to follow its own regulations (*Accardi* claims), as Plaintiffs do here, meet the commonality requirement because the question of whether agencies are complying with their own binding policies inherently raises common legal and factual questions. *See, e.g.*, *Damus*, 313 F. Supp. 3d at 332 (plaintiffs alleging violation of *Accardi* doctrine satisfied commonality requirement because allegation that ICE officers violated an agency rule to provide individualized parole determinations generated common question of law and fact); *Mons v. McAleenan*, No. 19-1593 (JEB), 2019 WL 4225322, at *9–10 (D.D.C. Sept. 5, 2019) (same). Plaintiffs' *Accardi* claim, alleging that Defendants are violating their obligations under the Foundational Rule, similarly generate common questions of law and fact in satisfaction of the commonality requirement.

The class members' claims likewise share common issues of fact, including but not limited to: (1) the class members' continued detention in ORR custody despite having an available sponsor; and (2) Defendants' policy of requiring documentation from sponsors and adults required to participate in the sponsorship application process that is only available to individuals who have certain forms of stable immigration status. Furthermore, a common resolution for the class is simple: the Court can and should vacate the IFR and mandate that ORR use and comply with the sponsorship eligibility and information collection and sharing policies in effect prior to March 7, 2025.

Similar classes have been certified by other district courts. *E.g.*, *Lucas R. v. Azar*, Case No. CV 18-5741-DMG (PLAx), 2018 WL 7200716, at *17 (C.D. Cal. Dec. 27, 2018) (certifying a class of unaccompanied children "whom ORR is refusing or will refuse to release to parents or other available custodians within thirty days of the proposed custodian's submitting a complete family reunification packet on the ground that the proposed custodian is or may be unfit"); *see also*, Class Cert. Order, *J.E.C.M. v. Hayes*, No. 1:19-cv-903 (E.D. Va. Apr. 26, 2019), ECF No. 138, *amended by* ECF No. 149 (E.D. Va. May 2, 2019) (certifying a class of unaccompanied children held in ORR custody for 60 days or more whose sponsor initiated the sponsorship process and the children were not released to the sponsor). Here, the proposed class likewise satisfies the commonality requirement of Rule 23(a)(2).

## C.  Plaintiffs' Claims Are Typical of the Claims of the Members of the Proposed Class

Typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 564 U.S. at 349. "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims." *Coleman*, 306 F.R.D. at 83 (quoting *Bynum*, 214 F.R.D. at 35). This alignment of legal theory and course of conduct occurs when, as here, "the plaintiffs' claims all arise from a common statutory background and raise identical legal questions." *Id.*

Neither the claims nor the relevant facts need to be identical across class members to maintain typicality, which "refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 209 (D.D.C.

16

2018) (quoting *Hoyte*, 325 F.R.D. at 490); *see Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987)

("Courts have held that typicality is not destroyed by 'factual variations.'") (quoting *Donaldson v.*

*Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977)); *J.D.*, 925 F.3d at 1322 ("[T]o destroy typicality, a

distinction must differentiate the 'claims or defenses' of representatives from those of the class.")

(citation omitted) (emphasis omitted).

     Plaintiffs' claims here are typical of the proposed class members' claims. Each plaintiff's

sponsorship process has been stalled or terminated due to the inability to provide newly required

documentation that is largely inaccessible to people without certain immigration statuses, leaving

Plaintiff children in prolonged federal custody notwithstanding having an available sponsor. Thus,

Plaintiffs' and proposed class members' claims arise from the same unlawful conduct: ORR's

issuance of the IFR and concurrent policy changes preventing class members' release from ORR

custody to their available sponsors because of sponsors' inability to obtain documents that require

proof of immigration status.

     Plaintiffs' claims are also based on the same legal theory as all proposed class members'

claims: —that Defendants have violated the APA by improperly promulgating the IFR and an

unlawful and arbitrary and capricious policy preventing release of children to available sponsors

because they and/or their household members cannot provide documentation which requires proof

of immigration status to obtain.

     Thus, Plaintiffs' claims are "sufficiently interrelated with the class claims to protect absent

class members." *R.I.L-R*, 80 F. Supp. 3d at 181; *see also Damus*, 313 F. Supp. 3d at 334 (finding

typicality requirement satisfied where named plaintiff challenged ICE violation of policy requiring

individualized parole determinations for asylum seekers in custody); *Lucas R.*, 2018 WL 7200716

(finding typicality where ORR refused to release named plaintiffs to their sponsors without notice

17

and an opportunity to be heard regarding their sponsors' suitability). Therefore, the proposed class satisfies the typicality requirement of Rule 23(a)(3).

