# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELICA S., *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:25-cv-01405-DLF |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

ADDITIONAL BACKGROUND ........................................................................... 2

ARGUMENT ............................................................................................................. 3

   I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............................................. 3

      A. Plaintiffs Have Standing ....................................................................... 3

      B. The Interim Final Rule is Unlawful ...................................................... 7

      C. ORR's New Proof of Identification and Proof of Income Policies Are Unlawful ............. 12

   II. PLAINTIFFS MEET ALL THE REMAINING PRELIMINARY INJUNCTION FACTORS ...................... 20

      A. Plaintiffs are Suffering Severe Irreparable Injury .............................. 20

      B. The Balance of the Equities Favors Plaintiffs .................................... 22

   III. THE COURT SHOULD GRANT PROVISIONAL CLASS CERTIFICATION AND NATIONWIDE RELIEF 23

      A. Provisional Class Certification is Warranted .................................... 23

      B. Nationwide Relief is Needed to Address the Scope of Irreparable Harm ........................ 24

   IV. THE COURT SHOULD REQUIRE NO BOND OR A NOMINAL BOND ........................................... 25

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.A.R.P. et al., v. Trump et al.*, No. 24-1177, 2025 WL 1417281 (U.S. May 16, 2025)..............24

*Afghan and Iraqi Allies v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024) ............................................24

*AFL-CIO v. Chao*, 496 F. Supp. 2d 76 (D.D.C. 2007) ..................................................................12

*Alabama Ass'n of Realtors v. Dep't of Health and Human Servs.*, 539 F. Supp. 3d 211 (D.D.C. 2021) ..............................................................................................................................................25

*Allina Health Servs. v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014)................................................13

*Am. First Legal Found. v. Becerra*, No. 24-1092, 2024 WL 3741402 (D.D.C. Aug. 9, 2024) ................................................................................................................................................26

*Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324 (D.C. Cir. 2023) ...........................13

*American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532 (1970) ..................................13

*Bailey v. Fed. Bureau of Prisons*, No. 24-1219, 2024 WL 3219207 (D.D.C. June 28, 2024) ................................................................................................................................................26

*Bennett v. Spear*, 520 U.S. 154 (1997) ..........................................................................................7

*Career College Ass'n v. Riley*, 74 F.3d 1265 (D.C. Cir. 1996) ....................................................7

Centro de Trabajadores Unidos v. Bessent, No. 25-0677, 2025 WL 1380420 (D.D.C. 2025) .......6

*Consumer Energy Council of Am. v. FERC*, 673 F.2d 425 (D.C. Cir. 1982) .................................9

Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys., 603 U.S. 799 (2024)........................5, 25

*CSL Plasma Inc. v. U.S. Customs and Border Protection*, 33 F.4th 584 (D.C. Cir. 2022) ............7

Ctr. for Biological Diversity v. EPA, 861 F.3d 174, 183 (D.C. Cir. 2017) ....................................6

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) ...........................11, 17, 18

*District of Columbia v. U.S.D.A.*, 444 F. Supp. 3d 1 (D.D.C. 2020)............................................25

FDA v. All. For Hippocratic Med., 602 U.S. 367 (2024)...........................................................5, 6

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................................6

*INS v. St. Cyr*, 533 U.S. 289 (2001) ............................................................................20

*J.E.C.M. v. Lloyd*, 352 F.Supp.3d 559 (E.D. Va. 2018) .......................................4, 6, 14

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) .................................................................3, 4

Jacinto-Castamon de Nolasco v. ICE, 319 F. Supp. 3d 491 (D.D.C. 2018) ....................4

*Kirwa v. U.S. Dep't of Defense*, 285 F. Supp. 3d 257 (D.D.C. 2018) ...........................19

*L.V.M. v. Lloyd*, 318 F. Supp. 3d 601 (S.D.N.Y. 2018) .................................................13

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .................6, 23

*League of Women Voters of U.S. v. Newby*, 963 F.3d 130 (D.C. Cir. 2020) ..................3

*Lopez v. FAA*, 318 F.3d 242 (D.C. Cir. 2003) ..........................................................13, 17

*Lucas R. v. Becerra*, No. 18-5741, 2022 WL 3908829 (C.D. Cal. Aug. 30, 2022) ......20

*LULAC v. Exec. Office of the President*, No. 25-0946, 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ....................................................................................................................26

*Mack Trucks, Inc. v. EPA*, 682 F.3d 87 (D.C. Cir. 2012) ..........................................8, 10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) ..........................................................................................................................7

*Michigan v. EPA*, 576 U.S. 743 (2015) ............................................................................9

*Moore v. City of E. Cleveland*, 431 U.S. 494 (1977) ...............................................17, 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29 (1983) ........................................................................................................................17, 18

Nat'l Venture Capital Assoc. v. Duke, 291 F. Supp. 3d 5 (D.D.C. 2017) ....................5, 9

*Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167 (D.D.C. 1971) ....................26

*Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020) .............................7, 12

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) ......................11

*Neb. DHHS v. DHHS*, 435 F.3d 326 (D.C. Cir. 2006) ...........................................25, 26

*Ohio v. EPA*, 603 U.S. 279 (2024) .................................................................................11

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ...................................................22

*P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020) ........................................12, 25, 26

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ...........................................................22

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...................................................21

*Ramirez v. ICE*, 568 F. Supp. 3d 10 (D.D.C. 2021) .................................................21, 25

Regents of University of California v. Bakke, 438 U.S. 265 (1978) .....................................5

*Reno v. Flores,* 507 U.S. 292 (1993) ................................................................................22

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ......................................................................24

*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) ..................................................................3

*Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002) ...........12

*Texas v. HHS.*, No. 6:24-CV-348-JDK, 2025 WL 818155 (E.D. Tex. Mar. 13, 2025) ...............12

*Tri-Cnty. Tel. Ass'n, Inc. v. FCC*, 999 F.3d 714 (D.C. Cir. 2021) ....................................8

*U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F. Supp. 3d 125 (D.D.C. 2015) ....................26

*Winter v N.R.D.C.*, 555 U.S. 7 (2008) .............................................................................3

## STATUTES AND RULES

5 U.S.C. § 553.................................................................................................................8

5 U.S.C. § 705.................................................................................................................12

8 U.S.C. 1232.......................................................................................................7, 9, 16

45 C.F.R. §§ 410.1201.................................................................................................16, 20

