## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELICA S., *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:25-cv-01405 (DLF) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### Plaintiffs' Separate Statement of Undisputed Material Facts

## I.    Interim Final Rule

| Undisputed Material Fact | Administrative Record and/or Evidentiary or Other Support |
|---|---|
| 1.  The sole justification for the IFR issued on March 25, 2025, was a purported conflict between the Information Sharing provision of 45 C.F.R. § 410.1201(b) and 8 U.S.C. § 1373. | UC Program Foundational Rule Update (IFR), Angelica-00000021-28<br><br>Informational Memo re: Interim Final Rule entitled "Unaccompanied Children Program Foundational Rule; Update to Accord with Statutory Requirements" ("IFR Informational Memo"), Angelica-00000099-101<br><br>Decision memo re: Approval of Interim Final Rule entitled "Unaccompanied Children Program Foundational Rule; Update to Accord with Statutory Requirements" ("IFR Decision Memo"), Angelica-00000102-106. |
| 2.  The administrative record does not provide any justification (other than an assertion that the Disqualification and Information Collection provisions of 45 C.F.R. § 410.1201(b) are inextricably linked) for the rescission of the Disqualification and Information Collection provisions in 45 C.F.R. § 410.1201(b). | Administrative Record Index ("Index"), ECF 47-1; IFR, Angelica-00000021-28, IFR Informational Memo, Angelica-00000099-101, IFR Decision Memo, Angelica-00000102-106. |
| 3.  The administrative record does not address the impact on unaccompanied children's length of custody of the rescission of 45 C.F.R. § 410.1201(b). | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica-00000099-101, IFR Decision Memo, Angelica-00000102-106. |
| 4.  The administrative record does not address potential conflicts between the IFR and ORR's statutory obligation to promptly place children in the least restrictive setting. | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica-00000099-101, IFR Decision Memo, Angelica-00000102-106. |

| | Undisputed Material Fact | Administrative Record and/or Evidentiary or Other Support |
|---|---|---|
| 5. | The administrative record does not address the reliance interests of sponsors and other adults required to participate in the sponsorship process who already provided sensitive personal information to ORR based on ORR's prior policies. | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica-00000099-101, IFR Decision Memo, Angelica-00000102-106<br><br>Declaration of Deisy S. ("Deisy S. Decl.") ¶ 10, ECF 9-12<br><br>Declaration of Ximena L. ("Ximena L. Decl." ¶ 5, ECF 9-15. |
| 6. | The administrative record does not mention Congressional restrictions on the use of sponsor information by DHS or ORR's Privacy Act Notice. | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica-00000099-101, IFR Decision Memo, Angelica-00000102-106. |
| 7. | The public submitted nearly 400 comments on the IFR. | Comments, Unaccompanied Children Program Foundational Rule; Update, https://www.regulations.gov/document/ACF-2025-0004-0001/comment (last visited Sept. 9, 2025). |
| 8. | The Foundational Rule, part of which the IFR repealed, received over 73,000 comments. | Comments, Unaccompanied Children Program Foundational Rule, https://www.regulations.gov/document/ACF-2023-0009-0001/comment (last visited Sept. 9, 2025). |

## II.     Sponsor Application Process

| Undisputed Material Fact | Administrative Record and/or Evidentiary or Other Support |
|---|---|
| 9. When a child enters ORR custody, the ORR care provider interviews the child and close family members to identify potential sponsors. | Office of Refugee Resettlement, Unaccompanied Alien Children Bureau Policy Guide ("Policy Guide") § 2.2.1, |

| | |
|---|---|
| | https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025). |
| 10. After an ORR care provider identifies a potential sponsor, the care provider or ORR National Call Center sends the child's potential sponsor a sponsor application packet with an application form. | Policy Guide § 2.2.3, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025). |
| 11. The March 2024 version of ORR's "Family Reunification Application" was approved by the Office of Management and Budget ("OMB") pursuant to the Paperwork Reduction Act. | Plaintiffs' First Amended Complaint "Amended Complaint") ¶¶ 67, 70-71, ECF 48; Defs.' Answer to First Amended Complaint ("Defs.' Answer") ¶¶ 67, 70-71, ECF 53. |
| 12. Most of the potential sponsors of children in ORR custody lack stable lawful immigration status. | Decision Memo re: Sub-Regulatory Guidance; Revisions to the Unaccompanied Children Bureau Policy Guide and Manual of Procedures Revisions to Require Sponsors to Provide Proof of Income ("Income Decision Memo), Angelica-00000115 ("Immigrant rights advocates are likely to note that the majority of potential sponsors engaging with UACB do not have work authorization and may not be able to provide documentation required under this update to ORR's sub-regulatory guidance") <br><br> Decision Memo re: Revisions to ORR UACB Policy Guide Sections 2.2.4, 2.7.4, and 5.8.2, and accompanying procedures—Improving the Sponsor Vetting Process in Order to Mitigate Fraud and Enhance UAC Protections ("ID Decision Memo"), Angelica-00000084 |

| | |
|---|---|
| | Declaration of Mari Dorn-Lopez ("Dorn-Lopez Decl.") ¶ 8, ECF 10-13

Declaration of Jenifer Smyers ("Smyers Decl.") ¶ 7, ECF 10-14

William Kandel, Cong. Rsch. Serv., R 43599 *Unaccompanied Alien Children: An Overview* 24 (updated Sept. 2024), https://www.congress.gov/crs-product/R43599 (In 2018, ICE data indicated that approximately 80 percent of sponsors and household members lacked lawful immigration status.). |
| 13. ORR has historically accepted sponsors without stable lawful immigration status. | ID Decision Memo, Angelica-00000082-84; Proof of Income Decision Memo, Angelica-00000115; Preamble, ORR Foundational Rule, 89 Fed. Reg. at 34440. |
| 14. ORR requires each sponsor application to include a sponsor care plan identifying an alternative adult caregiver who could care for the child if the sponsor becomes unavailable. | Policy Guide §§ 2.6, 2.7.6, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025); Smyers Decl. ¶ 8, ECF 10-14. |
| 15. As of February 14, 2025, ORR requires that all sponsors, all adult household members, and all alternate caregivers to submit to a fingerprint-based background check. | Amended Complaint ¶ 47; Defs.' Answer ¶¶ 46-47.

Field Guidance #26 - Fingerprint Background Checks and Acceptable Supporting Documentation for a Family Reunification Application ("Fingerprinting Guidance"), Angelica-00000001-04

Informational Memo re: Office of Refugee Resettlement to publish Field Guidance 26, |

| | "Fingerprint Background Checks and Acceptable Supporting Documentation for a Family Reunification Application" ("Fingerprinting Informational Memo"), Angelica-00000077-79. |
|---|---|
| 16. At the time of the proof of identification policy change, ORR was also actively considering expanded DNA testing for related sponsors. | Informational Memo re: Universal Biometric Screening for Sponsors of Unaccompanied Alien Children ("Biometric Informational Memo"), Angelica-00000048, 58-59. |
| 17. As of March 14, 2025, ORR also requires DNA testing of the child and sponsor in every case where a sponsor claims a biological relationship with the child. | Amended Complaint ¶ 48; Defs.' Answer ¶ 48.<br><br>Decision Memo re: Field Guidance #27: DNA Testing Expansion ("DNA Decision Memo"), Angelica-00000093-98. |

