UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANGELICA S., *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 1:25-cv-1405-DLF |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) |
| Defendants. | ) |

**MOTION FOR RELIEF FROM STANDING ORDER 25-55**

Plaintiffs respectfully move for relief from Standing Order No. 25-55 (JEB), *In re: Stay of Civil Proceedings Involving the United States in Light of Lapse of Appropriations* (Oct. 1, 2025). When appropriations lapsed on October 1, 2025, the parties were in the middle of briefing summary judgment according to a stipulated schedule. Specifically, Defendants were two days away from filing their cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment, due October 3, 2025. Plaintiffs respectfully ask that the Court enter an order to reset and resume the briefing schedule as follows:

| Filing | Deadline |
|---|---|
| Defendants' opposition to Plaintiffs' motion for summary judgment / cross-motion for summary judgment | 3 days after the Court issues an order granting Plaintiffs' motion for relief from Standing Order 25-55 |
| Plaintiff's reply in support of Plaintiff's motion for summary judgment / opposition to Defendants' cross-motion for summary judgment | 14 days after service of Defendants' opposition to Plaintiffs' motion for summary judgment / cross-motion for summary judgment |
| Defendants' reply in support of Defendants' cross-motion for summary judgment | 7 days after service of Plaintiffs' reply in support of Plaintiff's motion for summary judgment / opposition to Defendants' cross-motion for summary judgment |

1

| | |
|---|---|
| Joint appendix | 7 days after service of Defendants' reply in support of Defendants' cross-motion for summary judgment |

### I.     Plaintiffs and other children in ORR custody are harmed by a stay.

There is good cause to require Defendants to continue litigating this case. Plaintiffs Yair G. and Mateo N. are children who are currently being detained by Defendant U.S. Department of Health and Human Services, Office of Refugee Resettlement ("HHS," "ORR"). First Amended Compl. ("FAC") ¶¶ 17-18, ECF 48. They, along with Plaintiffs Angelica S., Eduardo M., Liam W., Leo B., Xavier L., and David D., seek to represent a class of children who are also detained by ORR. FAC ¶¶ 12-16, 19, 133-139; ECF 9-1; ECF 32; ECF 51-3. Plaintiff Immigrant Defenders Law Center ("ImmDef") represents children in ORR custody. ECF 10-15; ECF 58-3.

In this lawsuit, Plaintiffs challenge a new ORR regulation and new proof of identity and proof of income policies that make it much more difficult, and in many cases, virtually impossible, for the children to be released to family members who could otherwise sponsor them, if not for the new documentation requirements. FAC ¶¶ 6-7, 49-59. As a result of these new requirements, children's time in ORR detention has increased dramatically. In fiscal years 2021 through 2024, the average length of time a child remained in ORR custody ranged from 27 to 33 days. Fact Sheets and Data, Office of Refugee Resettlement, *Average Length of Care* (current as of Apr. 7, 2025), https://perma.cc/SPV6-3KBD. In August 2025, the average length of care for children discharged from ORR was 182 days and the average length of care for children who remain in ORR custody was 179 days. Fact Sheets and Data, Office of Refugee Resettlement, *Average Monthly Data* (last visited October 7, 2025), https://acf.gov/orr/about/ucs/facts-and-data.

Although some of the named Plaintiffs were released from ORR custody after this lawsuit was filed, Plaintiffs Yair G. and Mateo N. are still in ORR custody. So are members of the class that Plaintiffs seek to represent.[1] This Court has recognized that family separation and prolonged

---

[1] At the preliminary injunction stage in the case, the Court certified a provisional class of children who entered ORR custody after April 22, 2025. ECF 34. After the preliminary injunction was entered, many class members were released. However, children with willing and capable sponsors remain in custody. The parties currently have an ongoing dispute regarding whether the provisional

detention qualify as irreparable injury. ECF 35 at 17.

Plaintiffs Yair G. and Mateo N. as well as children in the putative class have suffered, and will continue to suffer, unnecessarily prolonged detention and family separation because of ORR's unlawful policies. Each day children remain unnecessarily separated from their families, the greater the harm becomes. *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018) (noting that "neither party questions that prolonged detention is deleterious to young children, and, obviously, the longer the detention, the greater the harm."). Mateo N. describes that he "feel[s] sad all the time at the shelter. I even cry sometimes because I'm sad to be apart from my family … I just want to be with them and be together." ECF 56-2, ¶¶ 9-10. Similarly, Yair G. has explained "It's not right that so many kids are stuck in shelters when there are family members who want to help them and take care of them." ECF 56-4, ¶¶ 10-11. In addition, many putative class members are suffering from prolonged detention in large group home settings away from loving family who are eager to care for them.

