**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| ANGELICA S., *et al.*, | ) | |
| | ) | Case No. 1:25-cv-01405-DLF |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

## PLAINTIFFS' SEPARATE CONCISE STATEMENT OF GENUINE MATERIAL ISSUES

## I.    Undisputed Material Facts

Plaintiffs do not dispute that the following factual allegations made by Defendants are material facts:

241. ORR is not a law or immigration enforcement agency and thus "lacks the authority to hold individuals accountable by reassuming care if the sponsor abuses or neglects a child after a UAC has been released from ORR custody."

243. To carry out its statutory mandate under the HSA and TVPRA, and its regulatory mandate under the Foundational Rule, ORR has developed extensive policies and procedures to protect UACs and that are memorialized in sub-regulatory guidance and memoranda of agreement meant to give ORR flexibility in address UACs' needs.

244. All potential sponsors must also submit proof of address, sponsor-child relationship, and criminal history documents (if applicable).

245. Additionally, in certain circumstances a home study, which consists of interviews, a home visit, and a written report containing the home-study case worker's findings, is performed.

246. Once the assessment of the potential sponsor is complete, the care provider makes a release recommendation to ORR. Release decisions include: (1) approve release to sponsor; (2) approve release with post-release services; (3) conduct a home study before a final release decision; (4) deny release; or (5) remand for further information.

247. ORR denies release if: (1) the potential sponsor is not willing or able to provide for the child's physical or mental well-being; (2) the potential sponsor is not willing to complete the mandatory fingerprint check; (3) the physical environment of the

home presents a risk to the child's safety or well-being; or (4) release of the UAC would present a risk to him or herself, the sponsor, household, or community.

248. Subject to assessment of sponsor suitability, when ORR determines that detention of a UAC is not warranted, ORR shall release a child from its custody without unnecessary delay.

249. Under the Foundational Rule, ORR must release UAC from its custody "[s]ubject to an assessment of sponsor suitability," which includes "verification of the potential sponsor's identity," "verification of the employment, income, or other information provided by the potential sponsor as evidence of the ability to support the child," and "[i]n all cases, ORR shall require background and criminal records checks," which may include a criminal history check based on fingerprints.

251. The Foundational Rule codified ORR's historic practice of screening all UACs for potential trafficking concerns, including during intake assessments, and sponsors assessments.

254. The Foundational Rule includes a severability provision stating that provisions of the rule "are separate and severable from one another," and that "[i]f any provision is stayed or determined to be invalid, the remaining provisions shall continue in effect." 45 C.F.R. § 410.1000(b).

264. There are four categories of potential sponsors: (1) Category 1, consisting of parents or legal guardians; (2) Category 2A, consisting of siblings, half-siblings, grandparents, immediate relatives (such as aunts, uncles, and cousins) who previously served as a primary caregiver, and other biological relatives and relatives through marriage; (3) Category 2B, consisting of immediate relatives (including

biological relatives and relatives through marriage) who did not previously serve as a primary caregiver; (4) Category 3, consisting of other sponsors, such as distant relatives and unrelated adult individuals.

290. On March 7, 2025, ORR Director of Policy Toby Biswas recommended that ORR update Policy Guide Sections 2.2, 2.4, 7.4, and 5.8.2, and associated procedures, regarding acceptable documents used in support of a Sponsorship Application, denials of sponsorship due to fraud concerns, and clarification of fraud reporting requirements.

298. In the past, ORR has collaborated with foreign consulates and embassies and the U.S. Department of State to authenticate foreign issued documents.

302. ORR noted that some stakeholders would likely argue that the March 2025 ID requirements impact "family unity," particularly for parents; would be "particularly burdensome on the ability of undocumented or out of state aliens to sponsor children"; and, cause "unreasonable delay."

306. Another form of acceptable identification is "a driver's license *or* ID card issued by a U.S. state or outlying possession of the United States, provided that it contains a photograph or information such as a name, date or [sic] birth, gender, height, eye color, and address."

307. Another form of acceptable identification is an "ID card issued by federal, U.S., state, *or* local government agencies or entities, provided that it contains a photograph or information such as name, date or [sic] 'birth, gender, height, eye color, and address."

317. ORR noted that "potential sponsors may not have appropriate documents and may not be able to complete their sponsorship applications."

318. ORR noted that some stakeholders would argue that "the majority of potential sponsors engaging with [ORR] do not have work authorization and may not be able to provide documentation required under this update to ORR's sub-regulatory guidance."

319. ORR noted that some stakeholders would argue that children not having sponsors with qualifying proof of income documentation "could result in longer lengths of stays for children in ORR custody."

322. The IFR was scheduled to take effect on the date of its publication in the Federal Register.

323. The IFR was published on March 25, 2025.

324. The IFR amends 45 C.F.R. § 410.1201 by removing paragraph (b) and redesignating paragraph (c) as paragraph (b).

325. Previous 45 C.F.R. § 410.1201(b) states: "ORR shall not disqualify potential sponsors based solely on their immigration status and shall not collect information on immigration status of potential sponsors for law enforcement or immigration enforcement related purposes. ORR shall not share any immigration status information relating to potential sponsors with any law enforcement or immigration enforcement related entity at any time."

326. Previous 45 C.F.R. § 410.1201(c) states: "(c) In making determinations regarding the release of unaccompanied children to potential sponsors, ORR shall not release unaccompanied children on their own recognizance."

361. ImmDef is a nonprofit legal services provider in California.

362. ImmDef represents detained and non-detained unaccompanied alien children ("UAC") in removal proceedings before the immigration courts of the United States.

## II.    ORR Screening Process

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 241. ORR is not a law or immigration enforcement agency and thus "lacks the authority to hold individuals accountable by reassuming care if the sponsor abuses or neglects a child after a UAC has been released from ORR custody." | Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34,384, 34,423 (Apr. 30, 2024); ECF No. 21-1, Biswas Decl. ¶ 5. | **Undisputed** but incomplete to the extent this fact suggests that ORR plays no role in monitoring children's circumstances post-release. ORR is required by statute to provide post-release services to certain categories of children, 8 U.S.C. § 1232(c)(3)(B), and its regulations authorize post-release services for additional children, 45 C.F.R. § 410.1210. ORR also operates a National Call Center for children and sponsors to report concerns post-release. *See* Office of Refugee Resettlement National Call Center, https://acf.gov/orr/outreach-material/office-refugee-resettlement-national-call-center. ORR policy requires post-release service providers and National Call Center staff to submit a Notification of Concern to ORR when they encounter post-release safety concerns and to comply with State mandatory reporting requirements. *See* ORR Policy Guide § 6.8.6, https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-6#6.8.6. |