> **D.  Plaintiffs Will Adequately Protect the Interests of the Proposed Class and Counsel are Qualified to Litigate this Action**

Finally, Rule 23(a) requires that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575–76 (D.C. Cir. 1997)). Plaintiffs easily meet both requirements.

First, Plaintiffs have no antagonistic or conflicting interests with the proposed class members' interests. As discussed, Plaintiffs assert the same legal claims as the proposed class members. Plaintiffs aim to secure injunctive and declaratory relief that will ensure all proposed class members are afforded their statutory and constitutional rights, as outlined in the Complaint. Where, as here, Plaintiffs seek "identical relief for all class members," they do not have conflicting interests. *P.J.E.S.*, 502 F.Supp.3d at 532.

Second, Plaintiffs are competent to represent the class. Adequacy "does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Garnett*, 301 F. Supp. 3d at 210 (citation omitted). It only requires that the named plaintiff have "some rudimentary knowledge of [their] role as . . . class representative[s] and [be] committed to serving in that role in litigation." *Id*. (citation omitted). As several of their declarations show, Plaintiffs have proven sufficient knowledge of their roles as class

representatives and the facts of this case and are willing to act as class representatives to satisfy the adequacy requirement. *See* Leo B. Decl. ¶¶ 18-21; Xavier L. Decl. ¶¶ 8-10; Ex. 1, Supp. Decl. of Angelica S. ¶¶ 3-5, April 30, 2025; *see also, e.g.*, *P.J.E.S.*, 502 F. Supp. 3d at 533.

In addition, class counsel are qualified and able to vigorously prosecute the interests of the class. Class counsel are not conflicted, they have no interests or commitments that are antagonistic to, or that would detract from, their efforts to seek a favorable decision for the class. Class counsel have extensive experience litigating complex class actions and in children's and families' rights, youth law, administrative law, and immigration law. *See Coleman*, 306 F.R.D. at 84 (finding adequacy when class counsel has extensive experience litigating class actions); *Healthy Futures of Tex. v. U.S. Dep't of Health & Hum. Servs.,* 326 F.R.D. 1, 7–8 (D.D.C. 2018) (same); *see also*, Ex. 2, Decl. of Mishan Wroe, May 9, 2025 ("Wroe Decl.") ¶¶ 3-12; Ex. 3, Decl. of Joel McElvain, May 9, 2025 ("McElvain Decl.") ¶¶ 2-8. In particular, the counsel on this case from the National Center for Youth Law have represented plaintiffs in several other class action lawsuits on behalf of detained immigrant youth including *Flores v. Bondi*, *Lucas R. v. Becerra*, *Duchitanga v. Lloyd, and J.E.C.M. v. Dunn Marcos.* Counsel on this case from Democracy Forward have decades of experience litigating APA claims, including claims involving the Department of Health and Human Services. McElvain Decl. ¶¶ 2-6. Accordingly, this aspect of Rule 23(a)(4) is also satisfied.

### E.  Class Certification Under Rule 23(b)(2) is Appropriate

Plaintiffs seek to certify this class under Rule 23(b)(2), which requires that defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Supreme Court noted in *Wal-Mart*, "'[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." 564 U.S. at 361 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). This Circuit

has described a Rule 23(b)(2) action as an efficient and consolidated way to address systemic harms that are best remedied with an injunction, particularly in civil rights cases like this one. *See D.L.*, 860 F.3d at 726 ("Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief").

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Coleman*, 306 F.R.D. at 84 (quoting *Wal-Mart*, 564 U.S. at 360). Although the injunction must provide relief to each class member, "[i]f a certain outcome is legally mandated and an injunction provides each member of the class an increased opportunity to achieve that outcome, Rule 23(b)(2) is satisfied." *Brown*, 928 F.3d at 1082–83; *see also P.J.E.S.*, 502 F. Supp. 3d at 534 (D.D.C. 2018) (provisionally approving class of unaccompanied children seeking class-wide relief to enjoin enforcement of Title 42 immigration restrictions against them).

Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) the defendant's action or refusal to act must be generally applicable to the class, and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016) (quotations and citations omitted); *Bynum*, 214 F.R.D. at 37; *R.I.L-R*, 80 F. Supp. 3d at 182.