45 C.F.R. § 410.1205.......................................................................................................16

80 Fed. Reg. ....................................................................................................................10

89 Fed. Reg. ....................................................................................................................16

90 Fed. Reg. ....................................................................................................................8

# OTHER AUTHORITIES

IFR, https://www.regulations.gov/document/ACF-2025-0004-0001 ...............................................8

Letter from Rob Bonta, Cal. Att'y Gen., et al., to Robert F. Kennedy, Jr., et al. (May 23, 2025),
      https://www.regulations.gov/comment/ACF-2025-0004-0206 ................................................8

ORR, Fact Sheets and Data: Average Monthly Data, https://perma.cc/L7GK-H2YQ...............2, 3

ORR, Fact Sheets and Data: Released to Sponsors, https://perma.cc/L938-H5YA .................3, 16

U.S. Citizenship and Immigration Services, Form I-9 Acceptable Documents,
      https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents (last accessed May 24,
      2025)
      ................................................................................................................................................15

## INTRODUCTION

Defendants seek to complicate what is a simple issue—they are not permitted to enforce an Interim Final Rule ("IFR") or concurrent policy changes that are procedurally defective, contrary to law, and arbitrary and capricious. The IFR is unlawful on its face—it rescinds at least two regulatory protections without good cause or rational explanation. ORR's new proof of identification and proof of income documentation requirements are unlawful for multiple reasons. Defendants do not dispute that the new requirements disqualify potential sponsors based solely on immigration status and would be unlawful absent the IFR. Nor do Defendants contest that these new requirements violate the Paperwork Reduction Act ("PRA"). Plaintiffs have shown a likelihood of success that the IFR and the policy changes are each unlawful on at least one ground.

Plaintiffs' suit is limited to these unlawful policies. Plaintiffs do not ask the Court to order their release or the release of any other unaccompanied child. Nor do Plaintiffs challenge ORR's individual adjudications of sponsor suitability or its ability to require identity verification, verification of financial stability, fingerprint-based background checks, home studies, and other measures to vet sponsors. Plaintiffs request only that their cases be adjudicated without unlawful requirements that categorically disqualify parents and other close family members as sponsors, depriving them of the chance to prove they will provide a safe home for the child.

Although Defendants argue the child Plaintiffs' cases were delayed for case-specific reasons, their own declaration establishes that the challenged policies are the reason Plaintiffs' family reunification processes are *currently* stalled. *See* Declaration of Toby Biswas ¶¶ 22-26 (ECF 21-1) ("Biswas Decl."). Plaintiffs plainly have standing to challenge these policies. That ORR previously identified safety concerns and addressed those concerns through home studies proves

only that ORR's existing vetting systems worked. Despite this vetting, three Plaintiffs now lack *any* sponsor and may remain in ORR custody until they turn 18—including 15-year-old Liam W. seeking release to his mother. *Id.* ¶¶ 22, 24-25; Declaration of Sofia W. ¶¶ 7, 11-12 (ECF 9-14).

The named Plaintiffs are far from alone. ORR's most recent data indicates that children's average length of stay has skyrocketed and only a tiny percentage of children are being released to sponsors. Requiring children to spend the rest of their childhoods in ORR custody separated from family simply because their family members lack the "right" form of documentation is arbitrary and capricious and contrary to ORR's statutory and regulatory duties. Provisional class certification and a preliminary injunction are necessary to give children a fair opportunity for family reunification as required by statute and ORR's regulations.

## ADDITIONAL BACKGROUND

On May 12, 2025—after Plaintiffs filed their motion for a preliminary injunction—ORR published updated data regarding children's length of stay and releases. Fact Sheets and Data, ORR, *Average Monthly Data*, https://perma.cc/L7GK-H2YQ. This data shows that the new policies imposed in March and April of 2025 are not merely slowing down the vetting process— they have made release the rare exception for children in custody. The average length of care for children discharged from ORR custody has climbed from 49 days in February 2025 to 112 days in March 2025 to 217 days in April 2025. *Id.* The number of children released to sponsors has plummeted. In February 2025, ORR had an average of 2,778 children in care and released 1,858 children. In March 2025, ORR had an average of 2,173 children in care and released 343 children. In April 2025, ORR had an average of 2,281 children in care and released just 45 children. *Id.*; Fact Sheets and Data, ORR, *Released to Sponsors*, https://perma.cc/L938-H5YA.

## ARGUMENT

### I.    <u>Plaintiffs Are Likely to Succeed on the Merits</u>

Plaintiffs need only establish that one plaintiff with standing is "likely to succeed on the merits of at least one claim" as to each challenged policy. *See League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 134 (D.C. Cir. 2020); *see also J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019). Plaintiffs have shown a likelihood of success for multiple reasons. Defendants assert that Plaintiffs must meet a higher legal standard to obtain a mandatory injunction, but they do not specify what portion of the requested relief they believe would be mandatory rather than prohibitive. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction at 15 (ECF 21) ("Opp."). In any event, the D.C. Circuit has declined to adopt a heightened standard for preliminary injunctions "that alter the status quo or grant irreversible relief," holding that "the traditional test set out by the Supreme Court in *Winter* . . . is sufficiently flexible to take account of all the concerns implicated by the nature of the relief sought here." *Singh v. Berger*, 56 F.4th 88, 96-97 (D.C. Cir. 2022). Plaintiffs meet the factors in *Winter v N.R.D.C.*, 555 U.S. 7, 20 (2008). But even under a heightened standard, Plaintiffs have shown a clear likelihood of success on the merits and serious irreparable harm.

### A.  Plaintiffs Have Standing

#### 1.   <u>Child Plaintiffs and Putative Class Representatives Have Standing</u>

When there are multiple plaintiffs, only one plaintiff with standing is necessary to proceed. *J.D.*, 925 F.3d at 1324. The same rule applies "with equal force to a Rule 23(b)(2) class action advancing a uniform claim and seeking uniform injunctive and declaratory relief." *Id*. Here, the child Plaintiffs have provided extensive evidence to show standing.

*First*, the child Plaintiffs have suffered and continue to suffer injury in fact because their release and family reunification processes have been blocked by ORR's new policies, causing family separation, emotional distress, a disruption in educational progress, and an inability to enjoy an ordinary childhood with friends and family.[1] *See* Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction at 40-42 (ECF 10-1) ("PI Memo"); Biswas Decl. ¶¶ 22-26. It is beyond dispute that family separation and institutional custody are injuries sufficient to establish standing. *See, e.g., J.E.C.M. v. Lloyd*, 352 F.Supp.3d 559, 579 (E.D. Va. 2018); *Jacinto-Castamon de Nolasco v. ICE*, 319 F. Supp. 3d 491, 502 (D.D.C. 2018).