### III.    Changes to Proof of Identity Requirements

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 18. The current OMB-approved application form lists acceptable forms of identification for sponsors or other individuals required to participate in the sponsorship process in the "Supporting Documents" section and permits these individuals to establish their identity through a primary document such as a foreign passport or two or more secondary documents such as a birth certificate, foreign national identification card, or similar documentation. | Amended Complaint ¶¶ 50, 67; Defs.' Answer ¶¶ 50, 67<br><br>UAC MAP Section 2.2.4, 2.4.1, 2.7.4 - 2025 04 15, Angelica-00000029-30 (reflecting prior identification requirements)<br><br>Ex. 1-A, Family Reunification Application at 8, Declaration of Diane de Gramont ("de Gramont Decl."), ECF 10-5. |
| 19. On March 7, 2025, ORR unilaterally amended its Policy Guide § 2.2.4 to include a new, more restrictive list of acceptable forms of identification for sponsors, | Amended Complaint ¶ 67; Defs.' Answer ¶ 67 |

| | |
|---|---|
| adult household members, and alternative adult caregivers that differs from the requirements in the OMB-approved application form. | Policy Guide § 2.2.4, Angelica-00000005-06.<br><br>ID Decision Memo, Angelica-00000080-85. |
| 20. ORR has not obtained OMB approval for its new identification information collection requirements. | Amended Complaint ¶ 167; Defs.' Answer ¶ 167. |
| 21. The new list of permissible forms of identification eliminates all forms of identification issued by foreign governments, except for Canadian driver's licenses and foreign passports accompanied by proof of lawful U.S. immigration status such as "an endorsement to work" or an I-551 indicating permanent residence. | Policy Guide § 2.2.4, Angelica-00000005-06; Amended Complaint ¶ 51; Defs.' Answer ¶ 51. |
| 22. ORR's new proof of identification requirements are imported from the U.S. Citizenship and Immigration Services ("USCIS") Form I-9 requirements for employees to establish identity and work authorization. | ID Decision Memo, Angelica-00000082-83; U.S. Citizenship and Immigration Services, Form I-9 Acceptable Documents, https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents (last accessed Sept. 8, 2025). |
| 23. The Form I-9 is specifically designed to disqualify individuals who lack lawful work authorization. | U.S. Citizenship and Immigration Services, I-9, Employment Eligibility Verification, https://www.uscis.gov/i-9 (last accessed Sept. 10, 2025).<br><br>U.S. Citizenship and Immigration Services, Form I-9 Acceptable Documents, https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents (last accessed Sept. 10, 2025). |
| 24. ORR's decision memo acknowledges—but does not rebut—a likely objection from advocates that the new identity requirements will be "particularly burdensome on the ability of undocumented or out of status [individuals] to sponsor children." | ID Decision Memo, Angelica-00000084. |

| | |
|---|---|
| 25. The only justification for using the Form I-9 list in the administrative record is that "ORR believes" these documents "provide a safer framework for proving and authenticating identity" and "[t]hese are documents that the federal government relies on to establish identity for both citizens and non-citizens." | ID Decision Memo, Angelica-0000082. |
| 26. ORR did not consider that the I-9 list is specifically intended to establish work authorization and is used to establish identity only for non-citizens with work authorization. | ID Decision Memo, Angelica-0000080-85. |
| 27. The federal government routinely accepts foreign passports as proof of identification in other contexts, such as for visa applications or tax identification numbers. | U.S. Department of State, Bureau of Consular Affairs, Visitor Visa, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html#documentation (last accessed Sept. 10, 2025)<br><br>Internal Revenue Service, ITIN Supporting Documents, https://www.irs.gov/tin/itin/itin-supporting-documents (last accessed Sept. 10, 2025). |
| 28. ORR did not consider alternatives to the Form I-9 list of acceptable identifications. | ID Decision Memo, Angelica-0000080-85. |
| 29. ORR's earlier February 7, 2025, memorandum regarding fraud concerns in the sponsorship process emphasized problems with ORR's internal procedures rather than the specific form of identification presented and called only for reassessing the use of certain *secondary* documents "that cannot reliably be verified." | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program ("Harper Memo"), Angelica-00000246-254. |
| 30. ORR did not consider whether nationally-issued documents such as foreign passports, national identification cards, or consular identification cards present the same verification challenges as baptismal certificates or marriage certificates. | ID Decision Memo, Angelica-0000080-85; Harper Memo, Angelica-00000246-254. |
| 31. ORR did not consider an exception for sponsors whose identities could be easily verified with their home country consulate. | ID Decision Memo, Angelica-0000080-85; Declaration of Isabel D. ("Isabel D. Decl.") ¶ 4, ECF 56-7 (noting that she used her consular identification card as a form of identification). |

| | |
|---|---|
| 32. ORR requires a birth certificate to establish the child's identity and birth certificates or other similar foreign documents to establish the sponsor-child relationship. | Policy Guide § 2.2.4, Angelica-00000007. |
| 33. On March 7, 2025—simultaneously with ORR's new sponsor identification requirements—ORR amended the Policy Guide to require that "Federal staff must exhaust all available avenues to verify the authenticity of birth certificates." | *Compare* Policy Guide § 2.2.4, Angelica-00000007 (as of March 10, 2025), *with* Ex. 1-E, ORR Policy Guide Sec. 2.2.4, de Gramont Decl., ECF 10-9 (as of February 27, 2025). |
| 34. ORR has not explained why it can authenticate birth certificates but not foreign passports, consular identification cards, or other foreign issued identification documents. | Policy Guide § 2.2.4, Angelica-00000007; ID Decision Memo, Angelica-0000080-85. |
| 35. ORR did not acknowledge that the delays associated with authenticating foreign documents will persist even if the sponsor has U.S.-issued identification. | Policy Guide § 2.2.4, Angelica-00000005; ID Decision Memo, Angelica-0000080. |
| 36. ORR applied its new proof of identification policy to all pending sponsorship applications, including to completed applications ready for approval. | Amended Complaint ¶¶ 75, 102; Defs.' Answer ¶¶ 75, 102<br><br>Deisy S. Decl. ¶ 22, ECF 9-12; Declaration of Rosa M. ("Rosa M. Decl.") ¶¶ 4-5, ECF 9-13; Ex. 5, Declaration of J.E.D.M. ("J.E.D.M. Decl.") ¶ 6, ECF 10-16; Declaration of Sofia W. ("Sofia W. Decl.") ¶¶ 6-7, ECF 9-14; Ximena L. Decl. ¶¶ 6-8, ECF 9-15. |
| 37. Parents and other sponsors who provided ORR a copy of their foreign passport but lacked accompanying immigration documentation were told that their foreign passports were now insufficient under the new policy. | Amended Complaint ¶¶ 75, 102, 115-116; Defs.' Answer ¶¶ 75, 102, 115-116<br><br>Rosa M. Decl. ¶¶ 3, 5, ECF 9-13; Sofia W. Decl. ¶¶ 4, 7, ECF 9-14; Ximena L. Decl. ¶¶ 6-7, ECF 9-15; Deisy S. Decl. ¶¶ 11, 22, ECF 9-12; Declaration of Milagro G. ("Milagro G. Decl.") ¶¶ 5-6, ECF 56-5. |

| | |
|---|---|
| 38. Even if a sponsor has qualifying identification and there are no safety concerns, ORR refuses to release a child unless *all* adults in the household and the alternate caregiver also have newly required identification. | ORR Policy Guide § 2.2.4, Angelica-00000005; Amended Complaint ¶¶ 109-111; Defs.' Answer ¶¶ 109-111; Declaration of Steven N. ("Steven N. Decl.") ¶¶ 3, 6, 8-9, ECF 56-3. |
| 39. ORR's decision memo regarding proof of identification does not address the burdens on family integrity of disqualifying non-parent close relative sponsors based on a lack of specific identification. | ID Decision Memo, Angelica-0000080-85. |
| 40. The new policy permits exceptions to the new ID requirements only for a parent or legal guardian sponsor, and even then, only if "supported by clear justification" and with approval of ORR Headquarters "on a case-by-case basis." | Policy Guide § 2.2.4, Angelica-00000005; ID Decision Memo, Angelica-0000083. |
| 41. Even when a parent is the sponsor, the adult household members living with the parent and alternate caregiver are not eligible for an exception and still have to provide qualifying identification. | Amended Complaint ¶ 55, Defs.' Answer ¶ 55; Sofia W. Decl. ¶ 7, ECF 9-14; Rosa M. Decl. ¶ 6, ECF 9-13; Isabel D. Decl. ¶ 5, ECF 56-7. |
| 42. The ID decision memo notes, without rebutting, that stakeholders are "likely to claim ORR's restrictions place barriers on sponsors, in particular parents, to the principles of family unity." | ID Decision Memo, Angelica-0000084. |
| 43. The ID decision memo includes no reasoning or explanation of the decision to require ORR Headquarters approval for every parent or legal guardian sponsor who lacks newly required identification. | ID Decision Memo, Angelica-0000080-85. |
| 44. The ID decision memo includes no consideration of the likely delays associated with requiring ORR Headquarters approval for every parent or legal guardian sponsor who lacks newly required identification. | ID Decision Memo, Angelica-0000080-85. |
| 45. The ID decision memo includes no reasoning or explanation regarding the refusal to apply the potential exception for parents or legal guardians to the parent's household members. | ID Decision Memo, Angelica-0000080-85. |
| 46. ORR gave no consideration to the family integrity burdens of forcing parents to choose between living with their close relatives or sponsoring their sons or blocking a sibling from sponsorship so long as he lives with his wife who lacks acceptable identification. | ID Decision Memo, Angelica-00000080-85; Isabel D. Decl. ¶ 5, ECF 56-7; Sofia W. Decl. ¶ 7, ECF 9-14; Steven N. Decl. ¶¶ 3, 8-9, ECF 56-3. |
| 47. There is no timeline or decision criteria for ORR's approval of ID exception requests. | Policy Guide § 2.2.4, Angelica-00000006; ID Decision Memo, Angelica-00000080-85. |