Many other children are currently suffering in ORR custody instead of living with their willing and able sponsors who are unable to meet ORR's identification and proof of income requirements because of their immigration status. *See e.g.*, Declaration of Cynthia Felix, October 10, 2025 ("Felix Dec.") ¶¶ 4-9; Declaration of Alexa Sendukas, October 14, 2025 ("Sendukas Dec.") ¶¶ 4-7; Declaration of Carly Shortell, October 14, 2025 ("Shortell Dec.") ¶¶ 5-9. Legal

---

class definition covers (1) children who entered ORR custody for the first time before April 22, 2025 but who have a sponsor identified after April 22, 2025; and (2) children who entered custody before April 22, 2025, were released to a sponsor, and then re-entered ORR custody after April 22, 2025. *See* Declaration of Mishan Wroe, October 14, 2025, ("Wroe Decl.") Exhibits 1 and 2. For example, on August 13, 2025, Plaintiffs' counsel alerted Defendants' counsel to the case of JMGL who first entered ORR custody in 2024 and was released to his father in May 2024. Unfortunately, JMGL was detained at a traffic stop in June 2025 and was re-referred to ORR. Upon information and belief, as of October 14, 2025, JMGL was still detained in ORR custody, unable to be reunified with his father because his father does not have the newly required identification documents. At the merits stage of the case, Plaintiffs seek to certify a broader class that includes children in ORR custody who are affected by the documentation requirements, regardless of whether they entered ORR custody before or after April 22, 2025. ECF 51-3. Children in the putative class who entered ORR custody for the first time after April 22, 2025, remain in custody.

service providers report observing increased detention fatigue, mental health crises, and hospitalizations as children wait longer and longer periods to be released from custody. Felix Dec. ¶ 9; Sendukas Dec. ¶ 5. Young children find it difficult to understand why they can't go home with family members who are able to visit and speak with them in custody. Sendukas Dec. ¶ 5; *see also* Felix Dec. ¶ 9 ("Toddlers are suffering and demonstrating regression in milestones, aggression towards others, and persistent crying."). Even children whose sponsors can get exemptions from the paperwork requirements at issue in this case are waiting weeks for a decision on those exemptions. Felix Dec. ¶ 6; Shortell Dec. ¶ 7. All the while, they are separated from their mothers and fathers for no reason other than their parent's inability to provide documents that require specific legal status in the United States.

In contrast, the government is not harmed by being required to continue this litigation. ORR personnel are still working, as they are responsible for caring for these children. Indeed, HHS's contingency plan identifies the "Unaccompanied Alien Children program" as one of the "[k]ey activities to continue" during a lapse in appropriations. *Summary of Contingency Staffing Plan*, Administration for Children and Families, https://www.hhs.gov/about/budget/fy-2026-acf-contingency-staffing-plan/index.html. Regardless of any appropriations lapse, children are detained in ORR custody awaiting release to family members who are eager to care for them and are being prevented from living with family because of the unlawful policy changes the agency has made to its release procedures. Additionally, the Department of Justice ("DOJ") attorneys assigned to this case have been working on other litigation involving children in ORR custody. Wroe Decl. ¶ 5.

II.     **Staying this litigation is not required by the Antideficiency Act.**

The Antideficiency Act generally prohibits employees of executive agencies from working during the pendency of a lapse in appropriations, subject to two exceptions (among others) that permit Defendants and their attorneys to continue litigating this case.

*First*, counsel for Defendants may continue working if otherwise "authorized by law." 31 U.S.C. § 1341(a)(1)(B). DOJ interprets this provision to mean that while DOJ attorneys must

4

generally request a stay, "[i]f a court denies such a request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue." *U.S. Department of Justice FY 2026 Contingency Plan* at 3 (Sept. 29, 2025), https://www.justice.gov/jmd/media/1377216/dl. For this reason, "[w]ith respect to litigation, the Department's plan assumes that the Judicial Branch will continue to operate, though possibly at a reduced level, through the lapse." *Id.*

The D.C. Circuit has adopted this interpretation of the Antideficiency Act. During a previous shutdown, in *Kornitzky Group, LLC v. Elwell*, two judges concurring in the denial of a stay relied on DOJ's contingency plan, concluding that the denial of a stay amounts to legal authorization for DOJ attorneys to continue working. 912 F.3d 637, 638 (D.C. Cir. 2019) (Srinivasan, J., concurring). Pursuant to that understanding, the judges noted that the D.C. Circuit consistently denies requests by the federal government to stay briefing or argument due to a government shutdown. *Id.* at 638–39. Counsel for Defendants may therefore lawfully continue working if the Court denies the requested stay.