| | | |
|---|---|---|
| 242. ORR is also different from state child welfare agencies, which typically retain the authority to reassume care of a child abused or neglected by a sponsor. | Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34, 384, 34,390 (Apr. 30, 2024); ECF No. 21-1, Biswas Decl. ¶ 5. | **Undisputed** but immaterial in so far as nothing in Defendants' citation, or the administrative record, supports Defendants' contention that its new documentation requirements prevent release to sponsors who will neglect or abuse children. Further, once a child is released, state child welfare agencies have jurisdiction to follow up on concerns regarding children's welfare and assume custody of the child if necessary.<br><br>*See* Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34,384, 34,390 (Apr. 30, 2024); Toby Biswas Decl. ¶ 5, ECF No. 21-1. |
| 243. To carry out its statutory mandate under the HSA and TVPRA, and its regulatory mandate under the Foundational Rule, ORR has developed extensive policies and procedures to protect UACs and that are memorialized in sub-regulatory guidance and memoranda of agreement meant to give ORR flexibility in address UACs' needs. | Unaccompanied Child Program Foundational Rule, 89 Fed. Reg. 34384, 34,389-91 (Apr. 30, 2024). *See also* ORR Unaccompanied Alien Children Bureau Policy Guide, *available at* https://perma.cc/Q2C3-3SC5. | **Undisputed.** |
| 244. All potential sponsors must also submit proof of address, sponsor-child relationship, and criminal history documents (if applicable). | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000193. | **Undisputed** but Defendants' citation is inaccurate and incomplete. The HHS OIG Report does not itself require sponsors to provide this information but reports on ORR's requirements. To the extent Defendants rely on it, the citation should be Angelica-00000192-193. |

| | | |
|---|---|---|
| 245. Additionally, in certain circumstances a home study, which consists of interviews, a home visit, and a written report containing the home-study case worker's findings, is performed. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000193. | **Undisputed.** |
| 246. Once the assessment of the potential sponsor is complete, the care provider makes a release recommendation to ORR. Release decisions include: (1) approve release to sponsor; (2) approve release with post-release services; (3) conduct a home study before a final release decision; (4) deny release; or (5) remand for further information. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000195. | **Undisputed** but the citation is inaccurate in so far as the HHS OIG Report does not itself require the release recommendation to be done this way but reports on ORR's requirements. |
| 247.  ORR denies release if: (1) the potential sponsor is not willing or able to provide for the child's physical or mental well-being; (2) the potential sponsor is not willing to complete the mandatory fingerprint check; (3) the physical environment of the home presents a risk to the child's safety or well-being; or (4) release of the UAC would present a risk to him or herself, the sponsor, household, or community. | UAC Policy Guide Section 2.2.4, 2.7.4, 5.8.2, Angelica-00000008. | **Undisputed** but Policy Guide sections 2.2.4 and 5.8.2 are irrelevant. *See also* 45 C.F.R. § 410.1205(a) ("A potential sponsorship shall be denied, if . . . ORR determines that the potential sponsor is not capable of providing for the physical and mental well-being of the unaccompanied child or that the placement would result in danger to the unaccompanied child or the community."). |

### III.    Unaccompanied Child Program Foundational Rule (2024)

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 248. Subject to assessment of sponsor suitability, when ORR determines that detention of a UAC is not warranted, ORR shall release a child from its custody without unnecessary delay. | 45 C.F.R. § 410.1201(a). *See also* Decision Memo re: Sub-Regulatory Guidance: Revisions to the Unaccompanied Children Bureau Policy Guide and Manual of Procedure Revisions to Require Sponsors to Provide Proof of Income ("Proof of Income Memo"), Angelica-00000112 | **Undisputed** but Proof of Income Memo citation is irrelevant (Angelica-00000112) and Plaintiffs seek to clarify that the Foundational Rule does not say "when ORR determines detention" is unnecessary but rather "when ORR determines that the detention of the unaccompanied child is not required either to secure the child's timely appearance before DHS or the immigration court, or to ensure the child's safety or that of others." Unaccompanied Child Program Foundational Rule, 89 Fed. Reg. 34,384 (Apr. 30, 2024). |
| 249. Under the Foundational Rule, ORR must release UAC from its custody "[s]ubject to an assessment of sponsor suitability," which includes "verification of the potential sponsor's identity," "verification of the employment, income, or other information provided by the potential sponsor as evidence of the ability to support the child," and "[i]n all cases, ORR shall require background and criminal records checks," which may include a criminal history check based on fingerprints. | 45 C.F.R. §§ 410.1201, 410.1202(b)-(c) | **Undisputed** but Plaintiffs wish to clarify that suitability assessments *may* – but do not always – include "verification of the employment, income, or other information provided by the potential sponsor as evidence of the ability to support the child." 45 C.F.R. § 410.1202(c). |
| 250. During the rulemaking process, many commenters expressed opposition to the Foundational Rule, citing concerns that it did not do enough to prevent child trafficking. | Unaccompanied Child Program Foundational Rule, 89 Fed. Reg. 34384, 34,389 (Apr. 30, 2024). | **Undisputed** but immaterial as ORR responded to these comments and justified its decision making. Unaccompanied Child Program Foundational Rule, 89 Fed. Reg. 34, 384 (Apr. 30, 2024). |

| | | |
|---|---|---|
| 251. The Foundational Rule codified ORR's historic practice of screening all UACs for potential trafficking concerns, including during intake assessments, and sponsors assessments. | Unaccompanied Child Program Foundational Rule, 89 Fed. Reg. 34384, 34,389 (Apr. 30, 2024); 45 C.F.R. § 410.1208. | **Undisputed.** |
| 252. ORR also codified the requirement that ORR refer concerns of human trafficking to ACF's Office on Trafficking in Persons (OTIP) within 24 hours, in accordance with the reporting requirements in the TVPRA. | 45 C.F.R. § 410.1302(c)(8)(ii). | **Undisputed.** |
| 253. OTIP reviews these concerns to assess whether the UAC is eligible for benefits and services. | Unaccompanied Child Program Foundational Rule, 89 Fed. Reg. 34384, 34,389-90 (Apr. 30, 2024); 45 C.F.R. § 410.1208. | **Undisputed** but immaterial to the issues of this case and 45 C.F.R. § 410.1208 is not relevant. |
| 254. The Foundational Rule includes a severability provision stating that provisions of the rule "are separate and severable from one another," and that "[i]f any provision is stayed or determined to be invalid, the remaining provisions shall continue in effect." 45 C.F.R. § 410.1000(b). | 45 C.F.R. § 410.1000(b). | **Undisputed.** |