Both requirements are satisfied here. Defendants' issuance of the IFR and corresponding policy of requiring potential sponsors, household members, and alternate caregivers to submit documentation that requires proof of certain immigration status is agency action "generally applicable" to all proposed class members. 5 U.S.C. § 706(2)(D); 5 U.S.C. § 552(a)(1)(E). Further, all class members are entitled to be released to family members capable of caring for their

20

physical and mental wellbeing, which is in the best interests of the child. *See* 8 U.S.C.

§ 1232(c)(2)(A); 6 U.S.C. § 279(b)(1)(B); *see also Moore v. City of East Cleveland*, 431 U.S. 494,

504 (1977); *Lucas R. v. Becerra*, Case No. CV 18-5741-DMG (PLAx), 2022 WL 2177454, at *14

(C.D. Cal. Mar. 11, 2022); *J.E.C.M. v. Dunn Marcos*, 689 F. Supp. 3d 180, 195 (E.D. Va. 2023).

Additionally, a declaration that Defendants' conduct is unlawful and an injunction

directing Defendants to vacate the IFR and return to policies as they existed before March 7, 2025,

would benefit the whole class by resolving all class members' claims and ensuring that all class

members would not be prohibited from reunification with family members based on immigration

status. Therefore, the Court should find that the proposed class meets Rule 23(b)(2)'s

requirements.

### F.  The Proposed Class is Sufficiently Definite and Ascertainable

The D.C. Circuit has not yet decided whether Rule 23(b)(2) requires that a class be

ascertainable. *See J.D.*, 925 F.3d at 1319–20 (noting conflict in decisions of sister circuits); *see*

*also Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018) ("it is far

from clear that there exists in this district a requirement that a class certified under Rule 23(b)(2)

must demonstrate ascertainability to merit certification"). Courts that apply such a requirement in

addition to the Rule 23 requirements have considered whether the class is "clearly defined" and

"sufficiently ascertainable"—in other words, that the class exists, and that it is "administratively

feasible for the Court to determine whether a particular individual is a member" of the class.

*Huashan Zhang v. U.S. Citizenship & Immigr. Servs.,* 344 F. Supp. 3d 32, 61–62 (D.D.C. 2018),

*aff'd*, 978 F.3d 1314 (D.C. Cir. 2020) (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 346

(D.D.C. 1998)); *see also Thorpe*, 303 F.R.D. at 139.

In Rule 23(b)(2) classes, such as this one, where plaintiffs only seek an injunction and

notice is not required, "precise ascertainability" is not required.  *D.L.*, 302 F.R.D. at 17 (quoting

William B. Rubenstein et al., *Newberg and Rubenstein on Class Actions* § 3:7 (5th ed.)). Rule 23(b)(2) classes are sufficiently ascertainable "as long as plaintiffs can establish the existence of a class and propose a class definition that accurately articulates the general demarcations of the class of individuals who are being harmed by the alleged deficiencies." *Thorpe*, 303 F.R.D. at 139 (internal citations and quotation marks omitted). It must also be "administratively feasible" to determine who is in the proposed class—that is, counsel and putative class members should be able to determine who is in the class "simply by reading the [class] definition." *Coleman*, 306 F.R.D. at 75 (internal citations omitted) (alteration in original).

If ascertainability is required here, the proposed class easily meets that standard. A proposed class member is an unaccompanied child who is or will be in the custody of HHS, and who (a) has or had a potential sponsor who has been identified; and (b) has not been released to a sponsor due, in whole or in part, to a lack of newly required documents. The class is further demarcated by a reason for their continued federal custody: they are missing documents newly required on or after March 7, 2025, which are enumerated in Defendants' own policies. *See* ORR Policy Guide § 2.2.4. Thus, "simply by reading the [class] definition," children in the custody of ORR will be able to determine whether they are class members. *See, e.g., Coleman*, 306 F.R.D. at 75.

The proposed class consists entirely of children known to Defendants, who are in Defendants' custody. Furthermore, Defendants possess data that could be readily used to identify the children in its custody who have had a sponsor come forward but who have not had their sponsor's application adjudicated because the sponsor or other adult included in the application lacks the newly required documentation. Defendants themselves are charged with reunifying potential class members with their sponsors and thus have already identified or will identify potential sponsors for each class member. *See* 8 U.S.C. § 1232(c)(2)(A); 45 C.F.R. §§ 410.1200,

410.1201(a), 410.1205(b)–(c). Likewise, Defendants have determined or will determine whether the sponsor is able to meet the new sponsorship application requirements, and note progress in children's case files. Any future class members will be known to Defendants when they are taken into Defendants' custody, and the details of their reunification cases will be entirely known to Defendants pursuant to ORR's role in gathering the requisite information. For these reasons, the proposed class is "adequately defined" and "sufficiently ascertainable." *Huashan Zhang*, 344 F. Supp. 3d at 61–62.