Plaintiffs need not show that they would be guaranteed release to establish standing. Because of the IFR and ORR's new documentation policies, Plaintiffs have lost the *opportunity* for timely release to their closest relatives and in some cases the opportunity for any release at all. This is a well-established injury in fact. *CC Distributors, Inc. v. U.S.*, 883 F.2d 146, 150 (D.C. Cir. 1989) ("the loss of an *opportunity to pursue a benefit*" is "a constitutionally cognizable injury"); *see also Nat'l Venture Capital Ass'n v. Duke,* 291 F. Supp. 3d 5, 13 (D.D.C. 2017).

Defendants specifically assert that Plaintiffs lack an injury in fact under the PRA because they were not required to provide the documentation. Opp. at 34. But child Plaintiffs cannot be released until their sponsors submit the required information and thus are directly and predictably injured by the unlawful requirements. *See FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 384-

---

[1] Eduardo M. and his 7-year-old brother were released to their mother on May 21, 2025—after the filing of the complaint and the class certification motion in this case, and two and a half months after their application was previously ready for approval as well as over three weeks after their case was submitted to ORR for consideration of an exception to the proof of identification and proof of income requirements. *See* Declaration of Rosa M. ¶¶ 2, 4-5, 8-9 (ECF 9-13); Biswas Decl. ¶ 23. Because only one plaintiff requires standing for purposes of a preliminary injunction and provisional class certification, Plaintiffs do not address Eduardo M.'s standing here.

85 (2024) ("*AHM*") (collecting cases "where government regulation of a third-party individual or business may be likely to cause injury in fact to an unregulated plaintiff."); *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (2024) (Kavanaugh, J., concurring) (characterizing this type of downstream injury to unregulated parties as "a typical APA suit.").

      In addition, each child's injuries are directly traceable to Defendants' actions. Defendants' own declaration makes clear that children have lost the opportunity for timely family reunification because of the disqualification of sponsors based on immigration status authorized by the IFR and ORR's new documentation requirements. Biswas Decl. ¶¶ 22-26; *see, e.g., id.* ¶ 22 (Angelica S.'s sister "indicated that she did not possess any form of [newly required] identification due to her lack of legal immigration status."); *id.* ¶ 24 (Liam W.'s mother and household members could not obtain acceptable identity documents and have not provided proof of income documentation); *id.* ¶ 25 (Leo B.'s sister cited the inability to meet the updated identification requirement as her reason for withdrawal). Further, Angelica S. has not been able to find another sponsor because all her potential sponsors are afraid that providing their information to ORR will result in immigration enforcement. Declaration of Deisy S. ¶ 28 (ECF 9-12); *see also* Declaration of Ximena L. ¶ 10 (ECF 9-15) (household member afraid to share further information). These harms are immediate, concrete, and traceable to Defendants' actions. *Centro de Trabajadores Unidos v. Bessent*, No. 25-cv-0677, U.S. Dist. LEXIS 90993,, at *9 (D.D.C. 2025) ("*C.T.U.*"); *J.E.C.M.*, 352 F. Supp. 3d at 579.

      Because, as Mr. Biswas concedes, ORR's new policies are the cause of Plaintiffs' lost opportunity for release and family reunification, it is likely that Plaintiffs' injuries will be redressed if the Court stays the IFR and new identification and proof of income requirements. While

Plaintiffs remain detained, their injuries are "ongoing" and have standing for the purposes of injunctive relief. *C.T.U.*, U.S. Dist. LEXIS 90993, at \*7; *see also Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 183 (D.C. Cir. 2017) (redressability is "relaxed" for procedural injuries).

2.  Immigrant Defenders Law Center has Standing and its Injuries are Within the Zone of Interests Protected

Immigrant Defenders Law Center ("ImmDef") has shown injury in fact because "new obstacles unquestionably make it more difficult for [organizational plaintiffs] to accomplish their primary mission . . . [and therefore] provide injury for purposes of both standing and irreparable harm." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). Unlike in *AHM*, ImmDef's injuries do not involve "abstract social interests" or the need to expend resources on outside advocacy. *AHM*, 602 U.S. at 394-95. Defendants' actions have "perceptibly impaired" ImmDef's ability to conduct its "core business activities," *id*. at 395, of providing services to its current clients and taking on future cases. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); Declaration of Cynthia Felix ¶¶ 10-22 (ECF 10-15).

ImmDef's injuries are also within the zone of interests of the relevant statutes. The "zone of interests" test does not implicate subject-matter jurisdiction and is not "especially demanding," ensuring consistency with "Congress's 'evident intent' when enacting the APA 'to make agency action presumptively reviewable.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012); *see also CSL Plasma Inc. v. U.S. Customs and Border Protection*, 33 F.4th 584, 588-89 (D.C. Cir. 2022). A plaintiff need not show that Congress intended to benefit them. *Patchak*, 567 U.S. at 225 & n.7. "The test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 225 (internal

citation omitted). The Trafficking Victims Prevention Reauthorization Act ("TVPRA") requires ORR to ensure legal representation for unaccompanied children "to the greatest extent practicable," 8 U.S.C. § 1232(c)(5), and attorneys "are reasonable—indeed, predictable—challengers of the Secretary's decisions." *Patchak*, 567 U.S. at 227.

### B. The Interim Final Rule is Unlawful

#### 1. The Interim Final Rule Is Final Agency Action

Agency action is "final" if it "mark[s] the consummation of the agency's decisionmaking process" and it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The IFR plainly meets this test because it "is the final word from the agency on what will happen up to the time of any different permanent decision." *NRDC v. Wheeler*, 955 F.3d 68, 78 (D.C. Cir. 2020); *see also Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1268 (D.C. Cir. 1996) ("'Interim' refers only to the Rule's intended duration—not its tentative nature.").