| | |
|---|---|
| 48. Children and their parents can be left weeks waiting for approval of an ID exception with no information or updates. | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Defs.' Answer ¶ 125 (admitting that, as of August 29, 2025, ORR had not issued Isabel a decision regarding her exception request); Rosa M. Decl. ¶¶ 9-11, ECF 9-13;<br><br>Ex.. 1, Supplemental Declaration of Cynthia Felix ¶¶ 15-17, September 11, 2025 ("Felix Suppl. Decl.") (3-year old child has been pending ID exception request to reunite with mother since 8/1/25). |
| 49. ORR is failing to adjudicate completed sponsor applications within required timelines: 10 or 14 days for parents, legal guardians, and close relatives, "absent an unexpected delay (such as a case that requires completion of a home study)." | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Amended Complaint ¶ 125; Defs.' Answer ¶ 125; Rosa M. Decl. ¶¶ 9-11, ECF 9-13; Amended Complaint ¶ 13; Defs.' Answer ¶ 13. |
| 50. ORR is taking over a month in some cases to decide applications from parents even after a home study and all other vetting requirements are complete and the case manager has submitted the case to ORR Headquarters. | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Ex. 1, Felix Suppl. Decl. ¶¶ 15-17; Amended Complaint ¶ 125; Defs.' Answer ¶ 125. |
| 51. ORR care providers have told relatives that they cannot sponsor a child because of their lack of qualifying identification and to instead identify *any* adult they know with the right form of identification. | Deisy S. Decl. ¶ 25, ECF 9-12. |
| 52. Children have pursued release to non-family sponsors because their close family members are disqualified due to lack of qualifying identification. | Declaration of Yair G. ("Yair G. Decl.") ¶¶ 7, 10, ECF 56-4; Milagro G. Decl. ¶ 8, ECF 56-5; Amended Complaint ¶ 117; Defs.' Answer ¶ 117. |
| 53. In contrast to agency memos related to fingerprinting and DNA testing, ORR's decision memo on proof of identification includes no analysis of the impact on children's length of custody associated with the new documentation requirement, much less a weighing of these likely delays against the safety benefits of the new documents. | ID Decision Memo, Angelica-0000080-85<br><br>Biometric Informational Memo, Angelica-00000048-71.<br>Decision Memo re: Approval for the Office of Refugee Resettlement to publish Field Guidance 26, "Fingerprint Background Checks and Acceptable Supporting |

| | |
|---|---|
| | Documentation for a Family Reunification Application" ("Fingerprint Decision Memo"), Angelica-00000072-76;<br><br>Decision Memo re: Field Guidance #27: DNA Testing Expansion, Angelica-000000093-98. |
| 54. ORR did not consider whether these additional biometric information collection measures such as fingerprinting, and DNA testing, could adequately address concerns about sponsor, household member, or alternate caregiver identity fraud. | ID Decision Memo, Angelica-0000080-85; *see also* Fingerprint Decision Memo, Angelica-00000072-76; DNA Decision Memo, Angelica-000000093-98. |
| 55. In deciding to change its identification requirements, ORR did not consider the HHS OIG's 2019 report on the serious mental health impacts of prior policies that increased length of custody, including "higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation." | Index, ECF 47-1; ID Decision Memo, Angelica-0000080-85<br><br>Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09-18-00431*, Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, 12-13 (Sept. 2019), https://oig.hhs.gov/documents/evaluation/3153/OEI-09-18-00431-Complete%20Report.pdf. |
| 56. ORR's proof of identification decision memo did not consider the reliance interests of children and sponsors who began the reunification process and provided extensive sensitive personal information to ORR because they believed they were eligible to sponsor a child based on the requirements in the sponsorship application. | ID Decision Memo, Angelica-0000080-85 |
| 57. ORR did not consider the emotional distress inflicted on children who believed they would be reunited with family members only to learn that they may never be released at all. | ID Decision Memo, Angelica-0000080-85; Declaration of Leo B. ("Leo B. Decl.") ¶¶ 9-14, ECF 9-10; Declaration of Angelica S. ("Angelica S. Decl.") ¶¶ 8-9 ECF 9-7; Rosa M. Decl. ¶¶ 8, 10-11, ECF 9-13; |

| | Ximena L. Decl. ¶¶ 11-12, ECF 9-15; Yair. G. Decl. ¶ 8-9, ECF 56-4. |
| --- | --- |
| 58. ORR's decision memos on proof of identification did not consider the risk to children of abuse or mistreatment in ORR custody. | ID Decision Memo, Angelica-0000080-85. |
| 59. A 2024 Department of Justice lawsuit alleged persistent sexual abuse and harassment of unaccompanied children in facilities operated by Southwest Key Programs, the largest operator of ORR facilities at the time. | Complaint ¶ 1, *U.S. v. Southwest Key Programs, Inc.*, No. CV 24-00798 (W.D. Tex. July 17, 2024), ECF No. 1. |

### IV.    Changes to Proof of Income Requirements

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
| --- | --- |
| 60. The OMB-approved sponsor application also asks sponsors to provide a narrative answer about their income and how they will financially support the child but does not require specific supporting documentation. | Amended Complaint ¶¶ 67, 167; Answer ¶¶ 67, 167<br><br>Current Published UAC Tools wrt Proof of Income, Angelica-00000309-310;<br><br>Ex. 1-A, Family Reunification Application at 6, 8-10, de Gramont Decl, ECF 10-5. |
| 61. On April 15, 2025, ORR again amended Policy Guide § 2.2.4 to require specific documentation of proof of income from all sponsors. | Income Decision Memo, Angelica-00000111-116, 121<br><br>UAC Policy 2.2.4, 2.4.1 (Redline), Angelica-00000121. |
| 62. All sponsors must now provide either their previous year's tax return, 60 days of continuous paystubs, or a letter from their employer on company letterhead verifying their employment and salary information. | Amended Complaint ¶ 56; Defs.' Answer ¶ 56.<br><br>Income Decision Memo, Angelica-00000121, 124. |
| 63. Although the agency produced multiple memos discussing the importance of verifying sponsor financial stability, none explained why the agency chose these specific documents. | Index, ECF 47-1<br><br>Income Decision Memo, Angelica-00000111-116 |

| | |
|---|---|
| | Decision memo re: UAC Policy Guide, Manual of Procedures (MAP) Revisions - Proof of Income, Angelica-0000086-92 ("Kronk Income Memo")<br><br>Decision memo re: Revisions to the Unaccompanied Children Bureau Policy Guide and Manual of Procedures (MAP) Revisions to require sponsors to provide proof of income, Angelica-00000107-110 ("March 18 Salazar Income Memo"). |
| 64. The April 15, 2025, policy change related to proof of income differed from the requirements of the sponsor application. | Amended Complaint ¶ 67; Defs.' Answer ¶ 67. |
| 65. The policy change related to proof of income applied to all applications, including applications that were already complete. | Amended Complaint ¶ 83; Defs.' Answer ¶ 83.<br><br>Rosa M. Decl. ¶ 8, ECF 9-13; Ximena L. Decl. ¶ 10, ECF 9-15. |
| 66. The April 15, 2025, revision of Policy Guide § 2.2.4 related to proof of income includes no exceptions for parents or legal guardians. | Policy Guide § 2.2.4, Angelica-00000121. |
| 67. The Policy Guide section related to proof of income includes no other mechanism to prove financial stability and ability to care for the child. | Amended Complaint ¶ 57; Defs.' Answer ¶ 57<br><br>Policy Guide § 2.2.4, Angelica-00000121. |
| 68. ORR's decision memo related to proof of income acknowledges, without rebutting, the likely argument "that the majority of potential sponsors engaging with UACB do not have work authorization and may not be able to provide documentation required under this update to ORR's sub-regulatory guidance." | Income Decision Memo, Angelica-00000115. |
| 69. Despite acknowledging that potential sponsors may not have these proof of income documents and "may not be able to complete their sponsorship application or may go to more extreme lengths to fake documents in order to sponsor children," ORR did not consider whether alternative more accessible | Income Decision Memo, Angelica-00000111-115; Rosa M. Decl. ¶ 8, ECF 9-13. |