The HHS contingency plan similarly contemplates that Office of the General Counsel staff "will be excepted to ensure that HHS responds appropriately to orders from the Judicial branch." *FY 2026 HHS Contingency Staffing Plan for Operations in the Absence of Enacted Annual Appropriations* (Sept. 25, 2025), https://www.hhs.gov/about/budget/fy-2026-hhs-contingency-staffing-plan/index.html.

*Second*, the Antideficiency Act independently permits Defendants to continue working with respect to "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. DOJ has interpreted that statutory exception to cover circumstances "where there is a reasonable likelihood that the safety of human life or the protection of property would be compromised, in some significant degree, by delay in the performance of the function in question." *DOJ FY 2026 Contingency Plan* at 1. DOJ therefore recognizes that "a significant portion of the Department's mission relates to the safety of human life and the protection of property, and primarily for this reason, the Department has a high percentage of activities and employees that

5

are excepted from the Antideficiency Act restrictions and can continue during a lapse in appropriations." *Id.*

This case relates to the safety of human life. ORR currently has children in custody and is still responsible for promptly placing children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Moreover, ORR is responsible for ensuring children are "in facilities that are safe and sanitary and that are consistent with ORR's concern for the particular vulnerability of unaccompanied children." 8 C.F.R. § 410.1003(b). Presumably HHS's contingency plan calls for work on the "Unaccompanied Alien Children program" to continue notwithstanding a government shutdown precisely because ORR recognizes that even a temporary suspension of its functions "would in many . . . circumstances create an emergency involving the safety of human life or the protection of property within the meaning of § 1342". Continuation of Fed. Prisoner Det. Efforts in the Face of a USMS Appropriation Deficiency, 24 U.S. Op. Off. Legal Counsel 47 (2000) (determining that, where U.S. Marshals Service transports prisoners and provides them with food, shelter, and medical services, "even a temporary suspension of the prisoner detention functions provided by the USMS would in many, and perhaps all, circumstances create an emergency involving the safety of human life or the protection of property within the meaning of § 1342"); *see* Administration for Children and Families, https://www.hhs.gov/about/budget/fy-2026-acf-contingency-staffing-plan/index.html.

In previous government shutdowns, courts have routinely denied stay motions in cases that, like this one, implicate safety and property concerns. *See, e.g.*, *Priests For Life v. HHS*, No. 13-cv-1261, 2013 WL 5572730, at *1 (D.D.C. Oct. 2, 2013) ("find[ing] that an indefinite stay would be incompatible with the fair administration of justice"); *United States v. US Airways Grp., Inc.*, 979 F. Supp. 2d 33, 34 (D.D.C. 2013); *Nevada v. United States*, No. 3:18-cv-569, 2019 WL 11029477, at *1 (D. Nev. Jan. 2, 2019). The Court should do the same here by providing relief from the standing order and allowing this case to continue.

Further, a prolonged delay in the resolution of this matter would implicate the federal judiciary's core constitutional duty of hearing and deciding cases on a timely basis. *See Plaut v.*

6

*Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) ("Article III establishes a 'judicial department' with the 'province and duty . . . to say what the law is' in particular cases and controversies. The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them." (citation omitted)). This duty is particularly notable in this matter given that the federal government is generally only subject to suit in federal courts, making alternate means of redress, such as through state courts unavailable.

### III.     Conclusion

Plaintiffs therefore respectfully submit that the Court should grant relief from the Standing Order in this case and reset the summary judgment briefing deadlines as set forth above.

Counsel for Plaintiffs conferred with counsel for Defendants, who advised that Defendants oppose the relief sought.

October 14, 2025

Respectfully submitted,

*/s/ Mishan Wroe*
MISHAN WROE (admitted *pro hac vice*)
DIANE DE GRAMONT (admitted *pro hac vice*)
1212 Broadway, Suite 600
Oakland, California 94612
(510) 835-8098
mwroe@youthlaw.org
ddegramont@youthlaw.org

REBECCA RUTH WOLOZIN (D.C. Bar No. 144369)
National Center for Youth Law
818 Connecticut Ave. NW, Suite 425
Washington, DC 20009
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CYNTHIA LIAO (admitted *pro hac vice*)
JOEL McELVAIN (D.C. Bar No. 448431)
SKYE L. PERRYMAN (D.C. Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
cliao@democracyforward.org
jmcelvain@democracyforward.org
sperryman@democracyforward.org