## IV.     Human Trafficking and UAC Sponsor Fraud (Committee Report)

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 255. In 2015, the Permanent Subcommittee on Investigations within the U.S. Senate Committee on Homeland Security and Governmental Affairs investigated ORR's child placement program following reports that ORR placed UACs with members of a human trafficking ring that forced the children to work on an egg farm in Marion Ohio, for 12 hours a day, six or seven days a week. | Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000159. | **Undisputed** but immaterial because Defendants' citation does not include any evidence supporting concerns that the alleged fraud was related to fraudulent identifications or lack of proof of income. To the extent there is any reference to concerns regarding proof of income requirements, they are limited to Category 3 sponsors. Additionally, the sponsor vetting policies in place in 2015 |

| | | |
|---|---|---|
| | | preceded the Foundational Rule and have been expanded, especially for Category 3 sponsors, since that time. *See, e.g.*, Fingerprint Decision Memo, Angelica-00000072-76; DNA Decision Memo, Angelica-00000093-98. Nothing in the record suggests the policy changes at issue in this case would have prevented the cited incident. *See also* Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs Angelica-00000159. |
| 256. In December 2022, the Committee on Homeland Security and Governmental Affairs ("Committee") published a report detailing the inadequate treatment of UACs in federal care and the insufficient safeguards to ensure they are not trafficked or abused following their release. | Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000127-83. | **Undisputed** but immaterial in so far as the cited report does not mention concerns regarding the use of fraudulent identifications.<br><br>*See* Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000127-83. |
| 257. The Committee found that in fiscal year 2019, ORR released 72,851 UAC to sponsors, while completing 56,935 digital sites fingerprint checks | Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, | **Undisputed.** |

| | | |
|---|---|---|
| and 18,271 checks with state child abuse and neglect registries. | Committee on Homeland Security and Governmental Affairs, Angelica-00000166-67. | |
| 258. The Committee found that in fiscal year 2021, ORR released 108,246 UAC to sponsors, while completing 25,413 digital sites fingerprint checks and 9,885 checks with state child abuse and neglect registries. | Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000166-67. | **Undisputed**. |
| 259. After learning that HHS had been waiving background checks for household members, the Committee requested that HHS provide data regarding background checks on sponsors by sponsor category, but HHS could not comply with the request. | Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000167-69. | **Undisputed.** However, the citation is incorrect and should be Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000167-168. |
| 260. The Committee concluded that without that data, it could not determine the number of cases in which HHS released UACs to a household, where public records checks revealed possible disqualifying factors. | Federal Care of Unaccompanied Children: Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000167-68. | **Undisputed** but immaterial as this case does not involve any challenge to public records checks. |
| 261. The Committee recommended that ORR prohibit additional consideration of the release of a UAC to the custody of a sponsor when the | Federal Care of Unaccompanied Children: | **Undisputed.** |

| | | |
|---|---|---|
| sponsor or a household member refuses to comply with required background checks. | Minors Remain Vulnerable to Trafficking and Abuse, Minority Staff Report, Committee on Homeland Security and Governmental Affairs, Angelica-00000132. | |

### V.    Human Trafficking and UAC Sponsor Fraud (Integrity and Accountability Team)

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 262. In March 2023 after a Florida grand jury published a report outlining over 100 allegations concerning deficiencies in ORR's UAC Program, ORR established an Integrity & Accountability (I&A) Team to detect and prevent fraud. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000246, 251 | **Undisputed**. |
| 263. The I&A team was established within the Office of the ORR Director as an independent oversight body with defined responsibilities to detect, prevent, mitigate, and report fraud and exploitation perpetrated by sponsors, parents, and UAC. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed.** |
| 264. There are four categories of potential sponsors: (1) Category 1, consisting of parents or legal guardians; (2) Category 2A, consisting of siblings, half-siblings, grandparents, immediate relatives (such as aunts, uncles, and cousins) who previously served as a primary caregiver, and other biological relatives and relatives through marriage; (3) Category 2B, consisting of immediate relatives (including biological relatives and relatives through marriage) who did not previously serve as a primary caregiver; (4) Category 3, consisting of other sponsors, such as distant relatives and unrelated adult individuals. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000190 | **Undisputed.** |
| 265. The I&A Team identified instances | Memo re: Recommendations to Combat Trafficking and Fraud in | **Undisputed** but immaterial given that this litigation does not |

| | | |
|---|---|---|
| of children and sponsors using altered birth certificates or unaltered birth certificates belonging to another person. | the UAC Program, Angelica-00000251 | implicate the use of birth certificates as a sole form of identification and Defendants continue to accept birth certificates to establish proof of the child's identity and proof of the sponsor-child relationship. ORR Policy Guide § 2.2.4, Angelica-00000007. |
| 266. The Team found that the fraud often involved collusion with others, such as a family member in the country of origin. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed** but immaterial given that nothing in the record suggests the policy changes at issue would have prevented the cited incidents. |
| 267. In one instance, the I&A Team identified 10 UAC who were released to sponsors who committed intentional document fraud in October 2024. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed** but immaterial given that nothing in the record suggests the policy changes at issue would have prevented the cited incident. *See* Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251. |
| 268. The I&A Team found that a woman and her partner attempted to sponsor a total of 15 UAC over a five-year period by using multiple aliases. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed** but immaterial given nothing in the record suggests the challenged policies would have prevented the cited incident, especially given ORR's expanded fingerprinting requirements. *See* Memo re: Recommendations to Combat Trafficking and Fraud |

| | | in the UAC Program, Angelica-00000251. |
|---|---|---|
| 269. The woman was caught when she underwent fingerprinting. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed.** |
| 270. The I&A Team reported that in late February 2024, an individual sponsor using multiple identities and addresses to sponsor or attempt to sponsor multiple children in Cleveland, Ohio was discovered after an investigation of potential child abuse and trafficking. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed** but immaterial given nothing in the record suggests the policy changes at issue would have prevented the cited incident, especially in light of ORR's expanded fingerprinting requirements.<br><br>*See* Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251. |
| 271. The individual sponsor had successfully sponsored a 15-year-old female UAC whose allegations of sexual abuse and trafficking led to charges of rape against the sponsor. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251 | **Undisputed** but immaterial given nothing in the record suggests the policy changes at issue would have prevented the cited incident.<br><br>*See* Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000251. |
| 272. The I&A Team additionally found cases of individuals demanding payment to sponsor UACs. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000252 | **Undisputed** but immaterial given there is no evidence in the record that suggests the policy changes at issue would have prevented the cited incident. To the contrary, disqualifying children's closest relatives based on their lack of |

| | | |
|---|---|---|
| | | qualifying identification could increase opportunities for bad actors to exploit desperate children and their families.<br><br>*See* Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000252. |
| 273. In one scheme there were 17 reported instances of successful extortion totaling $27,694. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000252 | **Undisputed** but immaterial given there is no evidence in the record that suggests the policy changes at issue would have prevented the cited incident.<br><br>*See* Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000252. |
| 274. Despite evidence of an increase in sponsorship fraud, ORR's data revealed that less than 1% of sponsorship applications had been denied between fiscal years 2021 and 2024. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000252. | **Disputed.** The cited memo confirms that less than 1% of sponsor applications were denied in FY2021 *and* FY2024. The cited materials do not contain any data showing whether that denial rate was consistent *between* FY21 and 24.<br><br> *See* Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000252. |