### G. Alternatively, Class Certification is Appropriate Under Rule 23(b)(1)(A)

Alternatively, the class can be certified under Rule 23(b)(1)(A). A class that meets all the requirements of Rule 23(a) should be certified if "prosecuting separate actions by or against individual class members would create a risk of: [] an inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Certification is appropriate when "the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct" that is "illegal as to all members of the class." *Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28, 34 (D.D.C. 2017) (internal citation omitted). Rule 23(a)(1) prevents inconsistent or varying adjudications that "would impair the opposing party's ability to pursue a uniform continuing course of conduct." *See Franklin v. Barry*, 909 F. Supp. 21, 31 (D.D.C. 1995) (granting certification under Rule 23(b)(1)(A) to avoid a "haunting specter of inconsistency, resulting in incompatible standards for prison officials" in their treatment of prisoners); *Larionoff v. United States*, 533 F.2d 1167, 1181 n.36 (D.C. Cir. 1976) (certifying a class under Rule 23(b)(1)(A) because the prosecution of separate actions by or against members of the class would create a risk of inconsistency and incompatible standards of conduct.).

Certification under 23(b)(1)(A) is appropriate here. Plaintiffs are attempting to secure injunctive and declaratory relief to change a uniform course of conduct that is illegal as to all proposed class members. Individual prosecution of claims will risk inconsistent results across ORR's hundreds of shelters processing thousands of sponsor applications each year. Office of Refugee Resettlement, *Unaccompanied Alien Children Bureau Fact Sheet* (Apr. 4, 2025), *archived at* https://perma.cc/S68K-5283. Defendants would then face inconsistent judgments as to the minors unnecessarily held in ORR custody because of their sponsors' inability to provide newly required documentation. Therefore, the Court should find that the proposed class meets Rule 23(b)(1)(A)'s requirements.

### H. The Court Should Designate Plaintiffs' Counsel as Class Counsel

If the Court grants Plaintiffs' motion to certify the class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(g). The Court is tasked with weighing "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). It may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel meets the standard. Plaintiffs are represented collectively by the National Center for Youth Law and Democracy Forward. Attorneys from both organizations are seasoned litigators, many with substantial experience in class action lawsuits, administrative law litigation, and advocating for the rights of detained immigrant children. *See* Wroe Decl.; McElvain Decl. Counsel from the National Center for Youth Law have represented plaintiffs in several other class action lawsuits on behalf of detained immigrant youth, including *Flores v. Bondi*, *Lucas R. v. Becerra*, *Duchitanga v. Lloyd*, and *J.E.C.M. v. Dunn Marcos.* Counsel have already invested

24

"substantial time and resources to identifying and investigating potential claims in the action" and will continue to do so. *See Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010). Accordingly, Plaintiffs' counsel should be designated as counsel for the class.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), certify a class consisting of: all unaccompanied children who are or will be in the custody of HHS and who (a) have or had a potential sponsor who has been identified; and (b) have not been released to a sponsor in whole or in part because they are missing documents newly required on or after March 7, 2025.


May 9, 2025                                Respectfully submitted,

                                  ___/s/ David Hinojosa_____

                                  David Hinojosa (D.C. Bar No. 1722329)
                                  Rebecca Wolozin (D.C. Bar No. 144369)*
                                  NATIONAL CENTER FOR YOUTH LAW
                                  818 Connecticut Avenue NW, Suite 425
                                  Washington, DC 20006
                                  (202) 868-4792
                                  dhinojosa@youthlaw.org
                                  bwolozin@youthlaw.org

                                  Neha Desai**
                                  Mishan Wroe**
                                  Diane de Gramont**
                                  NATIONAL CENTER FOR YOUTH LAW
                                  1212 Broadway, Suite 600
                                  Oakland, California 94612
                                  (510) 835-8098
                                  ndesai@youthlaw.org
                                  mwroe@youthlaw.org
                                  ddegramont@youthlaw.org

                                  Cynthia Liao***
                                  Joel McElvain (D.C. Bar No. 448431)
                                  Skye L. Perryman (D.C. Bar No. 984573)

DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
cliao@democracyforward.org
jmcelvain@democracyforward.org
sperryman@democracyforward.org


\* Application for D.D.C. admission pending
\*\* *Pro hac vice* pending
\*\*\* *Pro hac vice* forthcoming

26