#### 2. ORR Lacked Good Cause to Skip Notice and Comment

As outlined in Plaintiffs' motion, exceptions to the APA's notice and comment requirements are "to be narrowly construed and only reluctantly countenanced." *Tri-Cnty. Tel. Ass'n. v. FCC*, 999 F.3d 714, 719 (D.C. Cir. 2021); *see* PI Memo at 15-16. None of the exceptions enumerated in 5 U.S.C. § 553(b)(B) apply here. Defendants have not asserted that taking public comment would be "impracticable." The IFR's preamble did assert that public comment was "unnecessary," Unaccompanied Program Foundational Rule; Update to Accord with Statutory Requirements, 90 Fed. Reg. 13554 at 13555 (Mar. 25, 2025), but ORR no longer defends that claim. *See* Opp. at 22-27. For good reason: the rule plainly does not involve the sort of "routine," "insignificant," or

"inconsequential" determinations in which the public would not be interested. *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 94 (D.C. Cir. 2012). To the contrary, the public has submitted more than 280 comments on the IFR, Comments, Unaccompanied Children Program Foundational Rule; Update (current as of May 27, 2025), https://www.regulations.gov/document/ACF-2025-0004-0001, raising serious questions as to both the legality and wisdom of ORR's new approach. *See, e.g.*, Comment, Letter from Rob Bonta, Cal. Att'y Gen., et al., to Robert F. Kennedy, Jr., et al. (current as of May 27, 2025), https://www.regulations.gov/comment/ACF-2025-0004-0206.

Defendants' argument rests entirely on their assertion that taking comment would be "contrary to the public interest," 5 U.S.C. § 553(b)(B), which they recognize applies "only in the rare circumstance when ordinary procedures—generally presumed to serve the public interest—would in fact harm that interest." Opp. at 24 (quoting *Mack Trucks, Inc*., 682 F.3d at 95). In the IFR's preamble itself, ORR provided no reason to conclude this standard was met. It recited only ORR's belief that one of the three provisions rescinded—the Information Sharing provision—was contrary to 8 U.S.C. § 1373, along with a prediction that public comment would not cause it to reconsider that belief. 90 Fed. Reg. at 13555. Yet "the question whether the [rule is] indeed defective is [itself] one worthy of notice and an opportunity to comment." *Consumer Energy Council v. FERC*, 673 F.2d 425, 447 n.79 (D.C. Cir. 1982); *see* PI Memo at 20.

ORR now claims that any delay would have been "confusing" to the public and the agency. Opp at 24. This new justification "contradicts the foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp*., 318 U.S. 80, 87 (1943)). In any event, ORR's "desire to provide immediate guidance, without more, does not

suffice for good cause," *Nat'l Venture Cap. Ass'n v. Duke*, 291 F. Supp. 3d 5, 19 (D.D.C. 2017) (internal quotation omitted), particularly where the Foundational Rule had been in place for months, without any evidence that it had confused the public during that time. "To hold otherwise would swallow the rule, as an agency could always argue that any given regulation provides clarification or guidance." *Id.* (internal quotation omitted).

ORR has also misread 8 U.S.C. § 1373, leading it to imagine a conflict between that statute and the Foundational Rule. As Plaintiffs explained, section 1373 is not an affirmative grant of authority to share information, and it does not override other federal statutes that restrict the sharing of immigration-related information. PI Memo at 19-20 (citing Office of Legal Counsel ("OLC") memo). The TVPRA is just such a statute, because ORR cannot ensure that minors are "promptly placed in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), if potential sponsors will not come forward for fear that ORR would share information with immigration authorities. Moreover, appropriations riders have been in place since 2019 that prohibit the use of information shared with DHS for immigration enforcement. PI Memo. at 13. ORR's own memoranda acknowledge these riders restrict information-sharing. *See* Memorandum from Melissa Harper to File (Feb. 6, 2025) (ECF 21-5) at 11 (ECF 21-3) ("Harper Memo"), yet the IFR displayed no awareness of their existence, let alone of OLC's reading of section 1373 or of the interaction between section 1373 and the TVPRA. Defendants' opposition brief ignores these issues entirely. At a minimum, then, the public should have had the chance to bring these issues to the agency's attention before it issued a rule.

ORR also failed entirely to offer any good cause for forgoing public comment on the Disqualification and Information Collection provisions. Its discussion of good cause in the IFR

itself made reference only to the Information Sharing provision. *See* 80 Fed. Reg. at 13555. ORR now asserts, however, that the Disqualification and Information Collection provisions should be read together because "[t]he use of the word 'and' typically signifies a conjunctive list," and "it is difficult to imagine" how the agency could avoid collecting information on the immigration status of sponsors if it were to revoke its promise not to share that information with DHS. Opp at 25. These new arguments, again, run contrary to the *Chenery* principle that agency action may be upheld only on the grounds the agency invoked at the time it took action. But, in any event, these arguments are non sequiturs. ORR has no affirmative obligation under 8 U.S.C. § 1373 to collect immigration status information, much less to disqualify sponsors based on immigration status. Although Defendants posit that complying with both 8 U.S.C. § 1373 and the Foundational Rule may require ORR to discourage sponsors from sharing immigration status information and that this "*could potentially* conflict" with its placement obligations, Opp. at 25 (emphasis added), these are precisely the types of policy questions that public comment can address. ORR has made no showing that the very act of taking public comment on the Disqualification and Information Collection provisions would have harmed the public interest. *Mack Trucks*, 682 F.3d at 95.

### 3.   The Interim Final Rule Is Arbitrary and Capricious

The APA sets forth certain minimum standards for an agency's "reasoned decisionmaking." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020). For example, "an agency cannot simply ignore an important aspect of the problem." *Ohio v. EPA*, 603 U.S. 279, 293 (2024) (citation omitted). Nor may it rely "on factors which Congress had not intended it to consider." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (citation omitted). It must consider "alternatives that are within the ambit of the existing policy" before rescinding a

rule entirely. *Regents*, 591 U.S. at 30 (cleaned up) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 51 (1983)). "When an agency changes course, … it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account," for example, by allowing for a period to wind down a legally flawed policy. *Regents*, 591 U.S. at 30 (citation omitted).

ORR violated each of these standards for reasoned decisionmaking. As for the rescission of the Disqualification and Information Collection provisions in particular, the agency provided no justification at all, other than to point to the Foundational Rule's severability clause. But, as explained in Plaintiffs' opening brief, PI Memo. at 22-23, that severability clause was promulgated to guide the discretion of the courts and in no way constrains the agency's own rulemaking.