| | |
|---|---|
| documents could equally serve its purposes—such as bank statements or a letter from a small employer who lacks company letterhead. | |
| 70. ORR also failed to consider that in some cases another individual—such as the sponsor's partner—may contribute financial support to the child. | Income Decision Memo, Angelica-00000111-115; Ximena L. Decl. ¶ 10, ECF 9-15. |
| 71. ORR did not explain why ORR's existing tools—which included inquiries about a sponsor's sources of financial support, employment, and income—were insufficient to confirm financial stability, beyond vague references to minimizing variability in decision making. | Income Decision Memo, Angelica-00000112-115. |
| 72. ORR's proof of income decision memo includes a section on relevant legal authority but cites only the TVPRA and Foundational Rule provisions related to sponsor vetting and does not mention ORR's corresponding statutory duties and regulations to release children to the least restrictive setting without unnecessary delay. | Income Decision Memo, Angelica-00000112-113. |
| 73. ORR's decision memo regarding its new proof of income policy notes that the new policy "could result in longer lengths of stay for children in ORR custody, which could be a litigation risk to ORR," but the administrative record related to proof of income does not examine the expected impacts on length of stay or weigh them against the safety benefits of the new policy. | Income Decision Memo, Angelica-00000115; *see also* Index, ECF 47-1; March 18 Salazar Income Memo, Angelica-00000107; Kronk Income Memo, Angelica-0000086-92. |
| 74. ORR did not consider the mental health and other impacts on detained children of the expected increase in detention time caused by this new proof of income policy. | Income Decision Memo, Angelica-00000111-115. |
| 75. ORR did not weigh the expected benefits of its proof of income policies against the impacts on family integrity, despite acknowledging that the new policy would could lead to a "dramatic increase" in the number of denials of close relative sponsors (Category 1 and Category 2). | Kronk Income Memo, Angelica-00000090  Income Decision Memo, Angelica-00000111-115. |
| 76. The proof of income decision memo notes that stricter financial screening is typically required for *non-related* foster parents and recognizes that denying a parent or legal guardian "solely based on financial hardship . . . does not align with standard child welfare practices in the United States." | Income Decision Memo, Angelica-00000111-115. |
| 77. The proof of income decision memo notes that "a carve out for parents/legal guardians [] ensures a balanced approach, protecting parental rights while maintaining child safety protections against trafficking and labor exploitation." | Income Decision Memo, Angelica-00000112. |

| | |
|---|---|
| 78. ORR adopted the proof of income requirements without any exception for parents and legal guardians and did not explain why it rejected a carve out for parents and legal guardians. | Income Decision Memo, Angelica-00000111-115. |
| 79. The administrative record related to proof of income does not include consideration of the HHS OIG's 2019 report on the serious mental health impacts of prior policies that increased length of custody, including "higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation." | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18 Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086-92<br><br>Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09-18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody* 13 (Sept. 2019), https://oig.hhs.gov/documents/evaluation/3153/OEI-09-18-00431-Complete%20Report.pdf. |
| 80. The administrative record related to proof of income does not include consideration of the reliance interests of children and sponsors who began the reunification process and provided extensive sensitive personal information to ORR because they believed they were eligible to sponsor a child based on the requirements in the sponsorship application. | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18 Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086-92. |
| 81. The administrative record related to proof of income does not include consideration of the risks to children of abuse or mistreatment in ORR custody. | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18 Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086-92. |

## V.    Prolonged Detention

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 82. Children are routinely remaining in custody far longer because of ORR's new identification and proof of income requirements. | Declaration of Cynthia Felix ¶¶ 7-8, ECF 10-15 ("Felix Decl."); Ex. 1, Felix Suppl. Decl. ¶¶ 14-15, 20; Yair G. Decl. ¶¶ 7-10, ECF 56-4; Isabel D. Decl. ¶¶ 2, 4-6, 8, 10, ECF 56-7; Steven N. Decl. ¶¶ 6-9, ECF 56-3. |
| 83. ORR shelters are more restrictive than living in the community. | Leo B. Decl. ¶¶ 11-13, 15-16, ECF 9-10 (describing restrictive conditions in shelter); Declaration of Liam W. ¶ 9, ECF 9-9 ("Liam W. Decl."); Angelica S. Decl. ¶ 13, ECF 9-7; Ximena L. Decl. ¶¶ 11-12, ECF 9-15; Yair G. Decl. ¶¶ 9-12, ECF 56-4; Declaration of David D. ("David D. Decl.") ¶¶ 6-9, ECF 56-6. |
| 84. The average length of custody for children discharged from ORR custody has climbed precipitously from 37 days in January 2025 to 49 days in February 2025 to 112 days in March 2025 to a peak of 217 days in April before falling slightly to 182 days in August 2025. | Ex. 1-H, ORR Fact Sheets and Data, Average Monthly Data as of April 7, 2025 at 2, de Gramont Decl., ECF 10-12; Fact Sheets and Data, Office of Refugee Resettlement, Average Monthly Data (current as of Sept. 11 2025), https://perma.cc/2X2G-YT3X. |
| 85. The average length of custody for children who remain in ORR custody was 179 days in August 2025. | Fact Sheets and Data, Office of Refugee Resettlement, Average Monthly Data (current as of Sept. 11 2025), https://perma.cc/2X2G-YT3X. |
| 86. Between fiscal year 2015 and fiscal year 2024, the average length of ORR custody ranged between 27 days and 69 days. | Fact Sheets and Data, Office of Refugee Resettlement, Average Length of Care (current as of Aug. 18, 2025), https://perma.cc/8PBB-8MY4; Defs.' Answer ¶ 58. |

## VI.    Proposed Changes to Sponsor Application Packet

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 87. On April 25, 2025, ORR published a notice of information collection under the Paperwork Reduction Act to revise the Family Reunification Application (to be renamed the "Sponsor Application"), with a 60-day comment period. | Defs.' Answer ¶ 70; Proposed Information Collection Activity: Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 17438 (Apr. 25, 2025). |
| 88. On August 14, 2025, ORR published a notice of Submission for OMB Review of the Sponsor Application Packet, with a comment period ending on September 15, 2025. | Defs.' Answer ¶ 71; Submission for Office of Management and Budget Review; Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 39194 (Aug. 14, 2025). |
| 89. The proposed changes to the sponsorship application include changes to the required "Supporting Documents" related to proof of identification and proof of income. | Defs.' Answer ¶ 71; Submission for Office of Management and Budget Review; Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 39194 (Aug. 14, 2025); Decision memo re: UAC Policy Guide, Manual of Procedures (MAP) Revisions - Proof of Income, Angelica-00000086-92; Income Decision Memo, Angelica-00000114, 124-125. |
| 90. ORR has not yet obtained OMB approval for its changes to the proof of identification and proof of income information collection requirements. | Defs.' Answer ¶¶ 67, 167. |