VI.    **Human Trafficking and UAC Sponsor Fraud (HHS Office of Inspector General Report)**

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 275. In February 2024, the HHS Office of Inspector General published a report called *Gaps in Sponsor Screening and Follow Up Raise Safety Concerns for Unaccompanied Children.* | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000184-245. | **Undisputed** but immaterial because the report does not refer to a problem of foreign issued identification or lack of proof of income.<br><br>*See* HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000184-245. |
| 276. HHS found that in 16% of children's case files, one or more required sponsor safety checks lacked any documentation indicating that the checks were conducted. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as this case does not involve a challenge to sponsor safety checks. |
| 277. HHS found that for 19% of children who were released to sponsors with pending Federal Bureau of Investigation fingerprint or State child abuse and neglect registry checks, children's case files were never updated with the results. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as this case does not involve a challenge to fingerprinting requirements or State child abuse and neglect checks. |
| 278. HHS found that in 35% of children's case files, sponsor-submitted identification documents contained legibility concerns. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as this case does not involve a challenge to investigating individual issues related to legibility of identification documents. |

| | | |
|---|---|---|
| 279.   HHS found that ORR failed to conduct mandatory home studies in two cases and four other cases raise concerns about whether ORR guidance on discretionary home studies should offer more specificity. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as this case does not involve challenges to home study policies. |
| 280. HHS found that in 5% of cases, sponsor records within ORR's case management system were not updated with child welfare outcomes or sponsorship history. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as to the issues in this case. |
| 281. As a result of these findings, HHS OIG recommended, among other things, that ORR develop additional safeguards to ensure that all safety checks are conducted and documented prior to approving the release of a child to their sponsor. | Decision Memo re: Revisions to ORR UACB Policy Guide Sections 2.2.4, 2.7.4, and 5.8.2, and accompanying procedures—Improving the Sponsor Vetting Process in Order to Mitigate Fraud and Enhance UAC Protections ("ID Decision Memo"), Angelica-00000080; ECF No. 21-1, Biswas Decl. ¶ 9. | **Undisputed** but immaterial as to the issues in this case. |

### VII.   Human Trafficking and UAC Sponsor Fraud (Harper Memo)

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 282. On February 4, 2025, former Acting Director of ORR, Mellissa Harper, issued a memorandum outlining immediate changes to address ongoing concerns with gaps in ORR's sponsor vetting process, as well as fraud and trafficking. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000246-56. | **Undisputed**. |

| | | |
|---|---|---|
| 283. Director Harper noted that in May 2023, the HHS Office of General Counsel conducted an internal investigation to identify which allegations in the Florida grand jury report could be substantiated, where policies were and were not compliance with, and where additional safeguards should be considered. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000248. | **Undisputed**. |
| 284.  Director Harper highlighted an instance in which a potential sponsor, who had tried to sponsor one child by photoshopping himself into a photograph of the child's mother, presented a foreign identification card bearing the name and photograph of another individual in an attempt to establish his identity and sponsor another child. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000248-49. | **Undisputed** but immaterial in so far as the attempted fraud at issue should have been apparent immediately and nothing in the record suggests the challenged policies would have been necessary to address this issue, especially in light of ORR's expanded fingerprinting requirements. |
| 285. HHS' investigations of the Florida grand jury allegations revealed a case of a sponsor housing ten people in a two-room apartment and having a UAC sleep in a closet with no ventilation. | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000248-49. | **Undisputed** but immaterial given there is no evidence in the record that suggests the policy changes at issue would have prevented the cited incident. Additionally, the correct cite is Angelica-00000249. |
| 286. In February 2025, the average length of care for UAC in ORR custody as of February 2025 was 25.8 days, but that length of time did not permit ORR to conduct adequate sponsor vetting measures necessary to ensure children are not released to potentially dangerous situations like those detailed in the investigations | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program, Angelica-00000253-54. | **Disputed.** The cited materials state that the average length of time in ORR custody in February 2025 was 25.8 days, but the memo does not *conclude* that 25.8 days did not permit ORR to conduct adequate vetting measures.  *See* Memo re: Recommendations to Combat Trafficking and Fraud |

| | | in the UAC Program, Angelica-00000253-54. |
|---|---|---|
| 287. HHS found that ORR failed to conduct mandatory home studies in two cases and four other cases raise concerns about whether ORR guidance on discretionary home studies should offer more specificity. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as this case does not involve challenges to home study policies. |
| 288. HHS found that in 5% of cases, sponsor records within ORR's case management system were not updated with child welfare outcomes or sponsorship history. | HHS OIG Report (OEI-07-21-00250): Gaps in Sponsor Screening and Follow-up Raise Safety Concerns for Unaccompanied Children, Angelica-00000185. | **Undisputed** but immaterial as to the issues in this case. |
| 289. As a result of these findings, HHS OIG recommended, among other things, that ORR develop additional safeguards to ensure that all safety checks are conducted and documented prior to approving the release of a child to their sponsor. | ID Decision Memo, Angelica-00000080; ECF No. 21-1, Biswas Decl. ¶ 9. | **Undisputed** but immaterial as to the issues in this case. |

## VIII.   Proof of Identity Requirements ("March 2025 ID requirements")

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 290. On March 7, 2025, ORR Director of Policy Toby Biswas recommended that ORR update Policy Guide Sections 2.2, 2.4, 7.4, and 5.8.2, and associated procedures, regarding acceptable documents used in support of a Sponsorship Application, denials of sponsorship due to fraud concerns, and clarification of fraud reporting requirements. | ID Decision Memo, Angelica-00000080-85. | **Undisputed.** |
| 291. Given that fraud in sponsorship applications poses safety risks to UACs in the UAC Bureau's care and custody, Director Biswas requested | ID Decision Memo, Angelica-00000081. | **Undisputed** that Mr. Biswas requested expedited approval but **disputed** that the recommended |