The agency neither acknowledged the seismic consequences of its rescission of each of the provisions of 45 C.F.R. § 410.1201(b), nor addressed any alternatives to minimize harms to detained children and their sponsors. PI Memo. at 23-24. It further failed to consider that most children in ORR detention have close relatives who are undocumented, and disqualifying potential sponsors for their immigration status, or collecting and sharing information on that status, would thus profoundly affect the children's prospects for release. *See id.* at 25. Nor did the agency consider the Foundational Rule's explanation that ORR's statutory mission prohibited it from collecting or sharing immigration status information, the still-extant Privacy Act notice that assures the public that this information would not be shared, or the reasonable reliance interests of persons who had already shared information with ORR based on these assurances, *see id.* at 25-27. Defendants' brief does not engage meaningfully with any of these points, other than to recite the IFR preamble's sparse finding. Opp. at 27-28.

4.   The Interim Final Rule Should Be Enjoined

Despite asserting that the IFR is not final, Defendants also contend it is too late to stay the IFR because it was effective immediately. Opp. at 2, 5, 28-30. The Court's APA review and equitable powers are not so easily defeated. *See* 5 U.S.C. § 705 (court may take action "to preserve status or rights pending conclusion of the review proceedings"); *Texas v. HHS.*, No. 6:24-CV-348-JDK, 2025 WL 818155, at *11 (E.D. Tex. Mar. 13, 2025); *see also P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (granting preliminary injunction against enforcement of orders under either Interim Final Rule or Final Rule).

Defendants also contend the IFR should be remanded without vacatur. Opp. at 39. But on this preliminary injunction motion, the Court does not yet face the question whether to vacate the IFR upon rendering a final judgment. ORR may mean to argue that its errors were harmless. But an agency's "utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002); *see also NRDC v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020); *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 89 (D.D.C. 2007). There is, at a minimum, room for doubt as to whether public comment would have led ORR to a different result. In any event, "vacatur is the normal remedy when a rule is found unlawful." *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1342 (D.C. Cir. 2023). The failure to take comment is a fundamental deficiency and ORR offers no reason to believe that a return to the Foundational Rule would be disruptive. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014).

**C.  ORR's New Proof of Identification and Proof of Income Policies Are Unlawful**

1.   ORR's New Policies Affect Individual Rights and are Subject to Judicial Review

Defendants claim broad discretion over what they characterize as procedural rules related to sponsor vetting, Opp. at 16-17, 33, but fail to acknowledge the profound substantive consequences of their policies for sponsor eligibility and the rights of individual children and families. The D.C. Circuit "has been careful to distinguish between procedural rules benefitting the agency (*American Farm Lines*) and procedural rules benefitting the party otherwise left unprotected by agency rules (*Vitarelli*), as well as cases in which the agency has failed to exercise discretion required by its regulations (*Accardi*)." *Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003) (citing *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538 (1970); *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). In the latter two cases, agency action is reviewable. *Lopez*, 318 F.3d at 247.

ORR does not have "unfettered discretion" to disregard rules that "confer important procedural benefits" on children. *American Farm Lines*, 397 U.S. at 538-39. Nor can ORR violate its statutory obligations under the guise of procedural rules. *See L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 613 (S.D.N.Y. 2018). The issue here is not the mechanics of ORR's decision-making procedures but, as Defendants themselves acknowledge, the substantive "requirements for an individual to qualify as a UAC sponsor." Opp. at 1; *see J.E.C.M.*, 352 F. Supp. 3d at 580 n.9.

## 2. ORR's New Policies are Contrary to Law

ORR's new policies are contrary to law because they (1) disqualify sponsors based solely on immigration status in violation of the Foundational Rule, (2) violate the Paperwork Reduction Act, and (3) violate ORR's obligations under the TVPRA and the Foundational Rule to promptly place children in the least restrictive setting and release children without unnecessary delay.

*First*, for the reasons discussed above, the IFR's rescission of protections against sponsor disqualification based solely on immigration status lacks good cause or reasonable justification and this portion of the Foundational Rule must be restored. Defendants do not contest that their proof of identification and proof of income policies disqualify sponsors based solely on immigration status. To the contrary, they acknowledge that ORR copied its list of acceptable identification documents from the U.S. Citizenship and Immigration Services ("USCIS) I-9 form requirements for employees to establish identity and work authorization. *See* Biswas Decl. ¶ 14; Memorandum from Toby Biswas, Dir. Policy, UAC Bureau to Angie Salazar, Acting Director, ORR at 4 (Mar. 7, 2025) (ECF 21-4) ("Biswas Memo"). The I-9 form is designed to disqualify individuals who lack lawful work authorization.[2] The Biswas Memo also acknowledges—but does not rebut—a likely objection from advocates that the new identity requirements will be "particularly burdensome on the ability of undocumented or out of status [individuals] to sponsor children." *Id*. at 5. Although this memo was issued prior to the IFR, it does not acknowledge or discuss the Foundational Rule's restrictions on denying sponsors based on immigration status. *Id.* Similarly, the agency memo recommending approval of the new proof of income documentation requirements acknowledges, without rebutting, the likely argument "that the majority of potential sponsors engaging with UACB do not have work authorization and may not be able to provide documentation required under this update to ORR's sub-regulatory guidance." Memorandum from Angie Salazar, Acting Director of ORR, to Andrew Gradison, Acting Assistant Sec. for Children and Families at 5 (Apr. 1, 2025) (ECF 21-5) ("Salazar Memo").

---

[2] *See also* U.S. Citizenship and Immigration Services, Form I-9 Acceptable Documents, https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents (last accessed May 24, 2025).

*Second*, Defendants offer no substantive defense of the new proof of identification and proof of income policies under the Paperwork Reduction Act ("PRA"), asserting only that Plaintiffs lack constitutional standing. Opp. at 34. As discussed above, Plaintiffs are directly injured by ORR's violation of the PRA because the unlawful documentation requirements prevent their reunification with family. The PRA violation here is clear—ORR is in the process of receiving public comment on its modifications to the Sponsorship Application but has indisputably not yet received approval from the Office of Management and Budget. *See* PI Memo at 36-37.