## VII.    Prior Information Sharing with DHS

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 91. In 2018, ORR's expanded fingerprinting requirements and memorandum of agreement with DHS to share information obtained through the sponsorship | U.S. Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09- |

| | |
|---|---|
| vetting process directly with U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP"), which they planned to use for enforcement purposes, led to a reduction in sponsors willing to come forward to sponsor children. | 18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, 4-5, 13 (2019) ("2019 HHS OIG Report"); Dorn-Lopez Decl. ¶ 5, ECF 10-13; Smyers Decl. ¶¶ 7, 17, ECF 10-14. |
| 92. In 2018, ORR's expanded fingerprinting requirements and memorandum of agreement with DHS to share information obtained through the sponsorship vetting process directly ICE and CBP, which they planned to use for enforcement purposes, led to dramatically increased lengths of stays in detention. | 2019 HHS OIG Report at 13; Dorn-Lopez Decl. ¶ 5, ECF 10-13; Smyers Decl. ¶ 7, ECF 10-14. |
| 93. In 2018, ORR's expanded fingerprinting requirements and memorandum of agreement with DHS to share information obtained through the sponsorship vetting process directly with ICE and CBP, which they planned to use for enforcement purposes, led to serious harms to children's mental health and wellbeing. | 2019 HHS OIG Report at 12-13 (noting that "longer stays resulted in higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation" and "even children who come into care with good coping skills become disillusioned after a lengthy stay"); Dorn-Lopez Decl. ¶ 6, ECF 10-13; Smyers Decl. ¶¶ 7, 17, ECF 10-14. |
| 94. In 2018, ICE began to arrest some sponsors who came forward to sponsor unaccompanied children. | William A. Kandel, Cong. Rsch. Serv., R 43599 *Unaccompanied Alien Children: An Overview* 23-24 (2024), https://www.congress.gov/crs-product/R43599. |
| 95. ORR itself acknowledged that information-sharing was leading to unnecessary delays in release without producing any additional information that helped make children safer and as result, in 2019, it suspended reconciliation of sponsor background checks with ICE. | 2019 HHS OIG Report at 13; Oversight Hearing: Mental Health Needs of Children in HHS Custody, Subcomm. on Lab., Health & Hum. Servs., Educ., & Related Agencies of the H. Comm. on Appropriations, 116th Cong. at 1:29:00-1:32:00 (2019), |

| | |
|---|---|
| | https://www.congress.gov/committees/video/house-appropriations/hsap00/MLrcPTTqNmA (testimony of Jonathan Hayes, Director, Office of Refugee Resettlement). |
| 96. Appropriations restrictions on DHS's use of information obtained from HHS regarding unaccompanied children and their potential sponsors were put in place beginning in fiscal year 2020 and have been extended each year through fiscal year 2025. | Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. D, § 216(a), 133 Stat. 2317, 2513 (2019); Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, Div. A, §§ 1104-05, 139 Stat. 9, 12 (2025). |
| 97. With narrow exceptions for specific crimes, Congress has prohibited DHS from using information shared by HHS "to place in detention, remove, refer for a decision whether to initiate removal proceedings, or initiate removal proceedings against a sponsor, potential sponsor, or member of a household of a sponsor or potential sponsor of an unaccompanied alien child (as defined in section 462(g) of the Homeland Security Act of 2002 (6 U.S.C. 279(g))." | Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. D, § 216(a), 133 Stat. 2317, 2513 (2019). |
| 98. ORR acknowledged in internal memorandum regarding its sponsor vetting process that Congressional riders restrict information-sharing. | Harper Memo, Angelica-00000256. |
| 99. Consistent with Congressional restrictions, the authorization for release of information included in the OMB-approved sponsor application packet stated: "I also understand that DHS cannot use my information for immigration enforcement actions, including placement in detention, removal, referral for a decision whether to initiate removal proceedings, or initiation of removal proceedings, unless I have been convicted of a serious felony, am pending charges for a serious felony, or I have been directly involved in or associated with any organization involved in human trafficking." | Ex. 1-B, ORR Authorization for Release of Information at 1, de Gramont Decl., ECF 10-6<br><br>Amended Complaint ¶ 36; Defs.' Answer ¶ 36. |
| 100.    ORR has proposed to remove language from the sponsorship application regarding restrictions on DHS's use of information for removal proceedings, but ORR has not yet received OMB approval for this change. | Defs.' Answer ¶ 70; Proposed Information Collection Activity: Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 17438 (Apr. 25, 2025). |

## VIII.   Angelica S.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 101.    Angelica S. was born in 2007 and is 17 years old. | Amended Complaint ¶ 12; Defs.' Answer ¶ 12; Angelica S. Decl. ¶ 2, ECF 9-7. |
| 102.    Angelica S. entered ORR custody in November 2024. | Amended Complaint ¶ 73; Defs.' Answer ¶ 73. |
| 103.    Angelica S. was pregnant when she entered custody and due to give birth in February 2025. | Defs.' Answer ¶ 74; Angelica S. Decl. ¶ 4, ECF 9-7. |
| 104.    Angelica S. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 12; Defs.' Answer ¶ 12. |
| 105.    Prior to March 7, 2025, Angelica S.'s sister Deisy S. completed a sponsorship application, provided ORR with a copy of her foreign passport as proof of identification, and she and her household members completed fingerprint-based background checks and two positive home studies. | Deisy S. Decl. ¶¶ 11-16, ECF 9-12 |
| 106.    Angelica S.'s case worker assured Deisy S. that the information she provided in her sponsorship application would not be used for immigration enforcement. | Deisy S. Decl. ¶ 10, ECF 9-12. |
| 107.    As of March 6, 2025, Angelica S. was waiting only on vaccines for her newborn baby for her case to be submitted for release approval. | Angelica S. Decl. ¶ 8, ECF 9-7; Deisy S. Decl. ¶¶ 22-25, ECF 9-12. |
| 108.    ORR refused to release Angelica to her sister, Deisy, because Deisy was unable to provide the documents required by the updated ORR Policy Guide Section 2.2.4. | Defs.' Answer ¶ 12; Deisy S. Decl. ¶¶ 22-25, ECF 9-12. |
| 109.    Deisy S. used her foreign passport as a form of identification and was disqualified solely based on the lack of documented work authorization accompanying her foreign passport. | Defs.' Answer ¶ 75; Deisy S. Decl. ¶¶ 11, 22, ECF 9-12. |
| 110.    Deisy S. was unable to obtain other qualifying identification because of her immigration status. | Deisy S. Decl. ¶ 22, ECF 9-12; Tex. Transp. Code § 521.142(a) (noting that applicants for Texas driver licenses must provide proof of lawful immigration status). |
| 111.    Angelica S.'s case manager told Deisy to find any adult she knew with the correct documentation to sponsor Angelica. | Deisy S. Decl. ¶ 25, ECF 9-12. |

| 112. Deisy S. was unable to find an alternative sponsor for Angelica because potential sponsors were afraid that ORR would share their information with immigration enforcement authorities. | Deisy S. Decl. ¶¶ 28-29, ECF 9-12. |
| 113. As of the date of the initial Complaint on May 8, 2025, Angelica S. was in ORR custody. | Amended Complaint ¶ 12; Defs.' Answer ¶ 12. |
| 114. After the Court's June 9, 2025, preliminary injunction, ORR reopened Deisy S.'s application. | Amended Complaint ¶ 77; Defs.' Answer ¶ 77. |
| 115. Angelica S. and her baby were released to Deisy S. in August 2025. | Amended Complaint ¶ 77; Defs.' Answer ¶ 77. |

## IX.     Eduardo M.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 116. Plaintiff Eduardo M. and his 7-year-old brother entered ORR custody in January 2025. | Amended Complaint ¶ 79; Defs.' Answer ¶ 79. |
| 117. Eduardo was born in 2010 and is 14 years old. | Amended Complaint ¶ 13; Defs.' Answer ¶ 13; Declaration of Eduardo M. ("Eduardo M. Decl.") ¶ 2, ECF 9-8. |
| 118. Eduardo is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 13; Defs.' Answer ¶ 13. |
| 119. Eduardo and his brother were in ORR custody at a transitional foster care program in California at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 13; Defs.' Answer ¶ 13. |
| 120. Prior to March 7, 2025, Eduardo's mother Rosa M. completed a sponsorship application, provided ORR with a copy of her foreign passport as proof of identification, and completed a fingerprint-based background check. | Rosa M. Decl. ¶ 3, ECF 9-13. |
| 121. In early March 2025, Eduardo and his brother were waiting only on medical clearance for their case to be submitted for release. | Rosa M. Decl. ¶ 4, ECF 9-13. |
| 122. After ORR amended Policy Guide 2.2.4. on March 7, 2025, Rosa M. was informed that her foreign passport was no longer acceptable form of identification. | Rosa M. Decl. ¶ 5, ECF 9-13. |