| | | |
|---|---|---|
| expedited approval to combat ongoing fraud and trafficking concerns. | | changes "combat ongoing fraud and trafficking concerns".<br><br>*See* ID Decision Memo, Angelica-00000081. |
| 292. Director Biswas observed that HHS had traditionally accepting identity documents that did not have a picture when coupled with other documents. | ID Decision Memo, Angelica-00000082 | **Undisputed** but the correct citation is ID Decision Memo, Angelica-00000081. |
| 293. In its discussion of the need for the March 2025 ID requirements, ORR noted "difficulty authenticating foreign issued documents, especially in a timely manner." | ID Decision Memo, Angelica-00000082 | **Undisputed** but incomplete. The memo does not consider whether some forms of foreign issued documents, such as foreign passports or consular identification cards, are more easily verified than secondary documents.<br><br>*See* ID Decision Memo, Angelica-00000082. |
| 294. ORR was aware of "reports of widespread fraud" regarding foreign issued documents. | ID Decision Memo, Angelica-00000082 | **Undisputed** but incomplete. The memo does not specify what types of foreign issued documents were implicated in fraud.<br><br>*See* ID Decision Memo, Angelica-00000082. |
| 295. ORR noted that its "internal investigations have revealed cases of criminals who have used fraudulent foreign documents in support of Sponsorship Applications where former UAC [unaccompanied alien children] became victims of crimes by their sponsors, including incidents of trafficking and sexual assault and have resulted in prosecutions." | ID Decision Memo, Angelica-00000082 | **Undisputed** but immaterial given there is no evidence in the record that suggests the policy changes at issue would have prevented the cited incidents. |
| 296. From 2019 to 2024, the number of eligibility letters that Office of Trafficking in Persons (OTIP) issued to children increased from 892 to 2,674. | Angelica-00000257, 00000262 | **Undisputed** but immaterial. |

| | | |
|---|---|---|
| 297. OTIP eligibility letters are letters meant to certify that the recipients are victims of human trafficking who may be eligible for certain federal, state, or local benefits. | Office of Trafficking in Persons, Requests for Assistance, https://acf.gov/otip/services/requests-assistance (Mar. 27, 2025). | **Undisputed** but immaterial. |
| 298. In the past, ORR has collaborated with foreign consulates and embassies and the U.S. Department of State to authenticate foreign issued documents. | ID Decision Memo, Angelica-00000082 | **Undisputed.** |
| 299. ORR found the collaboration process "complicated by international relations and the stability of certain foreign states." | ID Decision Memo, Angelica-00000082 | **Undisputed** that the decision memo says this but **disputed** as to the truth of the matter asserted given that it is an unsupported statement within the memo.<br><br>*See* ID Decision Memo, Angelica-00000082. |
| 300. A significant reason for updating the list of documents was to address its concerns related to the ability to authenticate foreign documents used in support of the Sponsorship Application. ORR cited "concerns related to the ability to authenticate foreign documents used in support of the Sponsorship Application" as its reason to "align[] identity document requirements to the DHS/USCIS I-9 required documentation." | ID Decision Memo, Angelica-00000082 | **Disputed.** The cited materials do not support the statement that concerns related to authentication of foreign documents was a "significant" reason for aligning the identity document requirements with DHS/USCIS I-9 requirements. It is evident that this was *a* reason for the change.<br><br>*See* ID Decision Memo, Angelica-00000082. |
| 301. ORR chose the I-9 document requirements because [b]ased on concerns related to the ability to authenticate foreign identity documents used in support of the Sponsor Application, ORR believes aligning identity document requirements to the DHS/USCIS I-9 required documentation will provide a safer framework for proving and authenticating identity. These are documents that the federal government relies on to establish identity for both citizens and non-citizens. ORR will also focus efforts | ID Decision Memo, Angelica-00000082 | **Undisputed** that this is the reasoning provided in the memo. |

| | | |
|---|---|---|
| to ensure that those reviewing identity documents have an easy way to view them, as well as the pictures on the documents, to determine that the individual submitting the identity document is in fact the holder of the identity document. | | |
| 302. ORR noted that some stakeholders would likely argue that the March 2025 ID requirements impact "family unity," particularly for parents; would be "particularly burdensome on the ability of undocumented or out of state aliens to sponsor children"; and, cause "unreasonable delay." | ID Decision Memo, Angelica-00000084 | **Undisputed.** |
| 303. ORR also noted in the same decision memo that other stakeholders would support the March 2025 ID requirements because the requirements aim to "eliminate fraud and combat trafficking in ORR's sponsorship process." | Decision Memo re: Revisions to ORR UACB Policy Guide Sections 2.2.4, 2.7.4, and 5.8.2, and accompanying procedures—Improving the Sponsor Vetting Process in Order to Mitigate Fraud and Enhance UAC Protections, Angelica-00000084 | **Undisputed** that this is what the decision memo asserts. |
| 304. A form of acceptable identification is a Form I-766, Employment Authorization Document ("EAD"). | Angelica-00000005. | **Undisputed.** |
| 305. Certain aliens who may lack lawful immigration status can qualify for an EAD. | 8 C.F.R. §§ 274a.12(c)(8) (authorizing EADs for aliens who have pending asylum applications), (13) (authorizing EADS for aliens with deferred action), (18) (authorizing EADs for aliens who have final orders of removal and are released from immigration custody pursuant to an order of supervision). | **Disputed** as to the definition of "lawful immigration status." Only individuals who have some form of lawful immigration status, whether deferred action, pending asylum application, eligibility status like Special Immigrant Juvenile Status, or another form of documented permission to remain in the United States qualify for an EAD. These individuals may not have finalized or permanent lawful immigration status, but they have been granted |

| | | some form of status that provides legal permission to remain in the United States, which qualifies them for an EAD.<br><br>8 C.F.R. §§ 274a.12(c)(8). |
|---|---|---|
| 306. Another form of acceptable identification is "a driver's license *or* ID card issued by a U.S. state or outlying possession of the United States, provided that it contains a photograph or information such as a name, date or [sic] birth, gender, height, eye color, and address." | Angelica-00000005 (emphasis added). | **Undisputed.** |
| 307. Another form of acceptable identification is an "ID card issued by federal, U.S., state, *or* local government agencies or entities, provided that it contains a photograph or information such as name, date or [sic] 'birth, gender, height, eye color, and address." | Angelica-00000005 (emphasis added). | **Undisputed.** |
| 308. ORR is permitted to exempt parents and legal guardians from the March 2025 ID requirements on a case-by-case basis. | Angelica-00000083 | **Undisputed.** Plaintiffs clarify that this exemption is unavailable to parents and legal guardians whose adult household members or alternate caregivers cannot meet the March 2025 ID requirements. DCSGI ¶ 41 ECF No. 71-1; Policy Guide § 2.2.4, Angelica-00000005. |