*Third*, ORR's policies violate the TVPRA and the Foundational Rule. Defendants claim unlimited discretion to prioritize the TVPRA's vetting requirements over its prompt placement requirements. Opp. at 32. But the TVPRA requires ORR to fulfill both mandates. *See* 8 U.S.C. § 1232(c)(2)(A) (an unaccompanied child in HHS custody "*shall* be promptly placed in the least restrictive setting that is in the best interest of the child.") (emphasis added); 8 U.S.C. § 1232(c)(3) (requiring safety and suitability assessments). Refusing to release all but a tiny percentage of children in custody simply does not comport with ORR's statutory or regulatory responsibilities, especially when, as discussed below, the agency memos supporting these policies changes provide no discussion of why these specific documents are necessary. *See* ORR, Fact Sheets and Data: Released to Sponsors, https://perma.cc/L938-H5YA; *see also* 45 C.F.R. § 410.1201(a) (requiring release without unnecessary delay). ORR has numerous other means to assess sponsor suitability and must balance the value of new requirements against the impact on prompt placement. *See* Biswas Decl. ¶ 13; Declaration of Mari Dorn-Lopez ¶¶ 10-12 (ECF 10-13) ("Dorn-Lopez Decl."); Declaration of Jenifer Smyers ¶ 13 (ECF 10-14) ("Smyers Decl."); 89 Fed. Reg. at 34445.

Finally, Defendants' attempt to blame sponsors for ORR's failure to abide by regulatory timelines for adjudication of completed sponsorship applications is inappropriate. 45 C.F.R. § 410.1205(b). Although Defendants assert that sponsors declined to submit required documentation, they fail to acknowledge that many disqualified sponsors *did* submit all the documentation required by the Family Reunification Application ("FRA") only for ORR to refuse to adjudicate their applications. *Compare* Opp. at 33 *with* PI Memo at 7-8, 32-33.

### 3. ORR's New Policies are Arbitrary and Capricious

Defendants fail to rebut Plaintiffs' arguments regarding the arbitrary and capricious nature of ORR's policies, instead relying exclusively on ORR's alleged discretion over procedural rules and a lack of notice and comment rulemaking. *Compare* Opp. at 33 *with* PI Memo at 33-36. As discussed above, ORR cannot escape judicial review by labeling a policy as procedural when it changes the substantive requirements for sponsorship. *See Lopez*, 318 F.3d at 56. Nor is arbitrary and capricious review limited to rulemaking. *See Regents*, 591 U.S. at 24-33.

ORR's memos on the proof of identity and proof of income confirm the agency's decisions were arbitrary and capricious. Despite acknowledging that the agency was changing policy and that many sponsors would be unable to provide the new documents, the memos do not explain why the specific documents they chose are needed or why alternative, more accessible, documents could not achieve the agency's goals. *See* Biswas Memo at 3-5; Salazar Memo at 4-5; *Regents*, 591 U.S. at 30. Nor do the memos consider whether ORR's February 2025 introduction of universal fingerprinting requirements or other measures to improve the consistency of ORR's vetting policies would be sufficient to address the agency's concerns about identity fraud without fully disqualifying sponsors who lack specific forms of identification. *See* PI Memo at 11, 34;

Biswas Decl. ¶ 13; *cf.* Opp. at 8-11. Although the memos acknowledge the existence of parental rights, they appear to give such rights little to no weight and "entirely failed to consider" the rights of children to reunify with non-parent family members. *State Farm*, 463 U.S. at 43; *see also Moore v. City of E. Cleveland*, 431 U.S. 494, 504-06 (1977). The memos also entirely ignore the reliance interests of sponsors who had already submitted to intrusive vetting and shared sensitive personal information with ORR. *Regents*, 591 U.S. at 33.

To the extent Defendants do offer explanations for their policies, these explanations do not establish a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. Defendants note "difficulties authenticating foreign-issued documents, especially in a timely manner." Opp. at 12. But by fully disqualifying sponsors who lack U.S.-issued documentation, ORR blocks the release of many children entirely. ORR offers no rational explanation for why a full denial of release and retention of custody until the child's 18th birthday is preferable to delays in authentication. Nor does ORR rationally explain why foreign passports are acceptable proof of identification only if accompanied by work authorization. The agency imported the USCIS I-9 list without acknowledging that the purpose of the list—to establish identity *and work authorization*—differs from ORR's purpose to establish identity. Biswas Memo at 2-3; *see also* Dorn-Lopez Decl. ¶ 12. The Harper Memo called for a reassessment of secondary documents with verification issues, not of foreign passports. *See* Harper Memo at 9 (ECF 21-3).

As to proof of income, ORR's explanations are internally contradictory. The agency notes that denying a parent solely based on financial hardship "does not align with standard child welfare practices in the United States" and states that a "balanced approach" would include "a carve out for parents/legal guardians." Salazar Memo at 2. It also notes that stricter screening such as income

verification is usually required for *non-related* foster parents. *Id.* But the policy makes no exception for parents or close relatives and offers no reasoning for that decision. *Id*. at 2.

4.   ORR's Policies are Impermissibly Retroactive

Defendants argue, incorrectly, that ORR's revised identification and income requirements are not impermissibly retroactive because the submission of a sponsorship application does not create a vested right to approval, and sponsors do not have a settled expectation "to be judged by potentially outdated criteria when the overarching consideration is child welfare." Opp. at 33-34. Defendants misstate the law and misconstrue Plaintiffs' request for relief.

*First*, the requirements are impermissibly retroactive because they changed the legal landscape and upended reasonable expectations, not because a complete sponsorship application creates a vested right to *approval*. The updated requirements are "'substantively inconsistent' with prior agency practice and attach[] new legal consequences to events completed before [their] enactment." *Kirwa v. U.S. Dep't of Defense*, 285 F. Supp. 3d 257, 271 (D.D.C. 2018) (quoting *Arkema, Inc. v. EPA*, 618 F.3d 1, 7 (D.C. Cir. 2010)). In *Kirwa*, the government encouraged non-citizens to enlist in the military, "touting the opportunity as an 'expedited' path to citizenship." *Id*. at 263. After the plaintiffs enlisted, DOD issued new guidance for certifying the forms that enlisted members needed to apply for citizenship, including new screening and suitability requirements. *Id*. at 264. The district court found the updated guidance to be impermissibly retroactive. *Id*. at 272.