| | |
|---|---|
| 123.    Rosa M. lives in California. | Rosa M. Decl. ¶ 2, ECF 9-13. |
| 124.    California requires proof of lawful presence to obtain a state identification card but does not require proof of lawful presence to obtain a driver's license. | *Compare* AB 60 Driver's Licenses, Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driver-licenses-identification-cards/assembly-bill-ab-60-driver-licenses/ (last visited Sept. 10, 2025) ("AB 60 driver's licenses are for individuals who are unable to provide proof of legal presence in the United States, but who meet California DMV requirements and are able to provide proof of identity and California residency."), *with* ID Cards, Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driver-licenses-identification-cards/identification-id-cards/ (last visited Sept. 10, 2025) (requiring a social security number for an identification card). |
| 125.    Rosa M. was unable to obtain an acceptable state-issued identification because she cannot drive. | Rosa M. Decl. ¶ 5, ECF 9-13. |
| 126.    Rosa M. was required to complete DNA testing and identify a backup caregiver with the approved form of identification before she could be considered for an exception to the new proof of identification requirement. | Rosa M. Decl. ¶¶ 5-7, ECF 9-13. |
| 127.    After ORR once again amended Policy Guide § 2.2.4. on April 15, 2025, Rosa M. was informed that she needed to provide specific proof of income documentation. | Rosa M. Decl. ¶ 8, ECF 9-13; Amended Complaint ¶ 83; Defs.' Answer ¶ 83. |
| 128.    Rosa M. was unable to provide the proof of income newly required by ORR but provided a handwritten letter and her bank statements. | Defs.' Answer ¶ 83; Rosa M. Decl. ¶ 8, ECF 9-13. |
| 129.    Rosa M.'s request for an exception to the proof of identification and proof of income requirements was submitted on or around April 29, 2025, and her sons were not released until over three weeks later, on May 21, 2025. | Rosa M. Decl. ¶ 9, ECF 9-13; Declaration of Toby Biswas ¶ 23, ECF 21-1 ("Biswas Decl."); Amended Complaint ¶ 85; Defs.' Answer ¶ 85. |

### X.    Liam W.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 130.    Liam W. entered ORR custody in January 2025. | Amended Complaint ¶ 87; Defs.' Answer ¶ 87; Liam W. Decl. ¶ 3. |
| 131.    Liam W. was born in 2010 and is 15 years old. | Amended Complaint ¶ 14; Defs.' Answer ¶ 14; Liam W. Decl. ¶ 2. |
| 132.    Liam W is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 14; Defs.' Answer ¶ 14. |
| 133.    Plaintiff Liam W. in ORR custody at a shelter in New York at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 14; Defs.' Answer ¶ 14. |
| 134.    Liam W.'s mother Sofia W. submitted a sponsorship application to ORR on or around January 15, 2025. | Biswas Decl. ¶ 24, ECF 21-1; Sofia W. Decl. ¶ 3, ECF 9-14. |
| 135.    Prior to March 7, 2025, Liam's mother Sofia W. provided a copy of her passport as proof of identification, and she and her household members completed fingerprinting and had a positive home study. | Sofia W. Decl. ¶¶ 4-6, ECF 9-14. |
| 136.    After ORR amended Policy Guide 2.2.4. on March 7, 2025, Sofia W. was told that her foreign passport was no longer an acceptable form of identification and she and her adult daughters and nephew required new forms of identification. | Sofia W. Decl. ¶ 7, ECF 9-14. |
| 137.    Neither Sofia nor her household members could obtain an acceptable form of identity document in their state of Florida because of their immigration status. | Sofia W. Decl. ¶ 7, ECF 9-14; Biswas Decl. ¶ 24, ECF 21-1. |
| 138.    Sofia W. was told that if her adult daughters and nephew could not obtain qualifying identification, Sofia would have to stop living with them to sponsor Liam. | Sofia W. Decl. ¶ 7, ECF 9-14. |
| 139.    Until this court issued a preliminary injunction, Liam W.'s release to his mother did not move forward because his mother and adult sisters and cousin could not obtain qualifying identification. | Liam W. Decl. ¶ 7; Sofia W. Decl. ¶ 7, ECF 9-14; Biswas Decl. ¶ 24, ECF 21-1. |
| 140.    After the Court's June 9, 2025, preliminary injunction, ORR reconsidered Sofia W.'s sponsorship application and approved Liam's release to his mother on August 5, 2025. | Amended Complaint ¶ 91; Defs.' Answer ¶ 91. |

## XI.    Leo B.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 141.    Leo B. first entered ORR custody in February 2023. | Amended Complaint ¶ 93; Defs.' Answer ¶ 93. |
| 142.    ORR approved Leo B.'s sister as his sponsor and released Leo in March 2023. | Amended Complaint ¶ 93; Defs.' Answer ¶ 93; Biswas Decl. ¶ 25, ECF 21-1. |
| 143.    Leo B. re-entered ORR custody in March 2025. | Amended Complaint ¶ 95; Defs.' Answer ¶ 95. |
| 144.    Leo B. was born in 2007 and was 17 years old when he re-entered ORR custody in 2025. | Amended Complaint ¶¶ 15, 95; Defs.' Answer ¶¶ 15, 95. |
| 145.    Leo B. attended high school in Georgia prior to re-entering ORR custody. | Leo B. Decl. ¶¶ 6, 11, ECF 9-10. |
| 146.    Leo's sister was ineligible to sponsor Leo again because she was unable to provide identification newly required under the March 7, 2025, revision of ORR Policy Guide § 2.2.4. | Biswas Decl. ¶ 25, ECF 21-1; Leo B. Decl. ¶¶ 8-9, ECF 9-10. |
| 147.    As of May 6, 2025, Leo had no available potential sponsor. | Biswas Decl. ¶ 25, ECF 21-1. |
| 148.    As of the date of the initial Complaint on May 8, 2025, Leo was an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. |
| 149.    Plaintiff Leo B. was in ORR custody at a shelter in California at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. |
| 150.    ORR released Leo to a short-term shelter in late June 2025, shortly before his 18th birthday. | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. |

## XII.    Xavier L.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 151.    Plaintiff Xavier L. and his 13-year-old sister entered ORR custody in December 2024. | Amended Complaint ¶ 99; Defs.' Answer ¶ 99. |
| 152.    Xavier was born in 2007 and was 17 years old while in ORR custody. | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |

| | |
|---|---|
| 153.     Prior to March 7, 2025, Xavier's L.'s mother Ximena L. completed an application to sponsor Xavier and his younger sister, provided a copy of her passport as proof of identity, and completed a fingerprint-based background check and a positive home study. | Ximena L. Decl. ¶ 6, ECF 9-15. |
| 154.     The forms Ximena L. completed as part of the sponsorship application stated that the information would not be used for immigration enforcement purposes. | Ximena L. Decl. ¶ 5, ECF 9-15. |
| 155.     Prior to March 2025, Ximena L.'s partner also submitted his personal information to ORR as part of the sponsorship process. | Ximena L. Decl. ¶¶ 5-7, ECF 9-15. |
| 156.     After ORR amended Policy Guide 2.2.4. on March 7, 2025, Ximena was informed that her foreign passport was no longer an acceptable form of identification. | Amended Complaint ¶ 102; Defs.' Answer ¶ 102; Ximena L. Decl. ¶ 7, ECF 9-15. |
| 157.     Ximena L. was required to apply for a new state identification to meet ORR's new identification requirements, which took several weeks. | Ximena Decl. ¶¶ 7-8, ECF 9-15. |
| 158.     Despite providing information to ORR prior to March 2025, Ximena L.'s partner was too afraid to submit proof of income information newly required in April 2025 for fear that ORR would share his information with immigration officials. | Ximena L. Decl. ¶¶ 5, 7, 10, ECF 9-15. |
| 159.     Ximena L. was unable to provide specific proof of income documentation newly required by ORR. | Ximena Decl. ¶ 10, ECF 9-15. |
| 160.     Xavier ultimately pursued sponsorship with his aunt instead of his mother because his aunt had the proof of identification and proof of income required by ORR. | Ximena Decl. ¶ 9, ECF 9-15. |
| 161.     Plaintiff Xavier L. was in ORR custody at a shelter in New York at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |
| 162.     When he was in ORR custody, Xavier L. was an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |
| 163.     Xavier L. was released to his aunt in June 2025. | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |

**XIII.   Mateo N.**

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 164.    Mateo N. entered ORR custody in May 2025 and is currently detained by ORR at a shelter in New York. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17. |
| 165.    Mateo N. is 17 years old. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17; Mateo N. Decl. ¶ 2. |
| 166.    Mateo N. is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 17; Defs.' Answer ¶ 17. |
| 167.    Mateo N.'s brother Steven N. promptly completed a sponsorship application and provided ORR with a copy of his U.S. passport. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 6, ECF 56-3. |
| 168.    Steven N. lives in Massachusetts with his wife and two young daughters. | Steven N. Decl. ¶ 2-3, ECF 56-3. |
| 169.    Steven N.'s wife submitted her foreign passport to ORR as proof of identification. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 8, ECF 56-3. |
| 170.    Steven N. and his wife each completed fingerprint-based background checks and a positive home study in July 2025. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 7, ECF 56-3. |
| 171.    Mateo N. and Steven N. completed DNA testing showing they were biologically related. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Mateo N. Decl. ¶ 6; Steven D. Decl. ¶ 7, ECF 56-3. |
| 172.    ORR informed Steven that his sponsorship application cannot proceed until his wife provides a form of identification acceptable under ORR's post-March 2025 rules. | Amended Complaint ¶ 110; Defs. Answer ¶ 110; Steven D. Decl. ¶ 9, ECF 56-3. |
| 173.    Massachusetts permits individuals to obtain a driver's license without proof of lawful immigration status but requires proof of lawful presence to obtain a state identification card. | *Compare* Massachusetts Registry of Motor Vehicles, Standard Class D or M Driver's License Documents Checklist, https://www.mass.gov/doc/standard-class-d-or-m-drivers-license-documents-checklist-english/download (no requirement for proof of lawful presence), *with* REAL ID, Standard CDL, and Standard ID Card Documents Checklist, https://www.mass.gov/doc/standard-mass- |

| | |
|---|---|
| | id-documents-checklist/download (requiring proof of lawful presence). |
| 174.    Steven's wife has not yet been able to obtain qualifying identification because she is not eligible for a Massachusetts state identification card and needs to pass a driving test to get a driver's license. | Amended Complaint ¶ 110; Defs. Answer ¶ 110; Steven N. Decl. ¶ 8, ECF 56-3. |
| 175.    ORR refuses to release Mateo to his brother because his brother's wife, a household member, is unable to provide the documents required by the updated ORR Policy Guide Section 2.2.4. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17; Steven N. Decl. ¶ 9, ECF 56-3. |

## XIV.   Yair G.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 176.    Yair G. entered ORR custody in May 2025. | Amended Complaint ¶ 18; Defs.' Answer ¶ 18. |
| 177.    Yair G. is in ORR custody at a shelter in New York. | Amended Complaint ¶ 18; Yair G. Decl. ¶ 4, ECF 56-4. |
| 178.    Yair G. is 17 years old. | Amended Complaint ¶ 18; Defs.' Answer ¶ 18; Yair G. Decl. ¶ 2, ECF 56-4. |
| 179.    Yair G. is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 18; Defs.' Answer ¶ 18. |
| 180.    Yair G.'s sister Milagro G. completed a sponsorship application, provided her foreign passport as proof of identification, and completed a fingerprint-based background check. | Amended Complaint ¶ 115; Defs.' Answer ¶ 115; Milagro G. Decl. ¶¶ 5-6, ECF 56-5. |
| 181.    After Milagro G. completed fingerprinting in July 2025, ORR informed her that she could not move forward with her sponsorship application for Yair without a form of identification from her home state. | Amended Complaint ¶ 116; Defs.' Answer ¶ 116; Milagro G. Decl. ¶¶ 5-6, ECF 56-5. |
| 182.    Milagro G. is unable to obtain any of the types of identification documents newly required by ORR since March 2025 because of her immigration status. | Amended Complaint ¶ 116; Defs.' Answer ¶ 116; Milagro G. Decl. ¶ 6, ECF 56-5. |
| 183.    Yair G.'s case manager told Milagro to find another family member with the required form of identification to sponsor Yair but Milagro does not have other family members with the right forms of identity document. | Amended Complaint ¶ 117; Defs.' Answer ¶ 117; Milagro G. Decl. ¶ 8, ECF 56-5. |

| 184.    Yair G. pursued sponsorship with Milagro's friend because he does not have any family members with newly required forms of identification. | Amended Complaint ¶ 117; Defs.' Answer ¶ 117; Milagro G. Decl. ¶ 8-9, ECF 56-5; Yair G. Decl. ¶¶ 7-10, ECF 56-4. |
|---|---|

## XV.    David D.

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 185.    David D. entered ORR custody in May 2025. | Amended Complaint ¶ 19; Defs.' Answer ¶ 19; David D. Decl. ¶ 2, ECF 56-6. |
| 186.    David D. is in ORR custody at a shelter in California. | Amended Complaint ¶ 19; Defs.' Answer ¶ 19; David D. Decl. ¶¶ 2-3, ECF 56-6. |
| 187.    David D. is 14 years old. | Amended Complaint ¶ 19; Defs.' Answer ¶ 19; David D. Decl. ¶ 2, ECF 56-6. |
| 188.    David D. is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 19; Defs.' Answer ¶ 19. |
| 189.    David D.'s mother Isabel D. completed an application to sponsor David, provided her consular identification card as proof of identification, and completed a fingerprint-based background check and DNA testing. | Amended Complaint ¶ 121; Defs.' Answer ¶ 121; Isabel D. Decl. ¶ 3, ECF 56-7. |
| 190.    When she began the application process, Isabel D. lived with other members of her family who lacked U.S-issued identification. | Isabel D. Decl. ¶ 5, ECF 56-7. |
| 191.    Isabel D. had to move to a new apartment to continue the sponsorship process. | Isabel D. Decl. ¶ 5, ECF 56-7. |
| 192.    After Isabel D. moved, her new housemate completed a fingerprint-based background check and provided identification acceptable to ORR. | Amended Complaint ¶ 122; Defs.' Answer ¶ 122; Isabel D. Decl. ¶ 5, ECF 56-7. |
| 193.    ORR conducted a home study of Isabel D.'s new apartment in June 2025, which was positive. | Amended Complaint ¶ 122; Defs.' Answer ¶ 122; Isabel D. Decl. ¶ 5, ECF 56-7. |
| 194.    Isabel D. is unable to obtain a state-issued identification because she does not know how to drive. | Isabel D. Decl. ¶¶ 4, 9, ECF 56-7. |
| 195.    On July 31, 2025, Isabel attended an appointment at a federal government office to present her identification to an ORR official in person. | Amended Complaint ¶ 124; Defs.' Answer ¶ 124; Isabel D. Decl. ¶ 7, ECF 56-7. |
| 196.    David D.'s case was submitted to ORR headquarters for an exception to the new proof of identification requirement at the beginning of August. | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Defs.' Answer ¶ 125. |

| | |
|---|---|
| 197.  Isabel D.'s request for an exception to the new identification requirements was pending for over five weeks at ORR headquarters before an exception was granted on or around September 10, 2025. | Defs.' Answer ¶ 125; Isabel D. Decl. ¶¶ 7-8, ECF 56-7. |