## IX.   April 2025 Proof of Income Requirements

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 309. In its memo recommending the April 2025 proof of income requirements, ORR noted that "financial stability requirements vary widely between jurisdictions." | Proof of Income Memo, Angelica-00000112 | **Undisputed** but immaterial. |

| | | |
|---|---|---|
| 310. ORR noted that "in the [state] child welfare system, parents, legal guardians, and close kin must demonstrate their financial capability to support a child's needs if the child is returned to their care." | Proof of Income Memo, Angelica-00000112 | **Undisputed.** |
| 311. ORR also observed that "non-related foster parents typically undergo stricter financial screening, including income verification and expense reporting." | Proof of Income Memo, Angelica-00000112 | **Undisputed.** |
| 312. ORR noted that "some states . . . explicitly prohibit denying foster care applications solely due to low income, even for individuals seeking to become foster parents." | Proof of Income Memo, Angelica-00000112 | **Undisputed.** |
| 313. ORR consulted a crosswalk to examine child welfare and foster care laws across several states when determining the parameters of the proof of income requirements. | Crosswalk on Proof of Income, Angelica-00000304. | **Undisputed.** |
| 314. ORR found that its procedures prior to the April 2025 proof of income requirements yielded "limited information about a sponsor's proof of income, employment history, and related information." | Proof of Income Memo, Angelica-00000114 | This statement is too vague to determine whether or not it is disputed because Plaintiffs cannot determine what is meant by "limited information". Plaintiffs do not dispute that this statement appears in the Proof of Income Memo. |
| 315. ORR noted that "by requiring submission of proof of income information and supporting documentation, case managers and Federal Field Specialists (FFS) will be able to better assess whether there are indicators that a sponsor (or individual submitting an Affidavit of Support) is being subjected to labor trafficking or labor exploitation. The Office on Trafficking in Persons (OTIP) has found that parents and other family members have been subjected to human trafficking and/or labor exploitation and had similar debts as the children | Proof of Income Memo, Angelica-00000112 | **Undisputed** that the memo states the quoted language. |

| | | |
|---|---|---|
| they sponsored. The information obtained during employment and income verification can inform the safety assessment, safety planning, decision to refer a case for a home study or not, and level of Post-Release Services (PRS) to recommend." | | |
| 316. In enumerating the documents required for proof of income, ORR cited a need to "clarify[] which documents are appropriate to provide proof of income verification" and to "create[] a streamlined standard across all cases, minimizing discretion and variability." | Proof of Income Memo, Angelica-00000114 | **Undisputed** that ORR cited these needs. |
| 317. ORR noted that "potential sponsors may not have appropriate documents and may not be able to complete their sponsorship applications." | Proof of Income Memo, Angelica-00000114 | **Undisputed**. |
| 318. ORR noted that some stakeholders would argue that "the majority of potential sponsors engaging with [ORR] do not have work authorization and may not be able to provide documentation required under this update to ORR's sub-regulatory guidance." | Proof of Income Memo, Angelica-00000115 | **Undisputed**. |
| 319. ORR noted that some stakeholders would argue that children not having sponsors with qualifying proof of income documentation "could result in longer lengths of stays for children in ORR custody." | Proof of Income Memo, Angelica-00000115 | **Undisputed**. |
| 320. ORR also considered *not* amending the proof of income requirements. | Proof of Income Memo, Angelica-00000115 | **Undisputed**. |
| 321. ORR believed that a "key con[]" of not enumerating the specific documents required for proof of income is that there would be "great variability across release decisions." | Proof of Income Memo, Angelica-00000115 | **Undisputed** that ORR stated it believed the quoted statement. |

## X.    Interim Final Rule (IFR)

| Defendants' Undisputed Material Fact | Support | |
|---|---|---|
| 322. The IFR was scheduled to take effect on the date of its publication in the Federal Register. | Angelica-00000021. | **Undisputed.** |
| 323. The IFR was published on March 25, 2025. | Unaccompanied Children Program Foundational Rule; Update To Accord With Statutory Requirements, 90 Fed. Reg. 13554 (Mar. 25, 2025). | **Undisputed.** |
| 324. The IFR amends 45 C.F.R. § 410.1201 by removing paragraph (b) and redesignating paragraph (c) as paragraph (b). | Unaccompanied Children Program Foundational Rule; Update To Accord With Statutory Requirements, 90 Fed. Reg. 13554, 13556 (Mar. 25, 2025). | **Undisputed.** |
| 325. Previous 45 C.F.R. § 410.1201(b) states: "ORR shall not disqualify potential sponsors based solely on their immigration status and shall not collect information on immigration status of potential sponsors for law enforcement or immigration enforcement related purposes. ORR shall not share any immigration status information relating to potential sponsors with any law enforcement or immigration enforcement related entity at any time." | Unaccompanied Children Program Foundational Rule, 90 Fed. Reg. 34384, 34591 (Apr. 30, 2024). | **Undisputed.** |
| 326. Previous 45 C.F.R. § 410.1201(c) states: "(c) In making determinations regarding the release of unaccompanied children to potential sponsors, ORR shall not release unaccompanied children on their own recognizance." | Unaccompanied Children Program Foundational Rule, 90 Fed. Reg. 34384, 34591 (Apr. 30, 2024). | **Undisputed.** |

| 327. In the IFR, Defendant U.S. Department for Health and Human Services ("HHS") "encourage[d] all interested parties to participate in this rulemaking by submitting written comments, views, and data on all aspects of this IFR." | Unaccompanied Children Program Foundational Rule; Update To Accord With Statutory Requirements, 90 Fed. Reg. 13554, 13555 (Mar. 25, 2025), *accord* UC Program Foundational Rule Update (IFR), Angelica-00000025. | **Undisputed.** |
| 328. HHS gave the public 60 days to provide comments regarding the IFR, with HHS anticipating that after the comment period on May 27, 2025, it would take several months to incorporate the comments and "finalize and clear" the rule. | UC Program Foundational Rule Update (IFR), Angelica-00000021; ECF No. 21-1, Biswas Decl. ¶ 21 (stating that HHS would need several months to "finalize and clear" the rule following the comment period.. | **Undisputed.** |
| 329. HHS timely received about 400 comments on the IFR. | Comments, Unaccompanied Children Program Foundational Rule; Update, https://www.regulations.gov/document/ACF-2025-0004-0001/comment (last visited Nov. 28, 2025). | **Undisputed.** |