Here, ORR affirmatively encouraged undocumented sponsors to share sensitive information by assuring them they were eligible to sponsor a child and that their information would not be used for enforcement purposes except in enumerated circumstances. *See* Family

18

Reunification Application at 2 (ECF No. 10-5); Authorization for Release of Records at 1 (ECF 10-6). Defendants acknowledge their new requirements effectively preclude Plaintiffs' family members from ever sponsoring them for release. Biswas Decl. ¶¶ 22-26. The updated requirements thus change the legal landscape, are inconsistent with prior policy, and upend Plaintiffs' and their families' reliance and expectation that submitting sensitive information to ORR would make them eligible to be considered as sponsors. The law prohibits precisely this kind of retroactive policy making. *See INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (Retroactivity determination should be guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations.").

*Second*, Defendants' argument that sponsors have no expectation to be judged by "potentially outdated criteria" misunderstands Plaintiffs' claim. Plaintiffs challenge only ORR's new *threshold* eligibility requirements for sponsorship, not its ultimate determination of suitability. ORR has an obligation to release children "without unnecessary delay" and to meet regulatory timelines to adjudicate completed sponsorship applications. 45 C.F.R. §§ 410.1201, 410.1205(b). ORR cannot reset the clock by changing the documentation requirements for already-completed applications, especially given that these timelines were codified after an injunction requiring ORR to abide by them to comply with procedural due process. *See Lucas R. v. Becerra*, No. 18-5741, 2022 WL 3908829, at *2 (C.D. Cal. Aug. 30, 2022). ORR retains authority under the regulations to require more information in individual cases to address case-specific concerns.

Finally, the Court need not decide the question of whether ORR's new requirements are impermissibly retroactive to grant the narrow relief that Plaintiffs seek at this stage—that applications closed or unlawfully delayed by the challenged IFR and new documentation requirements be adjudicated based on the requirements in place when those applications were

submitted. *See* Proposed Order (ECF 10-2). If the Court agrees that Plaintiffs are likely to succeed on the merits that the new requirements are unlawful, general equitable principles require they be put in the position they would have been in the absence of ORR's unlawful conduct. PI Memo at 43-44. Here, that means ORR would adjudicate their unlawfully delayed applications under the requirements in place when the applications were submitted. If ORR cannot verify a sponsor's identity or ability to care for the child, it is of course not required to release the child. But such decisions must be based on individualized consideration.

## II.   **Plaintiffs Meet All the Remaining Preliminary Injunction Factors**

### A.   **Plaintiffs are Suffering Severe Irreparable Injury**

Plaintiffs are suffering irreparable harm because they have lost the opportunity for timely release to their families or other sponsors due to the IFR's rescission of protections against sponsor disqualification based on immigration status and ORR's unlawful new documentation requirements. Plaintiffs have also put forward concrete evidence that they have lost opportunities for release because potential sponsors or their household members are unwilling to share information with ORR for fear that it will be shared with DHS as permitted by the IFR. *See* Deisy S. Decl. ¶ 28; Ximena L. Decl. ¶ 10. That ORR may have had lawful reasons to detain them in the past and that it might deny release in the future does not negate the harm associated with this lost opportunity. *See Ramirez v. ICE*, 568 F.Supp.3d 10, 28-30 (D.D.C. 2021); *R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 191 (D.D.C. 2015). "Defendants' suggested rule, that harm resulting from improper administrative procedures is not cognizable if the same harm could have potentially occurred if proper procedures were followed, would do away with countless binding precedents and much of the APA." *Ramirez*, 568 F.Supp.3d at 30.

Defendants appear to assert that because ORR provides children with health care and other services, there is no harm in keeping children from their parents or other close relatives for the duration of their childhood and any harm that may be sustained will be treated. Opp. at 35-36; *see also* Biswas Decl. ¶¶ 22, 24-25 (noting that most of the named Plaintiffs have no current release options). This argument reflects an astonishing disregard for the value of family. The best therapist in the world cannot give Angelica S. the emotional and practical support of her sister in raising her baby in her first year of life. No amount of therapy will replace Liam W.'s ability to hug his mother and seek comfort in her company.

Such an argument is also deeply inconsistent with our constitutional tradition. *See Moore*, 431 U.S. at 503-06 ("It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural."); *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925). Defendants' citation to *Reno v. Flores,* 507 U.S. 292 (1993), is taken out of context. The issue in *Flores* was not irreparable harm, but whether children had a fundamental right to release to an unrelated caregiver based on principles of substantive due process. *Id.* at 302-03. The Court emphasized that the case *did not* involve "the right of a child to be released from all other custody into the custody of its parents, legal guardian, or even close relatives." *Id.*

In addition to family separation, children in ORR congregate care facilities experience a highly regimented life with little opportunity for educational advancement or interaction with their family, friends, or community. *See, e.g.,* Declaration of Leo B. ¶¶ 11-17; Ximena L. Decl. ¶¶ 11-12; Declaration of J.E.D.M. ¶¶ 8-11 (ECF 10-16); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 601 (1999) ("[C]onfinement in an institution severely diminishes the everyday life

activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment.").

### B.  The Balance of the Equities Favors Plaintiffs

Given the severity and immediacy of Plaintiffs' irreparable harm, the balance of equities clearly favors Plaintiffs. Defendants ask the Court to close its eyes to Plaintiffs' constitutional interests in family integrity because Plaintiffs did not press a constitutional claim. Opp. at 40. This is incorrect—Plaintiffs argued that ORR acted arbitrarily and capriciously in failing to consider their constitutional interest in family integrity. PI Memo at 35-36. Regardless of whether ORR committed a standalone substantive constitutional violation, it is undeniable that Plaintiffs have a constitutional interest in family integrity that deserves weight and consideration, and the public has an interest in preventing unnecessary family separation. And the public interest favors requiring the government to comply with federal law. *Newby*, 838 F.3d 1 at 12.

Defendants' interests are limited here by the absence of evidence that ORR's specific new documentation requirements are in fact needed to determine sponsor suitability, especially given ORR's new fingerprinting requirements and discretion to require additional vetting in individual cases. Although Defendants detail concerns regarding ORR's prior vetting process, many of these issues appear related to inconsistent application of existing vetting tools and do not explain why, for example, a parent needs work authorization to use their passport as a form of identification. Opp. at 8-12. The safety concerns Defendants identify in the named Plaintiffs' cases were identified and addressed prior to these new documentation requirements. Opp. at 40. Defendants' repeated references to the arrest of an adult in Angelica S.'s sister's home, for instance, are irrelevant to the issues in this case. Angelica S.'s sister informed ORR of the arrest and ORR

conducted a home study to ensure he was no longer living in the home. Biswas Decl. ¶ 22; Deisy S. Decl. ¶ 16. This incident was unrelated to any identification or proof of income requirement. And Defendants' assertion that the Foundational Rule's restriction on information-sharing "threatens to hamper" efforts to prosecute fraud and human trafficking is unsupported by specific facts and appears nowhere in the IFR. Opp. at 42; *see Chenery*, 318 U.S. at 87.