### XVI.   Immigrant Defenders Law Center

| Undisputed Material Fact | Administrative Record or Evidentiary Support |
|---|---|
| 198.  One of ImmDef's primary activities, and work that is central to its mission is providing zealous, competent counsel to unaccompanied children in their immigration cases. | Felix Decl. ¶¶ 3-4, 7-17, 22, ECF 10-15. Ex. 1, Felix Suppl. Decl. ¶ 4. |
| 199.  ImmDef's mission and vision is that no immigrant has to face removal proceedings alone. | Felix Decl. ¶ 4, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 4. |
| 200.  ImmDef is the largest provider of legal services to unaccompanied children in California. | Felix Decl. ¶ 3, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 4. |
| 201.  ImmDef currently provides legal services to children housed in seventeen ORR facilities throughout Southern California. | Felix Decl. ¶ 3, ECF 10-15. |
| 202.  The IFR has impeded ImmDef's ability to provide counsel to all unaccompanied children in the ORR shelters it serves. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. |
| 203.  The IFR has impeded ImmDef's ability to provide counsel to children who are released from ORR shelters it serves to sponsors who live in ImmDef's service area. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. |
| 204.  The Policy Guide Section 2.2.4 changes have impeded ImmDef's ability to provide counsel to all unaccompanied children in the ORR shelters it serves. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-25. |
| 205.  The Policy Guide Section 2.2.4 changes have impeded ImmDef's ability to provide counsel to children who are released from ORR shelters it serves to sponsors who live in ImmDef's service area. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. |
| 206.  Children ImmDef represents are routinely remaining in custody far longer because of ORR's new identification and proof of income requirements. | Felix Decl. ¶¶ 7-8; Ex. 1, Felix Suppl. Decl. ¶¶ 5, 13, 14-20. |
| 207.  Potential sponsors of children in ORR custody have been detained by ICE during the sponsorship process. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 8-9. |

| | |
|---|---|
| 208.    In July 2025, after the IFR permitted ORR to share sponsor immigration status with immigration enforcement agencies, ORR began requiring sponsors to appear for in-person verification of identification at Immigration and Customs Enforcement and Homeland Security Investigation offices. | Ex. 1, Felix Suppl. Decl. ¶ 7. |
| 209.    Sponsors have been detained by ICE at in-person ID verification appointments required by ORR. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 8. |
| 210.    Some potential sponsors have declined to attend required in-person ID verification appointments for fear of immigration enforcement at the appointment. | Ex. 1, Felix Suppl. Decl. ¶ 7. |
| 211.    Some potential sponsors have withdrawn their applications because of fear of information sharing and enforcement. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 10-11, 19. |
| 212.    Children in ORR custody served by ImmDef have decided to forgo reunification for fear that their sponsors will be targeted by immigration enforcement because of ORR's information-sharing with ICE. | Ex. 1, Felix Suppl. Decl. ¶¶ 10-11. |
| 213.    Children in ORR custody served by ImmDef are experiencing negative mental health effects as a result of the detention of their sponsors during the sponsorship process or stress that their sponsors will be detained because of ORR's information-sharing with ICE. | Ex. 1, Felix Suppl. Decl. ¶¶ 8, 11, 17. |
| 214.    ORR information-sharing with ICE has significantly increased children's time in ORR custody because it is increasingly difficult for children to be released to sponsors. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 12. |
| 215.    The changes to the Policy Guide have significantly increased children's time in ORR custody because it is increasingly difficult for children to be released to sponsors. | Felix Decl. ¶¶ 7-8, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 14-16, 18-19. |
| 216.    Some potential sponsors are unable to complete applications because their alternate caregivers are unable or unwilling to share required information. | Ex. 1, Felix Suppl. Decl. ¶ 12. |
| 217.    Some potential sponsors have had to move homes because their household members are unable or unwilling to share required information with ORR, leading to delays in cases. | Ex. 1, Felix Suppl. Decl. ¶¶ 13, 17. |
| 218.    ImmDef must expend a significantly higher portion of its limited resources to advocate on behalf of detained unaccompanied child clients due to the children's significantly longer stay in ORR custody. | Felix Decl. ¶¶ 8, 12-17, 22, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 20-24. |

| | |
|---|---|
| 219.     Between February and September 2024, 44% of ImmDef's new cases for unaccompanied children were on behalf of detained children, but over that same period in 2025 the proportion is approximately 84%. | Ex. 1, Felix Suppl. Decl. ¶ 24. |
| 220.     It is more time and resource-intensive for ImmDef to represent detained children than non-detained children. | Felix Decl. ¶¶ 13-16, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 24-28, 36-38. |
| 221.     Historically, ImmDef has guaranteed representation to children released from ORR facilities ImmDef serves to sponsors in ImmDef's service area, but ImmDef has had to close intake to these children because they must divert resources to serve detained children. | Ex. 1, Felix Suppl. Decl. ¶ 24. |
| 222.     Because children are remaining in custody longer, ImmDef must expedite work for a greater number of detained unaccompanied child clients, diverting attention from other ongoing work. | Felix Decl. ¶¶ 8, 12-17, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 20-24. |
| 223.     Because of new barriers to release, ImmDef must spend time it had not spent previously responding to inquiries from potential sponsors as well as ORR-subcontracted facility staff regarding the policy and procedures of the new sponsorship requirements. | Felix Decl. ¶ 10, ECF 10-15. |
| 224.     ImmDef is forced to expend resources, otherwise spent on representing child clients in their immigration cases, to revise know-your-rights presentations and screening materials to counteract the diminished immigration relief available to detained children. | Felix Decl. ¶ 21, ECF 10-15. |
| 225.     ImmDef is hampered from obtaining release for detained unaccompanied child clients because many children no longer have eligible sponsors. | Felix Decl. ¶¶ 7-9, ECF 10-15; Ex. 1, Felix Suppl. Decl. Felix ¶¶ 6-19. |
| 226.     Because more sponsors are ineligible or have withdrawn from sponsorship, ImmDef must spend time with more clients than typical to discuss Long-Term Foster Care placement instead of using that time and those resources to pursue immigration relief for clients. | Felix Decl. ¶¶ 7-9, 11, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 22-23, 34-38. |
| 227.     From February to September 2024, representation of children in LTFC comprised approximately 12% of ImmDef's new cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. |
| 228.     From February to September 2025, representation of children in LTFC had more than doubled to 31% of ImmDef's new cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. |
| 229.     Representation of children in LTFC is more time and resource-intensive than representation of released children. | Ex. 1, Felix Suppl. Decl. ¶¶ 34-38. |

| | |
|---|---|
| 230.    If a child is considering LTFC, ImmDef's contract requires they meet with the child one or more times to discuss their options before the care provider can submit a referral. | Ex. 1, Felix Suppl. Decl. ¶¶ 34-35. |
| 231.    From February to September 2024, representation for Voluntary Departure comprised 0.03% of new ImmDef cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. |
| 232.    From February to September 2025, representation for Voluntary Departure comprised 6% of new ImmDef cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. |
| 233.    If a child is considering Voluntary Departure, ImmDef attorneys must spend significant additional time counseling the child. | Ex. 1, Felix Suppl. Decl. ¶¶ 31-33. |
| 234.    If a child chooses Voluntary Departure, ImmDef attorneys are contractually required to offer full scale representation and spend significant additional time on their case. | Ex. 1, Felix Suppl. Decl. ¶ 31. |
| 235.    Because more sponsors are ineligible or have withdrawn from sponsorship, ImmDef must spend time with more clients than typical to discuss voluntary departure instead of using that time and those resources to pursue immigration relief for clients. | Ex. 1, Felix Suppl. Decl. ¶¶ 22-23, 31-33. |
| 236.    Because of new barriers to release, ImmDef must spend additional time meeting with its detained unaccompanied child clients to support their mental stability. | Felix Decl. ¶ 10, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 22. |
| 237.    Because of children's prolonged detention, ImmDef is hampered from effectively representing its detained unaccompanied child clients because clients struggle to provide necessary information without family support. | Felix Decl. ¶¶ 13, 22, ECF 10-15. |
| 238.    Because of children's prolonged detention, ImmDef is hampered from effectively representing its detained unaccompanied child clients because their clients are experiencing mental health impacts that impede their participation in their cases. | Felix Decl. ¶¶ 10, 22, ECF 10-15. |
| 239.    Because of children's prolonged detention, ImmDef has been forced to divert staff time and resources away from defending released children in their removal proceedings to focus almost entirely on representation of detained children. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. |
| 240.    Because ImmDef must focus its resources on detained children, many children who would otherwise qualify for ImmDef's services are  left unserved. | Ex. 1, Felix Suppl. Decl. ¶ 25-26. |

Date: September 12, 2025

Respectfully submitted,

/s/ *Mishan Wroe*
Mishan Wroe (admitted *pro hac vice*)
Diane de Gramont (admitted *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
(510) 835-8098
mwroe@youthlaw.org
ddegramont@youthlaw.org

Rebecca Wolozin (D.C. Bar No. 144369)
David Hinojosa (D.C. Bar No. 1722329)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
(202) 868-4792
dhinojosa@youthlaw.org
bwolozin@youthlaw.org

Cynthia Liao (admitted *pro hac vice*)
Joel McElvain (D.C. Bar No. 448431)
Skye L. Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
cliao@democracyforward.org
jmcelvain@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*