## XI.    Angelica S.

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
| --- | --- | --- |
| 330. In December 2024, Deisy S. applied to sponsor Angelica. | ECF No. 9-12, Deisy S. Decl. ¶¶ 12-14; ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Disputed.** Deisy S. completed the family reunification application "[a]t the end of November." Deisy S. Decl. ¶ 12, ECF No. 9-12. ORR made contact with Deisy S. on November 23, 2024, and received an *updated* Family Reunification Application on December 12, 2024. Toby Biswas Decl. ¶ 22, ECF. No. 21-1. |

| | | |
|---|---|---|
| 331. Deisy S. had represented to ORR that the only adults in her household were her, her sister-in-law, and her (Deisy S.'s) partner. | ECF No. 9-12, Deisy S. Decl. ¶¶ 12-14. | **Disputed**. The cited paragraphs of Deisy S.'s declaration state that she sent in "the identification of all the other people who live in [their] house", and that she, her partner, and her sister-in-law were all fingerprinted. Deisy S. Decl. ¶¶ 12, 13, ECF No. 9-12. Her declaration is silent as to who she represented lived in her household. |
| 332. On January 23, 2025, Deisy S. had a positive home study result. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Disputed in part.** The cited declaration paragraph does not indicate the date of the positive home study result.<br><br>Toby Biswas Decl. ¶ 22, ECF No. 21-1. |
| 333. On January 23, 2025, Angelica was not cleared for release due to pregnancy complications. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Disputed in part**. The cited declaration paragraph indicates that Angelica "was no longer cleared to travel due to her pregnancy" but does not mention pregnancy complications.<br><br>Toby Biswas Decl. ¶ 22, ECF No. 21-1. |
| 334. On the same day, Angelica's adult caregiver, who was living in Deisy S.'s home, was arrested for allegedly sexually abusing an eight-year-old child. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Disputed** that the person arrested was Angelica's adult caregiver because Plaintiffs' do not understand what "adult caregiver" means given that Deisy was Angelica's sponsor and Angelica was in ORR custody. |
| 335. Deisy S. did not disclose the arrest of Angelica's adult caregiver to ORR until January 30, 2025. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Undisputed** that Deisy S. affirmatively disclosed the arrest within a week. |

| | | |
|---|---|---|
| 336. On February 19, 2025, ORR required Deisy S. to certify that the arrested adult caregiver was no longer living in her home. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Undisputed.** |
| 337. On March 18, 2025, Deisy S. withdrew her sponsorship application for Angelica S. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Undisputed** that she withdrew her application because she could not meet the new identification and proof of income requirements. |
| 338. On March 27, 2025, ORR concurred with Deisy S.'s withdrawal. | ECF No. 21-1, Toby Biswas Decl. ¶ 22. | **Undisputed**. |

## XII.   Eduardo M.

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 339. Rosa M. attempted to obtain a qualifying identity document by obtaining a California driver's license. | ECF No. 9-13, Rosa M. Decl. ¶ 5. | **Disputed.** Rosa M. did not attempt to obtain a California driver's license because she cannot drive. *See* ¶ 340 *infra*. |
| 340. Rosa M. cited her inability to drive as her reason for being unable to acquire a California driver's license. | ECF No. 9-13, Rosa M. Decl. ¶ 5. | **Undisputed**. |

## XIII. <u>Liam W.</u>

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 341. Prior to May 2, 2025, Liam W.'s mother Sofia W. and her household members failed to provide identity documents that satisfy the March 2025 identity requirements. | ECF No. 21-1, Toby Biswas Decl. ¶ 24. | **Undisputed**. Plaintiffs clarify that Defendants do not cite any evidence that Sofia or her household members were ever able to provide identity documents that satisfy the March 2025 identity requirements. Liam W. was released pursuant to this court's preliminary injunction which ordered ORR to accept the previous forms of identification from sponsors and household members. *See* DCSGI ¶ 140, ECF No. 71-1. |

## XIV. <u>Xavier L.</u>

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 342. Ximena obtained an identity document issued by Illinois in late April or early May 2025. | *See* ECF No. 9-15, Ximena L. Decl. ¶ 8 (dated May 7, 2025) (stating that Ximena obtained an Illinois identity document "a week" before the preparation of her declaration) | **Undisputed.** |
| 343. Ximena cited her alleged inability to satisfy the proof of income requirements for why she was withdrawing her sponsorship application. | ECF No. 21-1, Toby Biswas Decl. ¶ 26. | **Undisputed** but unsupported by this citation. Paragraph 26 of the Biswas declaration states, "Xavier's mother withdrew from the sponsorship process because she was unable to provide an acceptable form of identity document that met the updated requirements. . . . Due to the concern that Xavier may age out |

| | | soon, his mother withdrew so as to allow her sister to apply for sponsorship instead." Nowhere does this paragraph discuss proof of income. *See* Toby Biswas Decl. ¶ 26, ECF No. 21-1. |
|---|---|---|
| 344. Xavier's aunt applied to sponsor him. | ECF No. 21-1, Toby Biswas Decl. ¶ 26. | **Undisputed.** |
| 345. Xavier's aunt had documents that satisfied the March 2025 ID requirements and April 2025 proof of income requirements. | *See* ECF No. 9-15, Ximena L. Decl. ¶ 9 | **Undisputed.** |
| 346. Xavier is now 18 years old. | ECF No. 48, Plaintiffs' First Amended Complaint ¶ 104; ECF No. 53, Answer to Plaintiffs' First Amended Complaint ¶ 104. | **Undisputed.** |

### XV.    Leo B.

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 347. Leo B. is currently 18 years old. | ECF No. 48, First Amended Complaint ¶ 15; ECF No. 53, Answer to First Amended Complaint ¶ 15. | **Undisputed.** |

### XVI.    Mateo N.

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 348. Steven N. began applying to sponsor Mateo N. in late May 2025. | ECF No. 56-3, Steven N. Decl. ¶ 5. | **Undisputed** but the date is mentioned in ¶ 6 of Steven N.'s declaration, not ¶ 5. *See* Steven N. Decl. ¶ 6, ECF No. 56-3. |

| | | |
|---|---|---|
| 349. Steven N.'s wife attempted to obtain an identity document that would satisfy the March 2025 ID requirements by obtaining a Massachusetts driver's license. | ECF No. 56-3, Steven N. Decl. ¶ 8. | **Undisputed.** |
| 350. Steven N. attributes his wife's decision to an unknown person simply identified as "they" telling him and his wife that she had "to do a driving test . . . and that she could not just get an ID card." | ECF No. 56-3, Steven N. Decl. ¶ 8. | **Disputed.** Steven's wife's decision to obtain a driver's license was because ORR informed Steven that his sponsorship could not proceed until his wife provided a form of identification acceptable under its post-March 2025 rules.<br><br>Am. Compl. ¶ 110, ECF No. 48; Defs. Answer to Am. Compl. ¶ 110, ECF No. 53 ("Defendants admit the allegation that ORR informed Steven that his sponsorship could not proceed until his wife provided a form of identification acceptable under its post-March 2025 rules and that Steven's wife has not yet been able to obtain a state-issued ID."). |
| 351. Steven N.'s wife would have to pass a driving test to obtain a Massachusetts's driver's license. | ECF No. 56-3, Steven N. Decl. ¶ 8. | **Undisputed.** |