Significantly, Plaintiffs' requested relief still leaves the ultimate release decision to ORR and does not require ORR to release any child to an unsafe sponsor. Plaintiffs request only fair consideration of their sponsors' applications. Such relief is in the public interest.

### III.    The Court Should Grant Provisional Class Certification and Nationwide Relief

#### Provisional Class Certification is Warranted

Defendants assert Plaintiffs fail to meet the Rule 23 standard for class certification but do not rebut Plaintiffs' evidence and arguments in support of class certification. Plaintiffs' motion for class certification is referenced in the preliminary injunction motion and both motions were served on Defendants at the same time. *See* PI Memo at 3-4, 15; *see also* ECF 9 at 3; ECF 10 at 4. Defendants have no basis to claim an inability to respond. Therefore, it is currently undisputed that Plaintiffs have shown numerosity, commonality, typicality, and adequacy. ECF No. 9-1 at 11-18.

The Supreme Court also recently clarified that courts "need not decide whether a class should be certified" prior to granting "temporary relief to a putative class." *A.A.R.P. et al., v. Trump et al.*, No. 24-1177, 2025 WL 1417281, at *3 (U.S. May 16, 2025) (citing 2 W. Rubenstein, Neuberg & Rubenstein on Class Actions §4:30 (6th ed. 2022 and Supp. 2024)). District courts routinely grant provisional class certification at the preliminary injunction stage or simply grant

preliminary injunctions before class certification. *See, e.g., Afghan and Iraqi Allies v. Blinken*, 103 F.4th 807, 812 (D.C. Cir. 2024); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 530-31 (D.D.C. 2020).

### A.  Nationwide Relief is Needed to Address the Scope of Irreparable Harm

If the Court grants provisional class certification, Defendants' arguments against a nationwide injunction are inapplicable. *See Ramirez*, 568 F. Supp. 3d at 27 n.7. In any event, Defendants' arguments are "at odds with settled precedent." *Alabama Ass'n of Realtors v. Dep't of Health and Human Servs.*, 539 F. Supp. 3d 29, 43 (D.D.C. 2021) (quoting *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019)). "The D.C. Circuit has instructed that when a regulation is declared unlawful, 'the ordinary result is that the rule[ ] [is] vacated—not that [its] application to the individual petitioner is proscribed.'" *Id.* (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)); *see also Corner Post*, 603 U.S. at 827 (Kavanaugh, J., concurring) (noting that the government's "far-reaching argument that the APA . . . permits a court only to enjoin an agency from enforcing a rule against the plaintiff" is wrong).

This principle applies with equal force to preliminary relief staying an agency action. *See District of Columbia v. U.S.D.A.*, 444 F. Supp. 3d 1, 48 (D.D.C. 2020) ("[T]he APA's § 705 must be read to authorize relief from agency action for any person otherwise subject to the action, not just as to plaintiffs."). Defendants' reliance on *Neb. DHHS v. DHHS*, 435 F.3d 326 (D.C. Cir. 2006), is misplaced. In that case, Nebraska challenged a specific agency decision and did not seek vacatur of underlying policies. *Id.* at 330. Here, by contrast, Plaintiffs have sought vacatur of the IFR as well as ORR's documentation policies and have shown that these policies are applied nationwide and are resulting in predictable irreparable harm to unaccompanied children across the country. *See* Additional Background Sec. II, *supra*; Felix Decl. ¶¶ 7-9; J.E.D.M. Decl. ¶¶ 6-7; *cf. Neb.*

*DHHS*, 435 F.3d at 330; *U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F. Supp. 3d 125, 128-29 (D.D.C. 2015) (limiting injunction scope "because there is no evidence of irreparable harm to persons others than Plaintiffs or members of USARK before the Court").

### IV.    The Court Should Require No Bond or a Nominal Bond

Defendants argue that Plaintiffs must be required to post security pursuant to Federal Rule of Civil Procedure 65(c). Courts in this Circuit, however, have held the Rule vests district courts with broad discretion to determine the appropriate amount of an injunction bond, including the authority to set no bond at all. *Am. First Legal Found. v. Becerra*, No. 24-1092, 2024 WL 3741402, at *16 n.11 (D.D.C. Aug. 9, 2024) (collecting cases). Here, waiving the bond requirement (or, alternatively, setting a nominal amount) is appropriate because Defendants have not shown, or even alleged, they will suffer any monetary harm from the requested injunction. *See e.g.*, *LULAC v. Exec. Office of the President*, No. 25-0946, 2025 WL 1187730, at *62 (D.D.C. Apr. 24, 2025); *Bailey v. Fed. Bureau of Prisons*, No. 24-1219, 2024 WL 3219207, at *13 n.5 (D.D.C. June 28, 2024). Moreover, Plaintiffs are unaccompanied children and a non-profit organization with limited financial means. Imposing more than a nominal bond under these circumstances, where Plaintiffs are seeking to vindicate important rights, would be particularly harmful. *P.J.E.S.*, 502 F. Supp. 3d at 520; *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971).

### CONCLUSION

Plaintiffs respectfully request that the Court provisionally certify the putative class and grant a preliminary injunction to remedy Plaintiffs' significant and ongoing irreparable injuries.

May 27, 2025                    Respectfully submitted,

                               */s/ Mishan Wroe*

Neha Desai (admitted *pro hac vice*)
Mishan Wroe (admitted *pro hac vice*)
Diane de Gramont (admitted *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
(510) 835-8098
ndesai@youthlaw.org
mwroe@youthlaw.org
ddegramont@youthlaw.org

David Hinojosa (D.C. Bar No. 1722329)
Rebecca Wolozin (D.C. Bar No. 144369)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
(202) 868-4792
dhinojosa@youthlaw.org
bwolozin@youthlaw.org

Cynthia Liao (admitted *pro hac vice*)
Joel McElvain (D.C. Bar No. 448431)
Skye L. Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
cliao@democracyforward.org
jmcelvain@democracyforward.org
sperryman@democracyforward.org