### XVII. <u>Yair G.</u>

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 352. Milagro G. began applying to sponsor Yair G. in May 2025. | ECF No. 51-8, Milagro G. Decl. ¶¶ 3-4 (stating that she started applying to sponsor Yair G. a week after his May 2025 entry into the United States) | **Undisputed** that Milagro G. began applying to sponsor Yair in late May 2025 or early June 2025. |

| | | |
|---|---|---|
| 353. Milagro G. completed fingerprinting in July 2025. | ECF No. 51-8, Milagro G. Decl. ¶ 6. | **Undisputed.** |
| 354. In July 2025, Milagro G. did not provide ORR with identity documents that satisfied the March 2025 ID requirement, citing her inability to obtain them. | ECF No. 51-8, Milagro G. Decl. ¶ 6. | **Undisputed**. |
| 355. Milagro G. claims to have not been aware of her need for the ID requirements prior to a "case worker" telling her in July 2025 that she "could not be a sponsor unless [she] provided a different form of identification." | ECF No. 51-8, Milagro G. Decl. ¶ 6. | **Undisputed.** |

## XVIII. <u>David D.</u>

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 356. David's entry into ORR custody was about two months after the March 2025 ID requirements. | *See* ECF No. 48, First Amended Complaint ¶ 120; ECF No. 53, Answer to First Amended Complaint ¶ 120. | **Undisputed.** |
| 357. David's mother Isabel D. attempted to obtain a California driver's license to satisfy the March 2025 ID requirements. | ECF No. 56-7 Isabel D. Decl. ¶ 4. | **Undisputed.** |
| 358. Isabel D failed to obtain the California driver's license because she failed the driving test necessary to obtain the license. | ECF No. 56-7 Isabel D. Decl. ¶ 9 ("I did not pass the exam [for the driver's license]"). | **Undisputed.** |
| 359. ORR granted Isabel D an exemption from the March 2025 ID requirements. | *See* ECF No. 63-1, David D. Discharge Notification. | **Undisputed** that ORR granted an exemption over five weeks after it was requested. DCSGI ¶ 197, ECF No. 70-1; David D. Discharge Notification at 2, ECF No. 63-1. |
| 361. David was released from ORR custody on September 16, 2025. | *See* ECF No. 63-1, David D. Discharge Notification. | **Undisputed.** |

## XIX. Immigrant Defenders Law Center ("ImmDef")

| Defendants' Undisputed Material Fact | Support | Plaintiffs' Response and Support |
|---|---|---|
| 361. ImmDef is a nonprofit legal services provider in California. | ECF No. 10-15, Cynthia Felix Decl. ¶ 3. | **Undisputed.** |
| 362. ImmDef represents detained and non-detained unaccompanied alien children ("UAC") in removal proceedings before the immigration courts of the United States. | ECF No. 10-15, Cynthia Felix Decl. ¶¶ 3-4. | **Undisputed.** |
| 363. ImmDef provides "know-your-rights" presentations and other materials to apprise UACs and their guardians of their legal rights. | *See* ECF No. 10-15, Cynthia Felix Decl. ¶ 21. | **Disputed** in that this citation does not support this statement. Part of ImmDef's work includes providing "know your rights" presentations to children.<br><br>Cynthia Felix Decl. ¶¶ 5, 21, ECF No. 10-15. |
| 364. ImmDef does not participate directly in the process to release UACs to their sponsors. | *See* ECF No. 65-2, Cynthia Felix Decl. ¶ 5. | **Undisputed** but immaterial. |
| 365. That process is handled by third parties such as The Providencia Group and "Federal Field Specialists." | *See* ECF No. 65-2, Cynthia Felix Decl. ¶ 5. | **Disputed in part.** Federal Field Specialists are not "third parties" and Ms. Felix's declaration states, "Recently, reunification was reassigned from third-party reunification specialists at The Providencia Group ("TPG") to a group of Federal Field Specialists ("FFS") specifically tasked with overseeing and facilitating reunification."<br><br>Cynthia Felix Decl. ¶ 5, ECF No. 65-2. |
| 366. Since ORR amended the Policy Guide to incorporate the March 2025 ID requirements, ImmDef has continued to visit its UAC clients while they are in HHS custody. | *See* ECF No. 10-15, Cynthia Felix Decl. ¶ 10 (alleging that ImmDef has increased the number of visits it makes to HHS | **Undisputed.** |

| | facilities to speak with its clients). | |
|---|---|---|
| 367. Since ORR amended the Policy Guide to incorporate the March 2025 ID requirements, ImmDef has continued to communicate with HHS facility staff regarding information about its detained UAC clients. | *See* ECF No. 10-15, Cynthia Felix Decl. ¶ 10 (describing communications between ImmDef and the "facilities" regarding ImmDef's clients), 12 (describing ImmDef discussing accommodations with HHS staff for case preparation time with ImmDef's clients) | **Undisputed**. |
| 368. Since ORR amended the Policy Guide to incorporate the March 2025 ID requirements, ImmDef has continued to represent detained and non-detained UACs before the immigration courts of the United States. | *See* ECF No. 10-15, Cynthia Felix Decl. ¶¶ 12 (describing ImmDef preparing its detained unaccompanied alien children clients for immigration court proceedings), 15 (stating that 85% of the unaccompanied alien children that ImmDef represents in immigration court proceedings are not detained). | **Partially disputed.** Defendants appear to be missing context from paragraph 24 the Cynthia Felix Supplemental Declaration, which discusses how, between February and September 2024, 44% of ImmDef's new cases for unaccompanied children were on behalf of detained children, but over that same period in 2025 the proportion is approximately 84%.<br><br>Cynthia Felix Suppl. Decl. ¶ 24, ECF No. 58-3. |
| 369. Since ORR amended the Policy Guide to incorporate the March 2025 ID requirements, ImmDef has continued to provide "know-your-rights" presentations and other materials to apprise UACs and their guardians of their legal rights. | *See* ECF No. 10-15, Cynthia Felix Decl. ¶ 21 (describing ImmDef having revised those materials since March 2025). | **Disputed** in that this citation does not support this statement. ImmDef has "expend[ed] resources revising know-your-rights presentations and screening materials to explain to children the impacts on their legal cases of remaining detained for long periods of time in 'short term' ORR custody."<br><br>Cynthia Felix Decl. ¶ 21, ECF No. 10-15. |

Date: December 12, 2025

Respectfully submitted,

/s/ *Mishan Wroe*
Mishan Wroe (admitted *pro hac vice*)
Diane de Gramont (admitted *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
(510) 835-8098
mwroe@youthlaw.org
ddegramont@youthlaw.org

Rebecca Wolozin (D.C. Bar No. 144369)
David Hinojosa (D.C. Bar No. 1722329)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
(202) 868-4792
dhinojosa@youthlaw.org
bwolozin@youthlaw.org

Cynthia Liao (admitted *pro hac vice*)
Joel McElvain (D.C. Bar No. 448431)
Skye L. Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
cliao@democracyforward.org
jmcelvain@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*