# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

ANGELICA S., *et al.*,         )
                                     )   Case No. 1:25-cv-01405-DLF
            *Plaintiffs,*   )
                                     )
v.                                 )
                                     )
                                   )
U.S. DEPARTMENT OF HEALTH AND   )
HUMAN SERVICES, *et al.*,      )
                                   )
                                   )
           *Defendants.*  )

_____

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE CONCISE STATEMENT OF GENUINE ISSUES

**Interim Final Rule (IFR)**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 1.  The sole justification for the IFR issued on March 25, 2025, was a purported conflict between the Information Sharing provision of 45 C.F.R. § 410.1201(b) and 8 U.S.C. § 1373. | UC Program Foundational Rule Update (IFR),  Angelica-00000021-28 Informational Memo  re: Interim Final Rule entitled "Unaccompanied Children Program Foundational Rule; Update to Accord with Statutory Requirements" ("IFR Informational Memo"), Angelica-00000099-10 Decision memo re: Approval of Interim Final Rule entitled "Unaccompanied Children Program Foundational Rule; Update to Accord with Statutory Requirements" ("IFR Decision Memo"), Angelica-00000102-106. | This is not a fact; this is argument. | UC Program Foundational Rule Update (IFR), Angelica-00000021-28; Informational Memo  re: Interim Final Rule entitled "Unaccompanied Children Program Foundational Rule; Update to Accord with Statutory Requirements" ("IFR Informational Memo"), Angelica- 00000099-101 Decision memo re: Approval of Interim Final Rule entitled "Unaccompanied Children Program Foundational Rule; Update to Accord with Statutory Requirements" ("IFR Decision Memo"), Angelica-00000102-106. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that no other justification for the IFR is present in the administrative record.

| | | | |
|---|---|---|---|
| 2.    The administrative record does not provide any justification (other than an assertion that the Disqualification and Information Collection provisions of 45 C.F.R. § 410.1201(b) are inextricably linked) for the rescission of the Disqualification and Information Collection provisions in 45 C.F.R. § 410.1201(b). | Administrative Record Index ("Index"), ECF 47-1; IFR, Angelica-00000021-28, IFR Informational Memo, Angelica-00000099- 101, IFR Decision Memo, Angelica-00000102-106. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that no other justification is present in the administrative record nor cite to where other justifications exist in the administrative record. | | | |
| 3.    The administrative record does not address the impact on unaccompanied children's length of custody of the rescission of 45 C.F.R. § 410.1201(b). | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica-00000099-101, IFR Decision Memo, Angelica-00000102-106. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that no other justification is present in the administrative record nor cite to where other justifications exist in the administrative record. | | | |
| 4.    The administrative record does not address potential conflicts between the IFR and ORR's statutory obligation to promptly place children in the least restrictive setting. | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica- 00000099-101, IFR Decision Memo, Angelica-00000102-106. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |

| | | | |
|---|---|---|---|
| 5. The administrative record does not address the reliance interests of sponsors and other adults required to participate in the sponsorship process who already provided sensitive personal information to ORR based on ORR's prior policies. | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica- 00000099-101, IFR Decision Memo, Angelica-00000102-106 Declaration of Deisy S. ("Deisy S. Decl.") ¶ 10, ECF 9-12 Declaration of Ximena L. ("Ximena L. Decl.") ¶ 5, ECF 9-15. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |
| 6. The administrative record does not mention Congressional restrictions on the use of sponsor information by DHS or ORR's Privacy Act Notice. | Index, ECF 47-1; Angelica-00000021-28, IFR Informational Memo, Angelica- 00000099-101, IFR Decision Memo, Angelica-00000102-106. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |
| 7. The public submitted nearly 400 comments on the IFR. | Comments, Unaccompanied Children Program Foundational Rule; Update, https://www.regulations.gov/document/ACF-2025-0004-0001/comment (last visited Sept. 9, 2025). | Concede. | Comments, Unaccompanied Children Program Foundational Rule; Update, https://www.regulations.gov/document/ACF- 2025-0004-0001/comment (last visited Sept. 9, 2025). |

| | | | |
|---|---|---|---|
| 8.  The Foundational Rule, part of which the IFR repealed, received over 73,000 comments. | Comments, Unaccompanied Children  Program Foundational Rule; Update, https://www.regulations.gov/document/ACF- 2025-0004-0001/comment (last visited Sept. 9, 2025). | Concede. | Comments, Unaccompanied Children  Program Foundational Rule; Update, https://www.regulations.gov/document/ACF- 2025-0004-0001/comment (last visited Sept. 9, 2025). |

**Sponsorship Application Process**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 9.  When a child enters ORR custody, the ORR care provider interviews the child and close family members to identify potential sponsors. | Office of Refugee Resettlement, Unaccompanied Alien Children Bureau Policy Guide ("Policy Guide") § 2.2.1, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025). | Concede | Office of Refugee Resettlement, Unaccompanied Alien Children Bureau Policy Guide ("Policy Guide") § 2.2.1, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025). |
| 10. After an ORR care provider identifies a potential sponsor, the care provider or ORR National Call Center sends the child's potential sponsor a sponsor application packet with an application form. | Policy Guide § 2.2.3, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025). | Concede | Policy Guide § 2.2.3, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025). |
| 11. The March 2024 version of ORR's "Family Reunification Application" was approved by the Office of Management and Budget ("OMB") pursuant to the Paperwork Reduction Act. | Plaintiffs' First Amended Complaint "Amended Complaint" ¶¶ 67, 70-71, ECF 48; Defs.' Answer to First Amended Complaint ("Defs.' Answer") ¶¶ 67, 70-71, ECF 53. | Concede | Plaintiffs' First Amended Complaint "Amended Complaint" ¶¶ 67, 70-71, ECF 48; Defs.' Answer to First Amended Complaint ("Defs.' Answer") ¶¶ 67, 70-71, ECF 53. |

| | | | |
|---|---|---|---|
| 12. Most of the potential sponsors of children in ORR custody lack stable lawful immigration status. | Decision Memo re: Sub-Regulatory Guidance; Revisions to the Unaccompanied Children Bureau Policy Guide and Manual of Procedures Revisions to Require Sponsors to Provide Proof of Income ("Income Decision Memo), Angelica-00000115 ("Immigrant rights advocates are likely to note that the majority of potential sponsors engaging with UACB do not have work authorization and may not be able to provide documentation required under this update to ORR's sub regulatory guidance") Decision Memo re: Revisions to ORR UACB Policy Guide Sections 2.2.4, 2.7.4, and 5.8.2, and accompanying procedures—Improving the Sponsor Vetting Process in Order to Mitigate Fraud and Enhance UAC Protections ("ID Decision Memo"), Angelica-00000084 Declaration of Mari Dorn-Lopez ("Dorn- Lopez Decl.") ¶ 8, ECF 10-13 Declaration of Jenifer Smyers ("Smyers Decl.") ¶ 7, ECF 10-14 William Kandel, Cong. Rsch. Serv., R 43599 *Unaccompanied Alien Children: An Overview* 24 (updated Sept. 2024), https://www.congress.gov/crsproduct/R 43599 (In 2018, ICE data indicated that approximately 80 percent of sponsors and household members | Defendants lack sufficient information to concede or deny this factual allegation because Defendants do not know what Plaintiffs mean by "stable lawful immigration status." | N/A |

| | lacked lawful immigration status.). | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. The meaning of "stable lawful immigration status" is clear from the cited supporting documents. Defendants do not contest that the administrative record shows the agency's awareness that most sponsors lack work authorization issued according to immigration status. Defendants do not cite anything in the administrative record that contradicts this fact. | | | |
| 13. ORR has historically accepted sponsors without stable lawful immigration status. | ID Decision Memo, Angelica-00000082-84; Proof of Income Decision Memo, Angelica-00000115; Preamble, ORR Foundational Rule, 89 Fed. Reg. at 34440. | Defendants lack sufficient information to concede or deny this factual allegation because Defendants do not know what Plaintiffs mean by "stable lawful immigration status." | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. See above response to ¶ 12. Defendants do not contest that the decision memos in the administrative record and the Foundational Rule preamble acknowledge that sponsors without lawful immigration status have previously been able to sponsor children regardless of immigration status. Defendants do not cite anything in the administrative record to contradict this fact. | | | |
| 14. ORR requires each sponsor application to include a sponsor care plan identifying an alternative adult caregiver who could care for the child if the sponsor becomes unavailable. | Policy Guide §§ 2.6, 2.7.6, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025); Smyers Decl. ¶ 8, ECF 10-14. | Concede | Policy Guide §§ 2.6, 2.7.6, https://perma.cc/7XKY-LNHN (as of Sept. 9, 2025); Smyers Decl. ¶ 8, ECF 10-14. |

| | | | |
|---|---|---|---|
| 15. As of February 14, 2025, ORR requires that all sponsors, all adult household members, and all alternate caregivers to submit to a fingerprint based background check. | Amended Complaint ¶ 47; Defs.' Answer ¶¶ 46-47. Field Guidance #26 – Fingerprint Background Checks and Acceptable Supporting Documentation for a Family Reunification Application ("Fingerprinting Guidance"), Angelica-00000001-04 Informational Memo re: Office of Refugee Resettlement to publish Field Guidance 26, "Fingerprint Background Checks and Acceptable Supporting Documentation for a Family Reunification Application" ("Fingerprinting Informational Memo"), Angelica-00000077-79. | Concede | ECF No. 48, First Amended Complaint ¶¶ 46-47; ECF No. 53, Answer to First Amended Complaint ¶¶ 46-47. |
| 16.    At the time of the proof of identification policy change, ORR was also actively considering expanded DNA testing for related sponsors. | Informational Memo re: Universal Biometric Screening for Sponsors of Unaccompanied Alien Children ("Biometric Informational Memo"), Angelica-00000048, 58-59. | Concede | |
| 17.    As of March 14, 2025, ORR also requires DNA testing of the child and sponsor in every case where a sponsor claims a biological relationship with the child. | Amended Complaint ¶ 48; Defs.' Answer ¶ 48. Decision Memo re: Field Guidance #27: DNA Testing Expansion ("DNA Decision Memo"), Angelica-00000093-98. | Concede | ECF No. 48, First Amended Complaint ¶ 48; ECF No. 53, Answer to First Amended Complaint ¶ 48. |

**Changes to Proof of Identity Requirements**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 18. The current OMB-approved application form lists acceptable forms of identification for sponsors or other individuals required to participate in the sponsorship process in the "Supporting Documents" section and permits these individuals to establish their identity through a primary document such as a foreign passport or two or more secondary documents such as a birth certificate, foreign national identification card, or similar documentation. | Amended Complaint ¶¶ 50, 67; Defs.' Answer ¶¶ 50, 67 UAC MAP Section 2.2.4, 2.4.1, 2.7.4 -2025 04 15, Angelica-00000029-30 (reflecting prior identification requirements) Ex. 1-A, Family Reunification Application at 8, Declaration of Diane de Gramont ("de Gramont Decl."), ECF 10-5. | Concede | ECF No. 48, First Amended Complaint ¶¶ 50, 67; ECF No. 53, Answer to First Amended Complaint ¶¶ 50, 67. |
| 19. On March 7, 2025, ORR unilaterally amended its Policy Guide § 2.2.4 to include a new, more restrictive list of acceptable forms of identification for sponsors, adult household members, and alternative adult caregivers that differs from the requirements in the OMB-approved application form. | Amended Complaint ¶ 67; Defs.' Answer ¶ 67; Policy Guide § 2.2.4, Angelica-00000005-06. ID Decision Memo, Angelica-00000080-85. | Concede in part, deny in part. Defendants concede that the amendments alleged in Paragraph 19 were made. Defendants deny that the description of the amendments as "restrictive" is a fact when that description is a characterization. | ECF No. 48, First Amended Complaint ¶ 67; ECF No. 53, Answer to First Amended Complaint ¶ 67. |

| **Plaintiffs' Reply**: <u>Remains Undisputed</u>. Defendants do not challenge the underlying fact that the policy includes fewer forms of identification than previously accepted, or that the new list of identification documents is narrower (i.e. more "restricted") than the list of acceptable documents on the OMB-approved application form. | | | |
|---|---|---|---|
| 20.    ORR has not obtained OMB approval for its new identification information collection requirements. | Amended Complaint ¶ 167; Defs.' Answer ¶ 167. | Concede | ECF No. 48, First Amended Complaint ¶ 167; ECF No. 53, Answer to First Amended Complaint ¶ 167. |
| 21. The new list of permissible forms of identification eliminates all forms of identification issued by foreign governments, except for Canadian driver's licenses and foreign passports accompanied by proof of lawful U.S. immigration status such as "an endorsement to work" or an I-551 indicating permanent residence. | Policy Guide § 2.2.4, Angelica-00000005- 06; Amended Complaint ¶ 51; Defs.' Answer ¶ 51. | Concede | ECF No. 48, First Amended Complaint ¶ 51; ECF No. 53, Answer to First Amended Complaint ¶ 51. |
| 22.  ORR's new proof of identification requirements are imported from the U.S. Citizenship and Immigration Services ("USCIS") Form I-9 requirements for employees to establish identity and work authorization. | ID Decision Memo, Angelica-00000082-83; U.S. Citizenship and Immigration Services, Form I-9 Acceptable Documents, https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents (last accessed Sept. 8, 2025). | Concede. | Certified Administrative Record ("CAR") 00000082-00000083. |
| 23. The Form I-9 is specifically designed to disqualify individuals who lack lawful work authorization. | U.S. Citizenship and Immigration Services, I-9, Employment Eligibility Verification, https://www.uscis.gov/i-9 (last accessed Sept. 10, 2025). U.S. Citizenship and Immigration Services, Form I-9 Acceptable Documents, https://www.uscis.gov/i-9- | This is not a fact; this is a characterization of what the Form I-9 does. | N/A |

| | central/form-i-9-acceptable-documents (last accessed Sept. 10, 2025). | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record. | | | |
| 24. ORR's decision memo acknowledges—but does not rebut—a likely objection from advocates that the new identity requirements will be "particularly burdensome on the ability of undocumented or out of status [individuals] to sponsor children." | ID Decision Memo, Angelica-00000084. | Concede in part, deny in part. Defendants concede that ORR noted that possible objection. Defendants deny that the proposition that the decision "acknowledges—but does not rebut—a likely objection from advocates" is not a fact; it is legal argument and conclusion. | ID Decision Memo, Angelica-00000084. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any rebuttal of this objection in the administrative record. | | | |
| 25. The only justification for using the Form I-9 list in the administrative record is that "ORR believes" these documents "provide a safer framework for proving and authenticating identity" and "[t]hese are documents that the federal government relies on to establish identity for both citizens and non citizens." | ID Decision Memo, Angelica-0000082. | Concede in part, deny in part. Defendants concede that quoted language appears in the record, but Defendants deny the proposition that the quoted language is Defendants' "only justification" is a fact because it is a legal argument and conclusion. | ID Decision Memo, Angelica-0000082. |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that no other justification is present in the administrative record or cite to any other justifications present in the administrative record. | | | |
| 26. ORR did not consider that the I-9 list is specifically intended to establish work authorization and is used to establish identity only for non-citizens with work authorization. | ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this consideration is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 27. The federal government routinely accepts foreign passports as proof of identification in other contexts, such as for visa applications or tax identification numbers. | U.S. Department of State, Bureau of Consular Affairs, Visitor Visa, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html#documentation (last accessed Sept. 10, 2025); Internal Revenue Service, ITIN Supporting Document https://www.irs.gov/tin/itin/itin-supporting-documents (last accessed Sept. 10, 2025). | Concede in part. Defendants concede that the U.S. Department of State and Internal Revenue Service have accepted foreign passports as proof of identification. Defendants' assertion that the federal government has done so "routinely" is not a fact, but a characterization. | U.S. Department of State, Bureau of Consular Affairs, Visitor Visa, https://travel.state.gov/content/travel/en/usvisas/tourismvisit/visitor.html#documentation (last accessed Sept. 10, 2025); Internal Revenue Service, ITIN Supporting Documents, https://www.irs.gov/tin/itin-supporting-documents (last accessed Sept. 10, 2025). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record. | | | |

| | | | |
|---|---|---|---|
| 28. ORR did not consider alternatives to the Form I-9 list of acceptable identifications. | ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is legal argument and conclusion. Defendants also deny the materiality of this allegation when an agency is not required to consider "all policy alternatives in reaching [its] decision." | *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 51 (1983) (stating that when determining when an agency acted arbitrarily and capriciously, "[the Court does not] broadly require an agency to consider all policy alternatives in reaching [its] decision") |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record or cite to any contradictory evidence in the administrative record.

| | | | |
|---|---|---|---|
| 29. ORR's earlier February 7, 2025, memorandum regarding fraud concerns in the sponsorship process emphasized problems with ORR's internal procedures rather than the specific form of identification presented and called only for reassessing the use of certain *secondary* documents "that cannot reliably be verified." | Memo re: Recommendations to Combat Trafficking and Fraud in the UAC Program ("Harper Memo"), Angelica-00000246-254. | This is not a fact; this is Plaintiffs' characterization of the statements in the Harper Memo. | |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. Defendants do not identify any part of the Harper Memo that called for reassessing the use of primary documents.

| | | | |
|---|---|---|---|
| 30. ORR did not consider whether nationally-issued documents such as foreign passports, national identification cards, or consular identification cards present the same verification challenges as baptismal certificates or marriage certificates. | ID Decision Memo, Angelica-0000080-85; Harper Memo, Angelica-00000246-254. | This is not a fact; this is argument. | |

| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |
|---|---|---|---|
| 31. ORR did not consider an exception for sponsors whose identities could be easily verified with their home country consulate. | ID Decision Memo, Angelica-0000080-85; Declaration of Isabel D. ("Isabel D. Decl.") ¶ 4, ECF 56-7 (noting that she used her consular identification card as a form of identification). | This is not a fact; this is argument. Additionally, Defendants do not know what Plaintiffs mean by "easily verified" because that term is vague. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |
| 32. ORR requires a birth certificate to establish the child's identity and birth certificates or other similar foreign documents to establish the sponsor-child relationship. | Policy Guide § 2.2.4, Angelica-00000007. | Concede in part, deny in part. Defendants concede that a birth certificate for the child would be a foreign document because the child is not a citizen of the United States. Defendants also concede that ORR would accept some foreign documents to establish the sponsor-child relationship. Defendants deny that all the documents meant to establish the sponsor-child relationship are necessarily foreign when, for example, a parent of the child could die in the United States and thus have a U.S. death certificate. | Policy Guide § 2.2.4, Angelica-00000007. |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact ORR requires foreign birth certificates for the child in custody, and foreign birth certificates or other foreign documents where U.S. documents are not applicable. | | | |
| 33. On March 7, 2025—simultaneously with ORR's new sponsor identification requirements—ORR amended the Policy Guide to require that "Federal staff must exhaust all available avenues to verify the authenticity of birth certificates." | *Compare* Policy Guide § 2.2.4, Angelica- 00000007 (as of March 10, 2025), *with* Ex. 1-E, ORR Policy Guide Sec. 2.2.4, de Gramont Decl., ECF 10-9 (as of February 27, 2025). | Concede in part, deny in part. Defendants concede that ORR amended the Policy Guide to require that "Federal staff must exhaust all available avenues to verify the authenticity of birth certificates." Defendants deny that the amendment was made on March 7, 2025. | *Compare* Policy Guide § 2.2.4, Angelica-00000007 (as of March 10, 2025), *with* Ex. 1-E, ORR Policy Guide Sec. 2.2.4, de Gramont Decl., ECF 10-9 (as of February 27, 2025). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not dispute that this policy amendment was made on or around March 7, 2025. Furthermore, the evidence Defendants cite does not support Defendants' assertion because neither document states the exact date of the amendment. The Policy Guide (Angelica-00000005) webpage is current as of 3/10/2025 and Exhibit 1-E is current as of 2/27/2025. The requirement that "Federal staff must exhaust all available avenues to verify the authenticity of birth certificates" was added to ORR Policy Guide § 2.2.4 after 2/27/2025, *see* Ex. 1-E, and was present in the 3/7/2025 version of ORR Policy Guide § 2.2.4. *See* Ex. 1-F at 4-5, de Gramont Decl., ECF 10-10 (current as of 3/26/25) (noting that this version of Section 2.2.4 was "Effective 03/07/2025"). Plaintiffs are unaware of any other amendments to Section 2.2.4 between 2/27/2025 and 3/7/2025. | | | |
| 34. ORR has not explained why it can authenticate birth certificates but not foreign passports, consular identification cards, or other foreign issued identification documents. | Policy Guide § 2.2.4, Angelica-00000007; ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this explanation is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |

| 35. ORR did not acknowledge that the delays associated with authenticating foreign documents will persist even if the sponsor has U.S.-issued identification. | Policy Guide § 2.2.4, Angelica-00000005; ID Decision Memo, Angelica-0000080. | This is not a fact; this is argument. To the extent that a response is required, Defendants also deny the materiality of this consideration when even if a sponsor has U.S.-issued identification, that identification may not establish the parent-child relationship that the March 10, 2025, amendment referenced in Paragraph 33 was meant to address. | N/A |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. Defendants' response reinforces the accuracy of Plaintiffs' underlying fact—requiring U.S.-issued identification does not reduce delays associated with authenticating foreign documents because ORR still has to authenticate other foreign documents as part of the release process. To the extent Defendants suggest that the amendment referenced in Paragraph 33 was enacted on March 10, 2025, that is incorrect. The requirement that "Federal staff must exhaust all available avenues to verify the authenticity of birth certificates" was present in the 3/7/2025 version of ORR Policy Guide § 2.2.4. *See* Ex. 1-F at 4-5, de Gramont Decl., ECF 10-10 (current as of 3/26/25) (noting that this version of Section 2.2.4 was "Effective 03/07/2025").

| 36. ORR applied its new proof of identification policy to all pending sponsorship applications, including to completed applications ready for approval. | Amended Complaint ¶¶ 75, 102; Defs.' Answer ¶¶ 75, 102 Deisy S. Decl. ¶ 22, ECF 9-12; Declaration of Rosa M. ("Rosa M. Decl.") ¶¶ 4-5, ECF 9-13; Ex. 5, Declaration of J.E.D.M. ("J.E.D.M. Decl.") ¶ 6, ECF 10-16; Declaration of Sofia W. ("Sofia W. Decl.") ¶¶ 6-7, ECF 9-14; Ximena L. Decl. ¶¶ 6-8, ECF 9-15. | Concede in part. Defendants concede that ORR applied its new proof of identification policy to all pending sponsorship applications. No response is needed to the additional assertion that ORR applied this policy "including to complete applications ready for approval," because that is not a fact; that is argument and a | Amended Complaint ¶¶ 75, 102; Defs.' Answer ¶¶ 75, 102 Deisy S. Decl. ¶ 22, ECF 9-12; Declaration of Rosa M. ("Rosa M. Decl.") ¶¶ 4-5, ECF 9-13; Ex. 5, Declaration of J.E.D.M. ("J.E.D.M. Decl.") ¶ 6, ECF 10-16; Declaration of Sofia W. ("Sofia W. Decl.") ¶¶ 6-7, ECF 9-14; Ximena L. Decl. ¶¶ 6-8, ECF 9-15. |

| | | characterization of evidence. | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Whether ORR applied its new policy to completed applications is a factual issue and ORR has offered no evidence that it exempted completed applications ready for approval. The evidence that Defendants cite does not support Defendants' assertion. *See* Declaration of Rosa M. ¶ 4 ("In early March, the case worker told me that everything was complete and that we were only waiting for a medical document."); Declaration of Sofia W. ¶ 6 ("They told me that was pretty much the last thing I had to do for the application."). | | | |
| 37. Parents and other sponsors who provided ORR a copy of their foreign passport but lacked accompanying immigration documentation were told that their foreign passports were now insufficient under the new policy. | Amended Complaint ¶¶ 75, 102, 115-116; Defs.' Answer ¶¶ 75, 102, 115-116 Rosa M. Decl. ¶¶ 3, 5, ECF 9-13; Sofia W. Decl. ¶¶ 4, 7, ECF 9-14; Ximena L. Decl. ¶¶ 6-7, ECF 9-15; Deisy S. Decl. ¶¶ 11, 22, ECF 9-12; Declaration of Milagro G. ("Milagro G. Decl.") ¶¶ 5-6, ECF 56-5. | Concede. | Amended Complaint ¶¶ 75, 102, 115-116; Defs.' Answer ¶¶ 75, 102, 115-116 Rosa M. Decl. ¶¶ 3, 5, ECF 9-13; Sofia W. Decl. ¶¶ 4, 7, ECF 9-14; Ximena L. Decl. ¶¶ 6-7, ECF 9-15; Deisy S. Decl. ¶¶ 11, 22, ECF 9-12; Declaration of Milagro G. ("Milagro G. Decl.") ¶¶ 5-6, ECF 56-5. |
| 38. Even if a sponsor has qualifying identification and there are no safety concerns, ORR refuses to release a child unless *all* adults in the household and the alternate caregiver also have newly required identification. | ORR Policy Guide § 2.2.4, Angelica- 00000005; Amended Complaint ¶¶ 109-111; Defs.' Answer ¶¶ 109-111; Declaration of Steven N. ("Steven N. Decl.") ¶¶ 3, 6, 8-9, ECF 56-3. | This is not a fact; this is argument. Additionally, Defendants do not know what Plaintiffs mean by "safety concerns." | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact and do not identify any instances where ORR has released a child without first requiring all household members and alternate caregiver to present newly required identification. | | | |

| 39. ORR's decision memo regarding proof of identification does not address the burdens on family integrity of disqualifying non-parent close relative sponsors based on a lack of specific identification. | ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is argument. Defendants do not know what Plaintiffs mean by "family integrity" or "non-parent close relative sponsors." | N/A |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record.

Defendants' claim not to understand the meaning of "family integrity" or "non-parent close relative sponsors" is undermined by ORR's reference to "family unity" in the administrative record (ID Decision Memo, Angelica-0000080-85) and by the multiple references to the rights of close relative potential sponsors in ORR's own regulations. *See* 45 C.F.R. §§ 410.1205(b), (c), (d), (e) (timelines and notice rights release decisions for "parent or legal guardian or close relative" potential sponsors); 410.1206 (appeal procedures for "parent or legal guardian or close relative potential sponsors").

| 40. The new policy permits exceptions to the new ID requirements only for a parent or legal guardian sponsor, and even then, only if "supported by clear justification" and with approval of ORR Headquarters "on a case-by-case basis." | Policy Guide § 2.2.4, Angelica-00000005; ID Decision Memo, Angelica-0000083. | Concede. | Policy Guide § 2.2.4, Angelica-00000005; ID Decision Memo, Angelica-0000083. |
|---|---|---|---|
| 41. Even when a parent is the sponsor, the adult household members living with the parent and alternate caregiver are not eligible for an exception and still have to provide qualifying identification. | Amended Complaint ¶ 55, Defs.' Answer ¶ 55; Sofia W. Decl. ¶ 7, ECF 9-14; Rosa M. Decl. ¶ 6, ECF 9-13; Isabel D. Decl. ¶ 5, ECF 56-7. | Concede in part, deny in part. Defendants concede that this factual allegation is true. Defendants deny that this factual allegation is material when the parent being a sponsor does not necessarily mean that the other adults in the household are not likely to pose a danger to the safety to the child. | Amended Complaint ¶ 55, Defs.' Answer ¶ 55; Sofia W. Decl. ¶ 7, ECF 9-14; Rosa M. Decl. ¶ 6, ECF 9-13; Isabel D. Decl. ¶ 5, ECF 56-7. |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. The evidence Defendants cite to does not support their assertion that other household members could be dangerous; rather, it supports Plaintiffs' assertion that there is no exception available for other household members. | | | |
| 42. The ID decision memo notes, without rebutting, that stakeholders are "likely to claim ORR's restrictions place barriers on sponsors, in particular parents, to the principles of family unity." | ID Decision Memo, Angelica-0000084. | Concede in part. Defendants concede that ORR anticipated that possible claim. The allegation that the decision memo "acknowledges without rebutting" that claim is not a fact; it is argument. | ID Decision Memo, Angelica-0000084. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact nor cite to any rebuttal of this concern in the decision memo. | | | |
| 43. The ID decision memo includes no reasoning or explanation of the decision to require ORR Headquarters approval for every parent or legal guardian sponsor who lacks newly required identification. | ID Decision Memo, Angelica-0000080-85. | Concede in part, deny in part. Defendants concede that the decision is unexplained. Defendants deny Plaintiffs' implicit characterization of this fact as a restriction as opposed to a grant of flexibility. | ID Decision Memo, Angelica-0000080-83. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants concede this decision is unexplained. | | | |
| 44. The ID decision memo includes no consideration of the likely delays associated with requiring ORR Headquarters approval for every parent or legal guardian sponsor who lacks newly required identification. | ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is argument. | N/A |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this consideration is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 45. The ID decision memo includes no reasoning or explanation regarding the refusal to apply the potential exception for parents or legal guardians to the parent's household members. | ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 46. ORR gave no consideration to the family integrity burdens of forcing parents to choose between living with their close relatives or sponsoring their sons or blocking a sibling from sponsorship so long as he lives with his wife who lacks acceptable identification. | ID Decision Memo, Angelica-00000080-85; Isabel D. Decl. ¶ 5, ECF 56-7; Sofia W. Decl. ¶ 7, ECF 9-14; Steven N. Decl. ¶¶ 3, 8-9, ECF 56-3. | This is not a fact; this is legal argument and conclusion. Defendants do not know what Plaintiffs mean by "family integrity burdens" or "close relatives." | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record or cite to any contradictory evidence in the administrative record. *See* Plaintiffs' reply to ¶ 39 regarding Defendants supposed confusion about "family integrity burdens" and "close relatives." | | | |
| 47. There is no timeline or decision criteria for ORR's approval of ID exception requests. | Policy Guide § 2.2.4, Angelica-00000006; ID Decision Memo, Angelica-00000080-85. | Concede. | Policy Guide § 2.2.4, Angelica-00000006; ID Decision Memo, Angelica-00000080-85. |

| | | | |
|---|---|---|---|
| 48. Children and their parents can be left weeks waiting for approval of an ID exception with no information or updates. | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Defs.' Answer ¶ 125 (admitting that, as of August 29, 2025, ORR had not issued Isabel a decision regarding her exception request); Rosa M. Decl. ¶¶ 9-11, ECF 9-13; Ex.1, Supplemental Declaration of Cynthia Felix ¶¶ 15-17, September 11, 2025 ("Felix Suppl. Decl.") (3-year old child has been pending ID exception request to reunite with mother since 8/1/25). | This is not a fact; this appears to be argument based on vague general assertions. For instance, Defendants do not know what Plaintiffs mean by "no information." | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying material fact that approvals for ID exceptions can take at least three to five weeks. Defendants concede this fact. *See* ¶¶ 129, 197, *infra* (exception approvals took three and five weeks). Defendants do not point to any evidence that either children or their parents are provided information or updates during this time. | | | |
| 49. ORR is failing to adjudicate completed sponsor applications within required timelines: 10 or 14 days for parents, legal guardians, and close relatives, "absent an unexpected delay (such as a case that requires completion of a home study)." | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Amended Complaint ¶ 125; Defs.' Answer ¶ 125; Rosa M. Decl. ¶¶ 9-11, ECF 9-13; Amended Complaint ¶ 13; Defs.' Answer ¶ 13. | This is not a fact; this is legal argument. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| 50. ORR is taking over a month in some cases to decide applications from parents even after a home study and all other vetting requirements are complete and the case manager has submitted the case to ORR Headquarters. | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Ex. 1, Felix Suppl. Decl. ¶¶ 15-17; Amended Complaint ¶ 125; Defs.' Answer ¶ 125. | This is not a fact; this is legal argument and conclusion based on vague general assertions (e.g., "some cases"). | N/A |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence. | | | |
| 51. ORR care providers have told relatives that they cannot sponsor a child because of their lack of qualifying identification and to instead identify *any* adult they know with the right form of identification. | Deisy S. Decl. ¶ 25, ECF 9-12. | Defendants deny that this factual allegation, even if true, is material when Plaintiffs are making a programmatic challenge to the identity document and proof of income requirements rather than a challenge to the application of those requirements in specific individual cases. Moreover, no individuals Plaintiffs are alleging that they were injured as a result of such alleged advice. | Deisy S. Decl. ¶ 25, ECF 9-12. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or point to any contradictory evidence.  The evidence Defendants cite to undercuts Defendants' assertion that no individual Plaintiffs allege they were injured: "The case manager told me that because I could not get an ID that complies with the new requirements, I could not sponsor [redacted name] any more, even though everything had been ready for approval since February 2025." *See* Deisy S. Decl. ¶ 25. | | | |

| | | | |
|---|---|---|---|
| 52. Children have pursued release to non-family sponsors because their close family members are disqualified due to lack of qualifying identification. | Declaration of Yair G. ("Yair G. Decl.") ¶¶ 7, 10, ECF 56-4; Milagro G. Decl. ¶ 8, ECF 56-5; Amended Complaint ¶ 117; Defs.' Answer ¶ 117. | This is not a fact; this is argument based on vague general assertions. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence. | | | |
| 53. In contrast to agency memos related to fingerprinting and DNA testing, ORR's decision memo on proof of identification includes no analysis of the impact on children's length of custody associated with the new documentation requirement, much less a weighing of these likely delays against the safety benefits of the new documents. | ID Decision Memo, Angelica-0000080-85 Biometric Informational Memo, Angelica-00000048-71. Decision Memo re: Approval for the Office of Refugee Resettlement to publish Field Guidance 26, "Fingerprint Background Checks and Acceptable Supporting Documentation for a Family Reunification Application" ("Fingerprint Decision Memo"), Angelica-00000072-76; Decision Memo re: Field Guidance #27: DNA Testing Expansion, Angelica-000000093-98. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this contrast is inaccurate and that the analysis is not present in the administrative record, nor do they cite to any contradictory evidence in the administrative record. | | | |
| 54. ORR did not consider whether these additional biometric information collection measures such as fingerprinting, and DNA testing, could adequately address concerns about sponsor, household member, or alternate caregiver identity fraud. | ID Decision Memo, Angelica-0000080-85; *see also* Fingerprint Decision Memo, Angelica-00000072-76; DNA Decision Memo, Angelica-000000093-98. | This is not a fact; this is legal argument and conclusion. | N/A |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 55. In deciding to change its identification requirements, ORR did not consider the HHS OIG's 2019 report on the serious mental health impacts of prior policies that increased length of custody, including "higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation." | Index, ECF 47-1; ID Decision Memo, Angelica-0000080-85 Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09-18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, 12-13 (Sept. 2019), https://oig.hhs.gov/documents/evaluation/3153/OEI-09-18-00431-Complete%20Report.pdf. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record and that ORR did not consider this report, nor do Defendants cite to any contradictory evidence in the administrative record. | | | |
| 56. ORR's proof of identification decision memo did not consider the reliance interests of children and sponsors who began the reunification process and provided extensive sensitive personal information to ORR because they believed they were eligible to sponsor a child based on the requirements in the sponsorship application. | ID Decision Memo, Angelica-0000080-85 | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this consideration is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |

| 57. ORR did not consider the emotional distress inflicted on children who believed they would be reunited with family members only to learn that they may never be released at all. | ID Decision Memo, Angelica-0000080-85; Declaration of Leo B. ("Leo B. Decl.") ¶¶ 9-14, ECF 9-10; Declaration of Angelica S. ("Angelica S. Decl.") ¶¶ 8-9 ECF 9-7; Rosa M. Decl. ¶¶ 8, 10-11, ECF 9-13; Ximena L. Decl. ¶¶ 11-12, ECF 9-15; Yair. G. Decl. ¶ 8-9, ECF 56-4. | This is not a fact; this is legal argument and conclusion. Defendants also deny that this factual allegation is material because, unless Plaintiffs are using the term "emotional distress" as it is understood in tort law, Plaintiffs have not identified a injury that could give rise to standing. | *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016) (stating that an injury used to establish standing under the U.S. constitution be an injury to a legally protected interest). |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 58. ORR's decision memos on proof of identification did not consider the risk to children of abuse or mistreatment in ORR custody. | ID Decision Memo, Angelica-0000080-85. | This is not a fact; this is legal argument and conclusion. Defendants also deny that consideration of this risk is material. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this consideration is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 59. A 2024 Department of Justice lawsuit alleged persistent sexual abuse and harassment of unaccompanied children in facilities operated by Southwest Key Programs, the largest operator of ORR facilities at the time. | Complaint ¶ 1, *U.S. v. Southwest Key Programs, Inc.*, No. CV 24-00798 (W.D. Tex. July 17, 2024), ECF No. 1. | Concede in part, deny in part. Defendants concede that this 2024 lawsuit was file. Defendants deny that this allegation is relevant when none of the Individual Plaintiffs, the provisional class members, or the members of the putative class identified in ECF No. 56 are alleged to have been in those facilities at the time of the alleged sexual abuse. | *Compare* Complaint ¶ 1, *U.S. v. Southwest Key Programs, Inc.*, No. CV 24-00798 (W.D. Tex. July 17, 2024) (pertaining to alleged sexual abuse that occurred between 2015 to 2023) *with* ECF No. 9-12 at ¶ 4 (asserting that Plaintiff Angelica S. entered ORR custody in November 2024) and ECF No. 9-13 |

| | | | |
|---|---|---|---|
| | | | at ¶ 3 (asserting that Plaintiff Xavier L. entered ORR custody in January 2025). *See also* HHS, DOJ Move to End Sexual Abuse and Harassment of Unaccompanied Alien Children in Shelters Operated by Southwest Key Programs, https://www.hhs.gov/press-room/protecting-uacs-from-abuse.html (Mar. 12, 2025). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this lawsuit was filed, and ORR is aware of the allegations. | | | |

**Changes to Proof of Income Requirements**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 60. The OMB-approved sponsor application also asks sponsors to provide a narrative answer about their income and how they will financially support the child but does not require specific supporting documentation. | Amended Complaint ¶¶ 67, 167; Answer ¶¶ 67, 167 Current Published UAC Tools wrt Proof of Income, Angelica-00000309-310; Ex. 1-A, Family Reunification Application at 6, 8-10, de Gramont Decl, ECF 10-5. | Concede in part, deny in part. Defendants concede that "[t]he OMB-approved sponsor application also asks sponsors to provide a narrative answer about their income and how they will financially support the child." Defendants deny that the additional proposition that the application "does not require specific supporting documentation" is a fact because it is legal argument and conclusion. | Amended Complaint ¶¶ 67, 167; Answer ¶¶ 67, 167, Current Published UAC Tools wrt Proof of Income, Angelica-00000309-310; Ex. 1-A, Family Reunification Application at 6, 8-10, de Gramont Decl, ECF 10-5. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the material fact stated here or identify any requirement in the OMB-approved sponsor application for specific supporting documentation.<br><br>*See also* Answer ¶ 67 (Stating "Admit" to allegation that "As of May 6, 2025, the family reunification application available on ORR's website and provided to sponsors . . . does not mention specific requirements for proof of income"); Angelica-00000309-310 (no requirement of specific documents); Ex. 1-A (not specifying any required documentation). | | | |
| 61. On April 15, 2025, ORR again amended Policy Guide § 2.2.4 to require specific documentation of proof of income from all sponsors. | Income Decision Memo, Angelica- 00000111-116, 121<br><br>UAC Policy 2.2.4, 2.4.1 (Redline), Angelica-00000121. | Concede | Income Decision Memo, Angelica-00000111-116, 121; UAC Policy 2.2.4, 2.4.1 (Redline), Angelica-00000121. |

| | | | |
|---|---|---|---|
| 62. All sponsors must now provide either their previous year's tax return, 60 days of continuous paystubs, or a letter from their employer on company letterhead verifying their employment and salary information. | Income Decision Memo, Angelica-00000111-116, 121; UAC Policy 2.2.4, 2.4.1 (Redline), Angelica-00000121. | Concede | Income Decision Memo, Angelica-00000111-116, 121; UAC Policy 2.2.4, 2.4.1 (Redline), Angelica-00000121. |
| 63. Although the agency produced multiple memos discussing the importance of verifying sponsor financial stability, none explained why the agency chose these specific documents. | Index, ECF 47-1 Income Decision Memo, Angelica-00000111-116; Decision memo re: UAC Policy Guide, Manual of Procedures (MAP) Revisions - Proof of Income, Angelica-0000086-92 ("Kronk Income Memo") Decision memo re: Revisions to the Unaccompanied Children Bureau Policy Guide and Manual of Procedures (MAP) Revisions to require sponsors to provide proof of income, Angelica-00000107-110 ("March 18 Salazar Income Memo"). | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed.</u> Defendants do not challenge the underlying fact that no explanation is present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 64. The April 15, 2025, policy change related to proof of income differed from the requirements of the sponsor application. | Amended Complaint ¶ 67; Defs.' Answer ¶ 67. | This is not a fact; this is legal argument and conclusion. | N/A |

| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact. | | | |
|---|---|---|---|
| 65. The policy change related to proof of income applied to all applications, including applications that were already complete. | Amended Complaint ¶ 83; Defs.' Answer ¶ 83. Rosa M. Decl. ¶ 8, ECF 9-13; Ximena L. Decl. ¶ 10, ECF 9-15. | Concede in part, deny in part. Defendants concede that the proof of income requirements apply retroactively. Defendants deny Plaintiffs' characterization of at least of some of the affected applications as "already complete" because an application without the proper documents would not be complete. | Amended Complaint ¶ 83; Defs.' Answer ¶ 83. Rosa M. Decl. ¶ 8, ECF 9-13; Ximena L. Decl. ¶ 10, ECF 9-15. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>.  Defendants do not dispute that the proof of income requirements applied retroactively, irrespective of the stage of completion of the application at the time they were implemented. Defendants' assertion that a policy change can retroactively render applications incomplete is irrelevant to whether the applications at issue were previously considered complete according to the requirements in place before the new proof of income policy was implemented. | | | |
| 66. The April 15, 2025, revision of Policy Guide § 2.2.4 related to proof of income includes no exceptions for parents or legal guardians. | Policy Guide § 2.2.4, Angelica-00000121. | Concede | N/A |
| 67. The Policy Guide section related to proof of income includes no other mechanism to prove financial stability and ability to care for the child. | Amended Complaint ¶ 57; Defs.' Answer ¶ 57 Policy Guide § 2.2.4, Angelica-00000121. | This is not a fact; this is legal argument and conclusion. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that the relevant section does not provide alternatives. | | | |

| | | | |
|---|---|---|---|
| 68. ORR's decision memo related to proof of income acknowledges, without rebutting, the likely argument "that the majority of potential sponsors engaging with UACB do not have work authorization and may not be able to provide documentation required under this update to ORR's sub-regulatory guidance." | Income Decision Memo, Angelica-00000115. | Concede in part, deny in part. Defendants concede that the quoted language appears in the ORR decision memo. Defendants deny that the allegation that the decision memo "acknowledges, without rebutting" the quoted language is a fact because that proposition is legal argument and conclusion. | Income Decision Memo, Angelica-00000115. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that any further analysis of the decision memo acknowledgment conceded by Defendants is absent from the administrative record. Nor do Defendants point to any evidence in the administrative record supporting an assertion that the majority of sponsors *do* have work authorization or *would* be able to provide the documentation required under this update.

| | | | |
|---|---|---|---|
| 69. Despite acknowledging that potential sponsors may not have these proof of income documents and "may not be able to complete their sponsorship application or may go to more extreme lengths to fake documents in order to sponsor children," ORR did not consider whether alternative more accessible documents could equally serve its purposes—such as bank statements or a letter from a small employer who lacks company letterhead. | Income Decision Memo, Angelica-00000111-115; Rosa M. Decl. ¶ 8, ECF 9- 13. | Concede in part, deny in part. Defendants concede that the quoted language appears in the ORR decision memo. Defendants deny that the allegation that "ORR did not consider whether alternative more accessible documents could equally serve its purposes—such as bank statements or a letter from a small employer who lacks company letterhead" is a fact because the proposition is legal argument and conclusion. | Income Decision Memo, Angelica-00000111-115; Rosa M. Decl. ¶ 8, ECF 9- 13. |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that these considerations are not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 70. ORR also failed to consider that in some cases another individual—such as the sponsor's partner—may contribute financial support to the child. | Income Decision Memo, Angelica-00000111-115; Ximena L. Decl. ¶ 10, ECF 9-15. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is not present in the administrative record nor cite to any contradictory evidence in the administrative record. | | | |
| 71. ORR did not explain why ORR's existing tools—which included inquiries about a sponsor's sources of financial support, employment, and income— were insufficient to confirm financial stability, beyond vague references to minimizing variability in decision making. | Income Decision Memo, Angelica-00000112-115. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this explanation is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |

30

| | | | |
|---|---|---|---|
| 72. ORR's proof of income decision memo includes a section on relevant legal authority but cites only the TVPRA and Foundational Rule provisions related to sponsor vetting and does not mention ORR's corresponding statutory duties and regulations to release children to the least restrictive setting without unnecessary delay. | Income Decision Memo, Angelica-00000112-115. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that these citations are absent from the decision memo nor cite to any contradictory evidence in the administrative record. | | | |
| 73. ORR's decision memo regarding its new proof of income policy notes that the new policy "could result in longer lengths of stay for children in ORR custody, which could be a litigation risk to ORR," but the administrative record related to proof of income does not examine the expected impacts on length of stay or weigh them against the safety benefits of the new policy. | Income Decision Memo, Angelica- 00000115; *see also* Index, ECF 47-1; March 18 Salazar Income Memo, Angelica- 00000107; Kronk Income Memo, Angelica-0000086-92. | Concede in part, deny in part. Defendants concede that the quoted language appears in the ORR decision memo. Defendants deny that the allegation that "the administrative record related to proof of income does not examine the expected impacts on length of stay or weigh them against the safety benefits of the new policy" is a fact because the proposition is legal argument and conclusion. | Income Decision Memo, Angelica-00000115; *see also* Index, ECF 47-1; March 18 Salazar Income Memo, Angelica- 00000107; Kronk Income Memo, Angelica-0000086-92. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that an examination of the impacts on length of stay or the asserted analysis is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |

| | | | |
|---|---|---|---|
| 74. ORR did not consider the mental health and other impacts on detained children of the expected increase in detention time caused by this new proof of income policy. | Income Decision Memo, Angelica- 00000111-115. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this consideration is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |
| 75. ORR did not weigh the expected benefits of its proof of income policies against the impacts on family integrity, despite acknowledging that the new policy would could [sic] lead to a "dramatic increase" in the number of denials of close relative sponsors (Category 1 and Category 2). | Kronk Income Memo, Angelica-00000090 Income Decision Memo, Angelica-0000111-115. | Concede in part, deny in part. Defendants concede that the quoted phrase "dramatic increase" appears in the Kronk Income Memo. Defendants deny that the factual allegation in this paragraph is a fact; it is legal conclusion and argument. | Kronk Income Memo, Angelica-00000090 ("With the roll out of proof of income requirements, UACB could see a dramatic increase in the number of CAT 1 and CAT 2 cases that must be submitted through the formal denial process mandated under the permanent injunction in the *Lucas R.* case"). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this analysis and reasoning is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |

| | | | |
|---|---|---|---|
| 76. The proof of income decision memo notes that stricter financial screening is typically required for non-related foster parents and recognizes that denying a parent or legal guardian "solely based on financial hardship . . . does not align with standard child welfare practices in the United States." | Income Decision Memo, Angelica-00000111-115. | Concede in part, deny in part. Defendants concede that the quoted language appears in the Income Decision Memo cited in Paragraph 76. Defendants deny the allegation in Paragraph 76 that the Income Decision Memo "recognizes" the proposition in the quoted language because that allegation is legal argument based on opinion. | Income Decision Memo, Angelica-00000111-115. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge this underlying fact or cite to any contradictory evidence in the administrative record. | | | |
| 77. The proof of income decision memo notes that "a carve out for parents/legal guardians [] ensures a balanced approach, protecting parental rights while maintaining child safety protections against trafficking and labor exploitation." | Income Decision Memo, Angelica-00000112. | Concede in part. Defendants concede that the quoted language appears in the Income Decision Memo cited in Paragraph 77. To the extent that Plaintiffs attempt to characterize the proposition in the quoted language as a fact, Defendants deny that the proposition is a fact; it is a legal argument based on opinion. | Income Decision Memo, Angelica-00000112. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this is present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |

| | | | |
|---|---|---|---|
| 78. ORR adopted the proof of income requirements without any exception for parents and legal guardians and did not explain why it rejected a carve out for parents and legal guardians. | Income Decision Memo, Angelica- 00000111-115. | This is not a fact; this is argument. | N/A |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that there is no exception for parents and legal guardians in the proof of income policy or dispute the fact that an explanation for this omission is not present in the administrative record. Defendants do not cite to any contradictory evidence in the administrative record.

| | | | |
|---|---|---|---|
| 79. The administrative record related to proof of income does not include consideration of the HHS OIG's 2019 report on the serious mental health impacts of prior policies that increased length of custody, including "higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation." | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18, Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086- 92 Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09-18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody* 13 (Sept. 2019), https://oig.hhs.gov/documents/ evaluation/3153/OEI-09-18- 00431- Complete%20Report.pdf. | Concede in part, deny in part. Defendants concede that the quoted language appears in the 2019 HHS OIG report cited in this paragraph. Defendants deny the rest of the allegations in this paragraph is a fact because it is legal argument and conclusion. | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18, Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086- 92 Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09-18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody* 13 (Sept. 2019), https://oig.hhs.gov/documents/evalua tion/3153/OEI-09-18-00431- Complete%20Report.pdf. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that this report is not present in the administrative record or cite to any contradictory evidence in the administrative record.

| | | | |
|---|---|---|---|
| 80. The administrative record related to proof of income does not include consideration of the reliance interests of children and sponsors who began the reunification process and provided extensive sensitive personal information to ORR because they believed they were eligible to sponsor a child based on the requirements in the sponsorship application. | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18 Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086- 92. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that reliance interests were not considered or cite to any contradictory evidence in the administrative record. | | | |
| 81. The administrative record related to proof of income consideration of the risks to children of abuse or mistreatment in ORR custody. | Index, ECF 47-1; Income Decision Memo, Angelica-00000111-115; March 18; Salazar Income Memo, Angelica-00000107-110; Kronk Income Memo, Angelica-0000086- 92. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply**: <u>Remains undisputed.</u>  Defendants do not challenge the underlying fact that this is not present in the administrative record or cite to any contradictory evidence in the administrative record. | | | |

**Prolonged Detention**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 82. Children are routinely remaining in custody far longer because of ORR's new identification and proof of income requirements. | Declaration of Cynthia Felix ¶¶ 7-8, ECF 10-15 ("Felix Decl."); Ex. 1, Felix Suppl. Decl. ¶¶ 14-15, 20; Yair G. Decl. ¶¶ 7-10, ECF 56-4; Isabel D. Decl. ¶¶ 2, 4-6, 8, 10, ECF 56-7; Steven N. Decl. ¶¶ 6-9, ECF 56- 3. | This is not a fact; this is legal argument and conclusion. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record. *See also*, ¶¶ 84, *infra*. | | | |
| 83. ORR shelters are more restrictive than living in the community. | Leo B. Decl. ¶¶ 11-13, 15-16, ECF 9-10 (describing restrictive conditions in shelter); Declaration of Liam W. ¶ 9, ECF 9-9 ("Liam W. Decl."); Angelica S. Decl. ¶ 13, ECF 9-7; Ximena L. Decl. ¶¶ 11-12, ECF 9-15; Yair G. Decl.¶¶ 9-12, ECF 56-4;Declaration of David D. ("David D. Decl.") ¶¶ 6-9, ECF 56-6. | This is not a fact; this is legal argument and conclusion that is based on an absolute. Defendants also deny that this factual allegation is material when it misconstrues the relevant standard. The relevant standard for children in HHS custody is the "least restrictive setting *that is in the best interest of the child*." | *See* 8 U.S.C. § 1232(c)(2)(A) ("Subject to section 279(b)(2) of title 6, an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting *that is in the best interest of the child* . . . ") (emphasis added). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any evidence to contradict Plaintiffs' evidence that ORR shelters are more restrictive than release to the community. | | | |

| | | | |
|---|---|---|---|
| 84. The average length of custody for children discharged from ORR custody has climbed precipitously from 37 days in January 2025 to 49 days in February 2025 to 112 days in March 2025 to a peak of 217 days in April before falling slightly to 182 days in August 2025. | Ex. 1-H, ORR Fact Sheets and Data, Average Monthly Data as of April 7, 2025 at 2, de Gramont Decl., ECF 10-12; Fact Sheets and Data, Office of Refugee Resettlement, Average Monthly Data (current as of Sept. 11 2025), https://perma.cc/2X2G-YT3X. | Concede in part. Defendants concede the figures cited in Paragraph 84. Defendants deny that the characterizations of these figures are fact. | Ex. 1-H, ORR Fact Sheets and Data, Average Monthly Data as of April 7, 2025 at 2, de Gramont Decl., ECF 10-12; Fact Sheets and Data, Office of Refugee Resettlement, Average Monthly Data (current as of Sept. 11, 2025), https://perma.cc/2X2G-YT3X. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to contradictory evidence in the record. | | | |
| 85. The average length of custody for children who remain in ORR custody was 179 days in August 2025. | Fact Sheets and Data, Office of Refugee Resettlement, Average Monthly Data (current as of Sept. 11, 2025), https://perma.cc/2X2G-YT3X. | Concede | Fact Sheets and Data, Office of Refugee Resettlement, Average Monthly Data (current as of Sept. 11 2025), https://perma.cc/2X2G-YT3X. |
| 86. Between fiscal year 2015 and fiscal year 2024, the average length of ORR custody ranged between 27 days and 69 days. | Fact Sheets and Data, Office of Refugee Resettlement, Average Length of Care (current as of Aug. 18, 2025), https://perma.cc/8PBB-8MY4; Defs.' Answer ¶ 58. | Concede | Fact Sheets and Data, Office of Refugee Resettlement, Average Length of Care (current as of Aug. 18, 2025), https://perma.cc/8PBB-8MY4; Defs.' Answer ¶ 58. |

**Proposed Changes to Sponsor Application Packet**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 87. On April 25, 2025, ORR published a notice of information collection under the Paperwork Reduction Act to revise the Family Reunification Application (to be renamed the "Sponsor Application"), with a 60-day comment period. | Defs.' Answer ¶ 70; Proposed Information Collection Activity: Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 17438 (Apr. 25, 2025). | Concede | Defs.' Answer ¶ 70; Proposed Information Collection Activity: Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 17438 (Apr. 25, 2025). |
| 88. On August 14, 2025, ORR published a notice of Submission for OMB Review of the Sponsor Application Packet, with a comment period ending on September 15, 2025. | Defs.' Answer ¶ 71; Submission for Office of Management and Budget Review; Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 39194 (Aug. 14, 2025). | Concede | Defs.' Answer ¶ 71; Submission for Office of Management and Budget Review; Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 39194 (Aug. 14, 2025). |
| 89. The proposed changes to the sponsorship application include changes to the required "Supporting Documents" related to proof of identification and proof of income. | Defs.' Answer ¶ 71; Submission for Office of Management and Budget Review; Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 39194 (Aug. 14, 2025); Decision memo re: UAC Policy Guide, Manual of Procedures (MAP) Revisions - Proof of Income, Angelica- | Concede | Defs.' Answer ¶ 71; Submission for Office of Management and Budget Review; Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 39194 (Aug. 14, 2025); Decision memo re: UAC Policy Guide, Manual of Procedures (MAP) Revisions - Proof of Income, Angelica-00000086-92; Income Decision Memo, Angelica-00000114, 124- 125. |

| | 00000086-92; Income Decision Memo, Angelica-00000114, 124- 125. | | |
|---|---|---|---|
| 90. ORR has not yet obtained OMB approval for its changes to the proof of identification and proof of income information collection requirements. | Defs.' Answer ¶¶ 67, 167. | Concede | Defs.' Answer ¶¶ 67, 167. |

**Prior Information Sharing with DHS**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 91. In 2018, ORR's expanded fingerprinting requirements and memorandum of agreement with DHS to share information obtained through the sponsorship vetting process directly with U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP"), which they planned to use for enforcement purposes, led to a reduction in sponsors willing to come forward to sponsor children. | U.S. Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09- 18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, 4-5, 13 (2019) ("2019 HHS OIG Report"); Dorn-Lopez Decl. ¶ 5, ECF 10-13; Smyers Decl. ¶¶ 7, 17, ECF 10-14. | Concede in part, deny in part. Defendants concede that ORR took the actions described in Paragraph 91. Defendants deny that the proposition that these actions "led to a reduction in sponsors willing to come forward to sponsor children" is a fact because it is legal argument based on vague speculation. | U.S. Dep't of Health & Hum. Servs., Office of the Inspector Gen., Report No. OEI-09- 18-00431, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, 4-5, 13 (2019) ("2019 HHS OIG Report"); Dorn-Lopez Decl. ¶ 5, ECF 10-13; Smyers Decl. ¶¶ 7, 17, ECF 10-14. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the material facts or cite to any contradictory evidence.

The evidence Defendants cite does not support Defendants' assertions. The 2019 HHS OIG Report states: "Along with this change, ORR also began sharing with Immigration and Customs Enforcement (ICE) the identifying information and fingerprints of all potential sponsors and adult household members. Until February 2019, this information could be used for immigration enforcement purposes, which also may have discouraged potential sponsors from coming forward." Both declarations discuss the chilling effect of information sharing on sponsors' willingness to come forward.

| | | | |
|---|---|---|---|
| 92. In 2018, ORR's expanded fingerprinting requirements and memorandum of agreement with DHS to share information obtained through the sponsorship vetting process directly ICE and CBP, which they planned to use for enforcement purposes, led to dramatically increased lengths of stays in detention. | 2019 HHS OIG Report at 13; Dorn-Lopez Decl. ¶ 5, ECF 10-13; Smyers Decl. ¶ 7, ECF 10-14. | Concede in part, deny in part. Defendants concede that ORR took the actions described in Paragraph 92. Defendants deny that the proposition that those actions "led to dramatically increased lengths of stays in detention" is a fact because it is a legal argument that: (1) is trying to equate correlation with causation; (2) potentially making a *post hoc* fallacy; and, (3) uses a vague term like "dramatically" to present a characterization of a fact rather than a fact itself. | 2019 HHS OIG Report at 13; Dorn-Lopez Decl. ¶ 5, ECF 10-13; Smyers Decl. ¶ 7, ECF 10-14. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the material facts or cite to any contradictory evidence.

Defendants' citation to the 2019 HHS OIG Report does not support Defendants' assertion. The cited page of the 2019 HHS OIG Report expressly states, "Facilities attributed longer stays for children to ORR's new sponsor screening requirements … As shown in Exhibit 3, children's average length of stay in ORR custody increased markedly after ORR implemented the new fingerprinting policy in June 2018."

| 93. In 2018, ORR's expanded fingerprinting requirements and memorandum of agreement with DHS to share information obtained through the sponsorship vetting process directly with ICE and CBP, which they planned to use for enforcement purposes, led to serious harms to children's mental health and wellbeing. | 2019 HHS OIG Report at 12-13 (noting that "longer stays resulted in higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation" and "even children who come into care with good coping skills become disillusioned after a lengthy stay"); Dorn-Lopez Decl. ¶ 6, ECF 10-13; Smyers Decl. ¶¶ 7, 17, ECF 10-14. | Concede in part, deny in part. Defendants concede that ORR took the actions described in Paragraph 93. Defendants deny the proposition that these actions "led to serious harms to children's mental health and wellbeing" because that is not a fact; that is legal argument. | 2019 HHS OIG Report at 12-13 (noting that "longer stays resulted in higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation" and "even children who come into care with good coping skills become disillusioned after a lengthy stay"); Dorn-Lopez Decl. ¶ 6, ECF 10-13; Smyers Decl. ¶¶ 7, 17, ECF 10-14. |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 94. In 2018, ICE began to arrest some sponsors who came forward to sponsor unaccompanied children. | William A. Kandel, Cong. Rsch. Serv., R 43599 *Unaccompanied Alien Children: An Overview* 23-24 (2024), https://www.congress.gov/crsproduct/ R43599. | Concede in part, deny in part. Defendants concede that ICE arrested some prospective sponsors in 2018. Defendants deny that this fact is material because the relevance is unclear due to the lack of detail in this factual allegation pertaining to any potential causal relationship between an individual "c[oming] forward to sponsor" a child and the alleged arrest. | William A. Kandel, Cong. Rsch. Serv., R 43599 *Unaccompanied Alien Children: An Overview* 23-24 (2024), https://www.congress.gov/crsproduct/ R43599. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge this fact. | | | |

| | | | |
|---|---|---|---|
| 95. ORR itself acknowledged that information-sharing was leading to unnecessary delays in release without producing any additional information that helped make children safer and as result, in 2019, it suspended reconciliation of sponsor background checks with ICE. | 2019 HHS OIG Report at 13; Oversight Hearing: Mental Health Needs of Children in HHS Custody, Subcomm. on Lab., Health & Hum. Servs., Educ., & Related Agencies of the H. Comm. On Appropriations, 116th Cong. at 1:29:00-1:32:00 (2019), https://www.congress.gov/committees/video/houseappropriations/hsap00/MLrcPTTqNmA (testimony of Jonathan Hayes, Director, Office of Refugee Resettlement). | Concede in part, deny in part. Defendants concede that it suspended the reconciliation of sponsor background checks to eliminate redundant checks and that the reconciliation process had increased UACs' time in HHS custody. Defendants deny Plaintiffs' characterization of the evidence cited in this paragraph such as calling the delays "unnecessary" because such characterizations are argument, not fact. | 2019 HHS OIG Report at 13; Oversight Hearing: Mental Health Needs of Children in HHS Custody, Subcomm. on Lab., Health & Hum. Servs., Educ., & Related Agencies of the H. Comm. on Appropriations, 116th Cong. at 1:30:40- 1:32:00 (2019), https://www.congress.gov/committees/video/houseappropriations/hsap00/MLrcPTTqNmA (testimony of Jonathan Hayes, Director, Office of Refugee Resettlement). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence. | | | |
| 96. Appropriations restrictions on DHS's use of information obtained from HHS regarding unaccompanied children and their potential sponsors were put in place beginning in fiscal year 2020 and have been extended each year through fiscal year 2025. | Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. D, § 216(a), 133 Stat. 2317, 2513 (2019); Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, Div. A, §§ 1104-05, 139 Stat. 9, 12 (2025). | Defendants deny that this allegation is material when it appears to be irrelevant. Plaintiffs appear to be conflating alleged prohibitions against DHS' use of information disclosed to it by HHS with HHS' ability to share that information. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge this fact. | | | |

| | | | |
|---|---|---|---|
| 97. With narrow exceptions for specific crimes, Congress has prohibited DHS from using information shared by HHS "to place in detention, remove, refer for a decision whether to initiate removal proceedings, or initiate removal proceedings against a sponsor, potential sponsor, or member of a household of a sponsor or potential sponsor of an unaccompanied alien child (as defined in section 462(g) of the Homeland Security Act of 2002 (6 U.S.C. 279(g))." | Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. D, § 216(a), 133 Stat. 2317, 2513 (2019). | Defendants deny that this allegation is material when it appears to be irrelevant. Plaintiffs appear to be conflating alleged prohibitions against DHS' use of information disclosed to it by HHS with HHS' ability to share that information. | Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. D, § 216(a)-(b), 133 Stat. 2317, 2513 (2019). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge this fact. | | | |

| | | | |
|---|---|---|---|
| 98. ORR acknowledged in internal memorandum regarding its sponsor vetting process that Congressional riders restrict information-sharing. | Harper Memo, Angelica-00000256. | Concede in part, deny in part. Defendants concede that ORR discussed Congressional appropriations measures impacting information sharing between HHS and DHS. Defendants deny the proposition that ORR "acknowledged in internal memorandum regarding its sponsor vetting process that Congressional riders restrict information-sharing" because that proposition is not a fact, but a characterization of a fact. Furthermore, Plaintiffs misquote the quoted language. | Harper Memo, Angelica-00000256 ("Oppose the continuation of the Appropriations language that restricts information sharing between ICE and ORR *and limits enforcement of federal law*") (emphasis added)). |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the fact that these Congressional riders appear in the administrative record.

| | | | |
|---|---|---|---|
| 99. Consistent with Congressional restrictions, the authorization for release of information included in the OMB-approved sponsor application packet stated: "I also understand that DHS cannot use my information for immigration enforcement actions, including placement in detention, removal, referral for a decision whether to initiate removal proceedings, | Ex. 1-B, ORR Authorization for Release of Information at 1, de Gramont Decl., ECF 10-6 Amended Complaint ¶ 36; Defs.' Answer ¶ 36. | Concede in part, deny in part. Defendants concede that the quoted language in Paragraph 99 appears in the sponsor application packet contained in EFC No. 10-6, Ex. 1-B. Defendants deny that the proposition that the quoted language is "consistent with Congressional restrictions" is a fact because that assertion is legal argument. | Ex. 1-B, ORR Authorization for Release of Information at 1, de Gramont Decl., ECF 10-6 Amended Complaint ¶ 36; Defs.' Answer ¶ 36. |

| | | | |
|---|---|---|---|
| or initiation of removal proceedings, unless I have been convicted of a serious felony, am pending charges for a serious felony, or I have been directly involved in or associated with any organization involved in human trafficking." | | | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying material fact that this language is contained in the OMB-approved version of the sponsor application. | | | |
| 100. ORR has proposed to remove language from the sponsorship application regarding restrictions on DHS's use of information for removal proceedings, but ORR has not yet received OMB approval for this change. | Defs.' Answer ¶ 70; Proposed Information Collection Activity: Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 17438 (Apr. 25, 2025). | Concede | Defs.' Answer ¶ 70; Proposed Information Collection Activity: Unaccompanied Alien Children Sponsor Application Packet (OMB # 0970-0278), 90 Fed. Reg. 17438 (Apr. 25, 2025). |

**Angelica S.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 101. Angelica S. was born in 2007 and is 17 years old. | Amended Complaint ¶ 12; Defs.' Answer ¶ 12; Angelica S. Decl. ¶ 2, ECF 9-7. | Concede | Amended Complaint ¶ 12; Defs.' Answer ¶ 12; Angelica S. Decl. ¶ 2, ECF 9-7. |
| 102. Angelica S. entered ORR custody in November 2024. | Amended Complaint ¶ 73; Defs.' Answer ¶ 73. | Concede | Amended Complaint ¶ 73; Defs.' Answer ¶ 73. |

| | | | |
|---|---|---|---|
| 103. Angelica S. was pregnant when she entered custody and due to give birth in February 2025. | Defs.' Answer ¶ 74; Angelica S. Decl. ¶ 4, ECF 9-7. | Concede | Defs.' Answer ¶ 74; Angelica S. Decl. ¶ 4, ECF 9-7. |
| 104. Angelica S. is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 12; Defs.' Answer ¶ 12. | Concede in part, deny in part. Defendants concede that Angelica S. was an unaccompanied alien child ("UAC") when she was in ORR custody.  Defendants deny that the proposition that she is and was a UAC "at all relevant times" is a fact because that proposition is a legal argument and conclusion. | Amended Complaint ¶ 12; Defs.' Answer ¶ 12. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants admitted this fact in their Answer.  *See* Defs.' Answer ¶ 12. | | | |

| 105. Prior to March 7, 2025, Angelica S.'s sister Deisy S. completed a sponsorship application, provided ORR with a copy of her foreign passport as proof of identification, and she and her household members completed fingerprint-based background checks and two positive home studies. | Deisy S. Decl. ¶¶ 11-16, ECF 9-12 | Concede in part, deny in part. Defendants concede the allegations in this paragraph except the allegation that Deisy S. had "two positive home studies." Defendants deny this allegation to the extent that it is misleading. The first positive home study came a week before Deisy S. disclosed to ORR that, on the day of the first positive home study determination, the adult caregiver living in Deisy S.'s home was arrested for allegedly sexually abusing a child. The second positive home study came after Deisy S. had to certified that the alleged sexual abuser was no longer living in her residence. | Deisy S. Decl. ¶¶ 11-16, ECF 9-12. ECF No. 21-1, Toby Biswas Decl. ¶ 22 ("Although her potential sponsor received a positive home study determination, on January 23, 2025, Angelica was no longer cleared to travel due to her pregnancy. On January 30, 2025, her potential sponsor disclosed that Angelica's adult caregiver was arrested on January 23, 2025, for sexual abuse toward an eight-year-old child......... On February 19, 2025, ORR requested a home study addendum to confirm that the adult caregiver is no longer living in the home"). |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to contradictory evidence in the record. | | | |

| | | | |
|---|---|---|---|
| 106. Angelica S.'s case worker assured Deisy S. that the information she provided in her sponsorship application would not be used for immigration enforcement. | Deisy S. Decl. ¶ 10, ECF 9-12. | Defendants deny that this factual allegation is material because it is irrelevant. To the extent that this factual allegation may relate to the Interim Final Rule, Angelica S. does not claim to have been harmed by the Interim Final Rule due to Deisy S. having been unwilling to disclose her sponsorship-related personal information to HHS. Moreover, Plaintiffs do not allege that Angelica S.'s case worker gave similar assurances to the other individuals whom Deisy S. viewed as prospective sponsors. | Deisy S. Decl. ¶ 10, ECF 9-12. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact. | | | |
| 107. As of March 6, 2025, Angelica S. was waiting only on vaccines for her newborn baby for her case to be submitted for release approval. | Angelica S. Decl. ¶ 8, ECF 9-7; Deisy S. Decl. ¶¶ 22-25, ECF 9-12. | Concede | Angelica S. Decl. ¶ 8, ECF 9-7; Deisy S. Decl. ¶¶ 22-25, ECF 9-12. |
| 108. ORR refused to release Angelica to her sister, Deisy, because Deisy was unable to provide the documents required by the updated ORR Policy Guide Section 2.2.4. | Defs.' Answer ¶ 12; Deisy S. Decl. ¶¶ 22- 25, ECF 9-12. | Concede | Defs.' Answer ¶ 12; Deisy S. Decl. ¶¶ 22- 25, ECF 9-12. |

| | | | |
|---|---|---|---|
| 109. Deisy S. used her foreign passport as a form of identification and was disqualified solely based on the lack of documented work authorization accompanying her foreign passport. | Defs.' Answer ¶ 75; Deisy S. Decl. ¶¶ 11, 22, ECF 9-12. | Concede in part, deny in part. Defendants concede that Deisy S. used her foreign passport as a form of identification and that she failed to provide qualifying identification. Defendants deny that the proposition that Deisy S. was "disqualified solely based on the lack of documented work authorization accompanying her foreign passport" is a fact because it is legal argument and conclusion. | Defs.' Answer ¶ 75; Deisy S. Decl. ¶¶ 11, 22, ECF 9-12. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 110. Deisy S. was unable to obtain other qualifying identification because of her immigration status. | Deisy S. Decl. ¶ 22, ECF 9-12; Tex. Transp. Code § 521.142(a) (noting that applicants for Texas driver licenses must provide proof of lawful immigration status). | This is not a fact; this is legal argument and conclusion. | |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| 111. Angelica S.'s case manager told Deisy to find any adult she knew with the correct documentation to sponsor Angelica. | Deisy S. Decl. ¶ 25, ECF 9-12. | Defendants deny that this factual allegation is material. Plaintiffs are allegedly making a programmatic challenge to the identity document and income requirements and the Interim Final Rule. To the extent that their individual circumstances are relevant, they are only relevant to explain how the prospective sponsors allegedly could not successfully sponsor Plaintiffs. Individualized disputes with case managers thus are irrelevant to the general application of the challenged policies. | Deisy S. Decl. ¶ 25, ECF 9-12. |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to contradictory evidence in the record. | | | |
| 112. Deisy S. was unable to find an alternative sponsor for Angelica because potential sponsors were afraid that ORR would | Deisy S. Decl. ¶¶ 28-29, ECF 9-12. | Defendants deny this factual allegation, even if true, is material at least in regard to the Interim Final Rule because it is unclear when Deisy S. | ECF No. 9-12, Deisy S. Decl., at ¶ 28. ECF No. 35, Mem. Op., at 9-10 (noting that, according to Deisy S., Angelica's harms allegedly |

| share their information with immigration enforcement authorities. | | allegedly asked these individuals such that a reasonable fact finder could attribute their alleged fear to the Interim Final Rule. As the Court noted in its memorandum opinion on Plaintiffs' motion for a preliminary injunction, the problem of Angelica and the other four original named Plaintiffs is that their harms, as alleged, began before the IFR. Thus, without additional information, one cannot reasonably infer as a matter of chronology a causal connection between the IFR and Deisy S.'s failure to find an alternative sponsor. | started in "early March," but that the IFR was promulgated on March 25, 2025). |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to contradictory evidence in the record. | | | |
| 113. As of the date of the initial Complaint on May 8, 2025, Angelica S. was in ORR custody. | Amended Complaint ¶ 12; Defs.' Answer ¶ 12. | Concede | Amended Complaint ¶ 12; Defs.' Answer ¶ 12. |
| 114. After the Court's June 9, 2025, preliminary injunction, ORR reopened Deisy S.'s application. | Amended Complaint ¶ 77; Defs.' Answer ¶ 77. | Concede | Amended Complaint ¶ 77; Defs.' Answer ¶ 77. |
| 115. Angelica S. and her baby were released to Deisy S. in August 2025. | Amended Complaint ¶ 77; Defs.' Answer ¶ 77. | Concede | Amended Complaint ¶ 77; Defs.' Answer ¶ 77. |

**Eduardo M.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 116. Plaintiff Eduardo M. and his 7-year-old brother entered ORR custody in January 2025. | Amended Complaint ¶ 79; Defs.' Answer ¶ 79. | Concede | Amended Complaint ¶ 79; Defs.' Answer ¶ 79. |
| 117. Eduardo was born in 2010 and is 14 years old. | Amended Complaint ¶ 13; Defs.' Answer ¶ 13; Declaration of Eduardo M. ("Eduardo M. Decl.") ¶ 2, ECF 9-8. | Concede | Amended Complaint ¶ 13; Defs.' Answer ¶ 13; Declaration of Eduardo M. ("Eduardo M. Decl.") ¶ 2, ECF 9-8. |
| 118. Eduardo is, and at all relevant times, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 13; Defs.' Answer ¶ 13. | Concede in part, deny in part. Defendants concede that Eduardo was a UAC when he was in ORR custody. Defendants deny that the proposition that he was and is a UAC "at all relevant times" is a fact because that proposition is a legal argument and conclusion. | Amended Complaint ¶ 13; Defs.' Answer ¶ 13. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the material facts that Eduardo was a UAC when he was in ORR custody, or that he was in custody at the time of filing his complaint. *See* ¶ 119, *infra*. | | | |
| 119. Eduardo and his brother were in ORR custody at a transitional foster care program in California at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 13; Defs.' Answer ¶ 13. | Concede | Amended Complaint ¶ 13; Defs.' Answer ¶ 13. |

| | | | |
|---|---|---|---|
| 120. Prior to March 7, 2025, Eduardo's mother Rosa M. completed a sponsorship application, provided ORR with a copy of her foreign passport as proof of identification, and completed a fingerprint-based background check. | Rosa M. Decl. ¶ 3, ECF 9-13. | Concede | Rosa M. Decl. ¶ 3, ECF 9-13. |
| 121. In early March 2025, Eduardo and his brother were waiting only on medical clearance for their case to be submitted for release. | Rosa M. Decl. ¶ 4, ECF 9-13. | Concede | Rosa M. Decl. ¶ 4, ECF 9-13. |
| 122. After ORR amended Policy Guide 2.2.4. on March 7, 2025, Rosa M. was informed that her foreign passport was no longer acceptable form of identification. | Rosa M. Decl. ¶ 5, ECF 9-13. | Concede | Rosa M. Decl. ¶ 5, ECF 9-13. |
| 123. Rosa M. lives in California. | Rosa M. Decl. ¶ 2, ECF 9-13. | Concede | Rosa M. Decl. ¶ 2, ECF 9-13. |

| | | | |
|---|---|---|---|
| 124. California requires proof of lawful presence to obtain a state identification card but does not require proof of lawful presence to obtain a driver's license. | *Compare* AB 60 Driver's Licenses, Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driverlicenses- identification-cards/assembly-billab-60-driver-licenses/ (last visited Sept. 10, 2025) ("AB 60 driver's licenses are for individuals who are unable to provide proof of legal presence in the United States, but who meet California DMV requirements and are able to provide proof of identity and California residency."), *with* ID Cards, Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driverlicenses-identification-cards/identificationid-cards/ (last visited Sept. 10, 2025) (requiring a social security number for an identification card). | Concede in part, deny in part. Defendants concede that the allegation in this paragraph is a true statement of California law. Defendants deny that the factual allegation is material when Rosa does not claim to lack lawful immigration status or lawful presence in the United States. | *Compare* AB 60 Driver's Licenses, Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driverlicenses- identification-cards/assembly-billab- 60-driver-licenses/ (last visited Sept. 10, 2025) ("AB 60 driver's licenses are for individuals who are unable to provide proof of legal presence in the United States, but who meet California DMV requirements and are able to provide proof of identity and California residency."), *with* ID Cards, Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driverlicenses-identification-cards/identificationid- cards/ (last visited Sept. 10, 2025) (requiring a social security number for an identification card). *See* ECF No. 9-13, Rosa M. Decl. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any contradictory evidence in the record. | | | |
| 125. Rosa M. was unable to obtain an acceptable state-issued identification because she cannot drive. | Rosa M. Decl. ¶ 5, ECF 9-13. | Concede in part, deny in part. Defendants concede that Rosa M. claims to not know how to drive. Defendants deny that Rosa's lack of knowledge of how to drive is material | Rosa M. Decl. ¶ 5, ECF 9-13. |

|  |  | because it does not appear relevant. Rosa's alleged obstacle to obtaining a driver's license appears less to be the result of the general application of the ID requirements as opposed to Rosa's individualized problems. |  |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any contradictory evidence in the record.

| 126. Rosa M. was required to complete DNA testing and identify a backup caregiver with the approved form of identification before she could be considered for an exception to the new proof of identification requirement. | Rosa M. Decl. ¶¶ 5-7, ECF 9-13. | Concede | Rosa M. Decl. ¶¶ 5-7, ECF 9-13. |
|---|---|---|---|
| 127. After ORR once again amended Policy Guide § 2.2.4. on April 15, 2025, Rosa M. was informed that she needed to provide specific proof of income documentation. | Rosa M. Decl. ¶ 8, ECF 9-13; Amended Complaint ¶ 83; Defs.' Answer ¶ 83. | Concede | Rosa M. Decl. ¶ 8, ECF 9-13; Amended Complaint ¶ 83; Defs.' Answer ¶ 83. |
| 128. Rosa M. was unable to provide the proof of income newly required by ORR but provided a handwritten letter and her bank statements. | Defs.' Answer ¶ 83; Rosa M. Decl. ¶ 8, ECF 9-13. | Concede in part, deny in part. Defendants concede that Rosa M. was unable to provide the proof of income required. Defendants deny that Rosa M. providing a "handwritten letter and bank statements" is a material fact. | Defs.' Answer ¶ 83; Rosa M. Decl. ¶ 8, ECF 9-13. |

| Plaintiffs' Reply: <u>Remains undisputed</u>. Defendants do not cite to any contradictory evidence in the record. | | | |
|---|---|---|---|
| 129. Rosa M.'s request for an exception to the proof of identification and proof of income requirements was submitted on or around April 29, 2025, and her sons were not released until over three weeks later, on May 21, 2025. | Rosa M. Decl. ¶ 9, ECF 9-13; Declaration of Toby Biswas ¶ 23, ECF 21-1 ("Biswas Decl."); Amended Complaint ¶ 85; Defs.' Answer ¶ 85. | Concede | Rosa M. Decl. ¶ 9, ECF 9-13; Declaration of Toby Biswas ¶ 23, ECF 21-1 ("Biswas Decl."); Amended Complaint ¶ 85; Defs.' Answer ¶ 85. |

**Liam W.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 130. Liam W. entered ORR custody in January 2025. | Amended Complaint ¶ 87; Defs.' Answer ¶ 87; Liam W. Decl. ¶ 3. | Concede | Amended Complaint ¶ 87; Defs.' Answer ¶ 87; Liam W. Decl. ¶ 3. |
| 131. Liam W. was born in 2010 and is 15 years old. | Amended Complaint ¶ 14; Defs.' Answer ¶ 14; Liam W. Decl. ¶ 2. | Concede | Amended Complaint ¶ 14; Defs.' Answer ¶ 14; Liam W. Decl. ¶ 2. |
| 132. Liam W is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 14; Defs.' Answer ¶ 14. | Concede in part, deny in part. Defendants concede that Liam was a UAC when he was in ORR custody. Defendants deny the proposition that he is and was a UAC "at all relevant times" is a fact because that proposition is a legal argument and conclusion. | Amended Complaint ¶ 14; Defs.' Answer ¶ 14. |
| Plaintiffs' Reply: Defendants do not challenge the material facts that Liam was a UAC when he was in ORR custody, or that he was in custody at the time of filing his complaint. *See* ¶ 133, *infra*. | | | |

| | | | |
|---|---|---|---|
| 133. Plaintiff Liam W. in ORR custody at a shelter in New York at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 14; Defs.' Answer ¶ 14. | Concede | Amended Complaint ¶ 14; Defs.' Answer ¶ 14. |
| 134. Liam W.'s mother Sofia W. submitted a sponsorship application to ORR on or around January 15, 2025. | Biswas Decl. ¶ 24, ECF 21-1; Sofia W. Decl. ¶ 3, ECF 9-14. | Concede | Biswas Decl. ¶ 24, ECF 21-1; Sofia W. Decl. ¶ 3, ECF 9-14. |
| 135. Prior to March 7, 2025, Liam's mother Sofia W. provided a copy of her passport as proof of identification, and she and her household members completed fingerprinting and had a positive home study. | Sofia W. Decl. ¶¶ 4-6, ECF 9-14. | Concede | Sofia W. Decl. ¶¶ 4-6, ECF 9-14. |
| 136. After ORR amended Policy Guide 2.2.4. on March 7, 2025, Sofia W was told that her foreign passport was no longer an acceptable form of identification and she and her adult daughters and nephew required new forms of identification. | Sofia W. Decl. ¶ 7, ECF 9-14. | Concede | Sofia W. Decl. ¶ 7, ECF 9-14. |
| 137. Neither Sofia nor her household members could obtain an acceptable form of identity document in their state of Florida because of their immigration status. | Sofia W. Decl. ¶ 7, ECF 9-14; Biswas Decl. ¶ 24, ECF 21-1. | Concede in part, deny in part. Defendants concede that Sofia and her household members failed to provide ORR with an acceptable form of identity document. Defendants deny the proposition that their failure is "because of their immigration status" is a | Sofia W. Decl. ¶ 7, ECF 9-14; Biswas Decl. ¶ 24, ECF 21-1. Angelica-00000005 (identifying an "ID card issued by federal, U.S., state, *or* local government agencies or entities, provided that it contains a photograph or information such as a name, |

| | | material fact because it appears to be an unreasonable reference from Sofia's vague assertion that a Florida Department of Motor Vehicles people allegedly told her that she lacked the "right immigration status" to obtain a driver's license. Moreover, it is an unreasonable inference that her immigration status prevented from obtaining an identity document in Florida when the proof of identity document requirements can be satisfied with "ID card issued by federal, U.S., state, *or* local government agencies or entities, provided that it contains a photograph or information such as a name, date or [sic] 'birth, gender, height, eye color, and address." | date or [sic] 'birth, gender, height, eye color, and address" as an acceptable form of ID under the March 2025 ID requirements (emphasis added)). |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any contradictory evidence in the record.

The evidence Defendants cite to states, "On May 2, 2025, Liam's mother withdrew from the sponsorship process. Neither she nor her household members could obtain an acceptable form of identity document in their state of Florida." To the extent that Defendants are insinuating that Sofia could obtain a local government-issued compliant ID, Defendants have not submitted evidence that any local government agencies provide compliant identification to individuals without immigration status, much less that Sofia lived in a local jurisdiction where such an identification document is available. Accordingly, it does not support Defendants' assertion.

| 138. Sofia W. was told that if her adult daughters and nephew could not obtain qualifying identification, Sofia would have to stop living with them to sponsor Liam. | Sofia W. Decl. ¶ 7, ECF 9-14. | Defendants deny that this factual allegation is material. Plaintiffs are allegedly making a programmatic challenge to the identity document and income requirements and the Interim Final Rule. To the extent that their individual circumstances are relevant, they are only relevant to explain how the prospective sponsors allegedly could not successfully sponsor Plaintiffs. Individualized disputes with case managers thus are irrelevant to the general application of the challenged policies. | N/A |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not dispute this fact. | | | |

| 139. Until this court issued a preliminary injunction, Liam W.'s release to his mother did not move forward because his mother and adult sisters and cousin could not obtain qualifying identification. | Liam W. Decl. ¶ 7; Sofia W. Decl. ¶ 7, ECF 9-14; Biswas Decl. ¶ 24, ECF 21-1. | This is not a fact; this alleged causal connection between the entry of the preliminary injunction and Liam's release is a characterization of the allegation contained in Paragraph 140. | N/A |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| 140. After the Court's June 9, 2025, preliminary injunction, ORR reconsidered Sofia W.'s sponsorship application and approved Liam's release to his mother on August 5, 2025. | Amended Complaint ¶ 91; Defs.' Answer ¶ 91. | Concede | Amended Complaint ¶ 91; Defs.' Answer ¶ 91. |
|---|---|---|---|

**Leo B.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 141. Leo B. first entered ORR custody in February 2023. | Amended Complaint ¶ 93; Defs.' Answer ¶ 93. | Concede | Amended Complaint ¶ 93; Defs.' Answer ¶ 93. |
| 142. ORR approved Leo B.'s sister as his sponsor and released Leo in March 2023. | Amended Complaint ¶ 93; Defs.' Answer ¶ 93; Biswas Decl. ¶ 25, ECF 21-1. | Concede | Amended Complaint ¶ 93; Defs.' Answer ¶ 93; Biswas Decl. ¶ 25, ECF 21-1. |
| 143. Leo B. re-entered ORR custody in March 2025. | Amended Complaint ¶ 95; Defs.' Answer ¶ 95. | Concede | Amended Complaint ¶ 95; Defs.' Answer ¶ 95. |
| 144. Leo B. was born in 2007 and was 17 years old when he re-entered ORR custody in 2025. | Amended Complaint ¶¶ 15, 95; Defs.' Answer ¶¶ 15, 95. | Concede | Amended Complaint ¶¶ 15, 95; Defs.' Answer ¶¶ 15, 95. |
| 145. Leo B. attended high school in Georgia prior to re-entering ORR custody. | Leo B. Decl. ¶¶ 6, 11, ECF 9-10. | Concede in part, deny in part. Defendants concede that Leo B. re-entered ORR custody. Defendants deny the materiality of the factual allegation that Leo B. attended high school in Georgia. | Leo B. Decl. ¶¶ 6, 11, ECF 9-10. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| | | | |
|---|---|---|---|
| 146. Leo's sister was ineligible to sponsor Leo again because she was unable to provide identification newly required under the March 7, 2025, revision of ORR Policy Guide § 2.2.4. | Biswas Decl. ¶ 25, ECF 21-1; Leo B. Decl. ¶¶ 8-9, ECF 9-10. | Concede | Biswas Decl. ¶ 25, ECF 21-1; Leo B. Decl. ¶¶ 8-9, ECF 9-10. |
| 147. As of May 6, 2025, Leo had no available potential sponsor. | Biswas Decl. ¶ 25, ECF 21-1. | Concede | Biswas Decl. ¶ 25, ECF 21-1. |
| 148. As of the date of the initial Complaint on May 8, 2025, Leo was an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. | Concede | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. |
| 149. Plaintiff Leo B. was in ORR custody at a shelter in California at the time of the initial Complaint on May 8, 2025. | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. | Concede | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. |
| 150. ORR released Leo to a short-term shelter in late June 2025, shortly before his 18th birthday. | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. | Concede | Amended Complaint ¶ 15; Defs.' Answer ¶ 15. |

**Xavier L.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 151. Plaintiff Xavier L. and his 13-year-old sister entered ORR custody in December 2024. | Amended Complaint ¶ 99; Defs.' Answer ¶ 99. | Concede | Amended Complaint ¶ 99; Defs.' Answer ¶ 99. |
| 152. Xavier was born in 2007 and was 17 years old while in ORR custody. | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. | Concede | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |
| 153. Prior to March 7, 2025, Xavier's L.'s mother Ximena L. completed an application to sponsor Xavier and his younger sister, provided a copy of her passport as proof of identity, and completed a fingerprint-based background check and a positive home study. | Ximena L. Decl. ¶ 6, ECF 9-15. | Concede in part. Defendants concede the factual allegations in this paragraph except that allegation that there was a "positive home study" finding. | Ximena L. Decl. ¶ 6, ECF 9-15. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any evidence to contradict Ximena's statement that she was told that "everything looked good and I had a positive result." *See* Ximena L. Decl. ¶ 6, ECF 9-15. Any contradictory evidence would be in Defendants' possession. | | | |

| | | | |
|---|---|---|---|
| 154. The forms Ximena L. completed as part of the sponsorship application stated that the information would not be used for immigration enforcement purposes. | Ximena L. Decl. ¶ 5, ECF 9-15. | Defendants deny that this factual allegation is material because it appears irrelevant. Though Plaintiffs' theory of Xavier's injury is that Ximena's partner was afraid to provide documents relevant to the proof of income requirements, there is no evidence or allegation that Ximena's partner was even aware of this statement in the forms such that one could reasonable infer that he had relied on it. | Ximena L. Decl. ¶ 5, ECF 9-15. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record.

The evidence Defendants cite to does not support Defendants' assertion. Ximena L. expressly mentions that forms she completed stated that they would not be used for immigration enforcement purposes and that "[w]ith this promise of confidentiality, my partner also sent his information." *See* Ximena L. Decl. ¶ 5, ECF 9-15.

| | | | |
|---|---|---|---|
| 155. Prior to March 2025, Ximena L.'s partner also submitted his personal information to ORR as part of the sponsorship process. | Ximena L. Decl. ¶¶ 5-7, ECF 9-15. | Defendants deny this allegation. The cited paragraphs in Ximena L.'s declaration do not clearly indicate that her partner provided personal information to ORR. Ximena asserts in Paragraph 10 that her partner does not want to give "anything more" to the U.S. government, but it is unclear whether that phrase means any more information than he | Ximena L. Decl. ¶¶ 5-7, 10 ECF 9-15. |

| | | already submitted or anything in addition to the proof of income requirements that Ximena's partner was allegedly unable to provide documentary evidence for. | |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any contradictory evidence in the record or submit evidence regarding what Ximena's partner submitted to ORR.

The evidence Defendants cite to does not support Defendants' assertion because Ximena L.'s declaration states that her partner also sent his information when she completed forms as part of the sponsorship process. *See* Ximena L. Decl. ¶¶ 5-7, 10 ECF 9-15.

| 156. After ORR amended Policy Guide 2.2.4. on March 7, 2025, Ximena was informed that her foreign passport was no longer an acceptable form of identification. | Amended Complaint ¶ 102; Defs.' Answer ¶ 102; Ximena L. Decl. ¶ 7, ECF 9-15. | Concede | Amended Complaint ¶ 102; Defs.' Answer ¶ 102; Ximena L. Decl. ¶ 7, ECF 9-15. |
|---|---|---|---|
| 157. Ximena L. was required to apply for a new state identification to meet ORR's new identification requirements, which took several weeks. | Ximena Decl. ¶¶ 7-8, ECF 9-15. | Concede in part, deny in part. Defendants concede that Ximena alleges that she sought to satisfy the ID requirements by procuring state-issued identity documents and that she obtained an Illinois ID after several weeks. Defendants deny the allegation that Ximena was "required" to apply for this specific identification because, even in Ximena's account, the state-issued identification was a suggestion of one form of | Ximena Decl. ¶¶ 7-8, ECF 9-15 (alleging that a "case manager" told Ximena that Ximena had to provide a "United States photo-ID with my current address on it – like an ID from the state"). |

| | | identity document that could satisfy the ID requirement. | |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.  Defendants do not deny the fact that Ximena's sponsorship process was delayed by several weeks at least due to the requirement that she seek a new form of state (or local) government-issued identification, defined for her as something "like an ID from the state". Defendants do not identify any alternative acceptable form of identification Ximena was eligible to obtain.

| 158. Despite providing information to ORR prior to March 2025, Ximena L.'s partner was too afraid to submit proof of income information newly required in April 2025 for fear that ORR would share his information with immigration officials. | Ximena L. Decl. ¶¶ 5-7, 10 ECF 9-15. | Concede in part, deny in part. Defendants concede that Ximena claims that her partner declined to provide proof of income information out of fear. Defendants deny that Ximena L.'s partner provided information to ORR prior to March 2025. | Ximena L. Decl. ¶¶ 5-7, 10 ECF 9-15. *See* Defendants' Response to Paragraph 155. |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not cite to any evidence to support their denial, even though the relevant information is in Defendants' possession.

| 159. Ximena L. was unable to provide specific proof of income documentation newly required by ORR. | Ximena Decl. ¶ 10, ECF 9-15. | Concede | Ximena Decl. ¶ 10, ECF 9-15. |
|---|---|---|---|
| 160. Xavier ultimately pursued sponsorship with his aunt instead of his mother because his aunt had the proof of identification and proof of income required by ORR. | Ximena Decl. ¶ 9, ECF 9-15. | Concede to the extent that Ximena L cited her inability to satisfy the identity document and proof of income requirements as her reason for withdrawing her sponsorship application. | ECF No. 21-1, Biswas Decl. ¶ 26. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| 161. Plaintiff Xavier L. was in ORR custody at a shelter | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. | Concede | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| in New York at the time of the initial Complaint on May 8, 2025. | | | |
| 162. When he was in ORR custody, Xavier L. was an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. | Concede | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |
| 163. Xavier L. was released to his aunt in June 2025. | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. | Concede | Amended Complaint ¶ 16; Defs.' Answer ¶ 16. |

**Mateo N.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 164. Mateo N. entered ORR custody in May 2025 and is currently detained by ORR at a shelter in New York. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17. | Concede | Amended Complaint ¶ 17; Defs.' Answer ¶ 17. |
| 165. Mateo N. is 17 years old. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17; Mateo N. Decl. ¶ 2. | Concede | Amended Complaint ¶ 17; Defs.' Answer ¶ 17; Mateo N. Decl. ¶ 2. |
| 166. Mateo N. is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 17; Defs.' Answer ¶ 17. | Concede in part, deny in part. Defendants concede that Mateo was a UAC when he was in ORR custody. Defendants deny that the proposition that he is and was a UAC "at all relevant times" is a fact because that proposition is a legal argument and conclusion. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17. |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. *See* Defs.' Answer ¶ 17 (stating "Admit" in response to the allegation, "Mateo is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2)."). | | | |
| 167. Mateo N.'s brother Steven N. promptly completed a sponsorship application and provided ORR with a copy of his U.S. passport. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 6, ECF 56-3. | Concede in part, deny in part. Defendants concede that Steven N. applied to sponsor Mateo N. Defendants deny that the proposition that Steven N. "promptly completed a sponsorship application" is a fact because the word "promptly" is a characterization of Steven N.'s actions, not a fact. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶¶ 6, 9 (reflecting that Steven N. acknowledges that he is "missing" qualifying identity documents for his wife), ECF 56-3. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.<br><br>Defendants cite to evidence that does not support their assertions. ¶ 6 of Steven N.'s declaration states, "I began the sponsorship process right away when the case manager from the shelter contacted me in late May 2025," and ¶ 9 mentions that Steven N. was only one missing document--"an acceptable form of ID from [his] wife." | | | |
| 168. Steven N. lives in Massachusetts with his wife and two young daughters. | Steven N. Decl. ¶ 2-3, ECF 56-3. | Concede in part, deny in part. Defendants concede that Steven N. lives in Massachusetts with his wife. Defendants deny that the fact that Steven N. may have two young daughter is material when Mateo N.'s claim is based on the alleged failure of Steven N's wife, not Steven N's daughters, to satisfy the identity document requirements. | Steven N. Decl. ¶ 2-3, ECF 56-3. |

| Plaintiffs' Reply: <u>Remains undisputed</u>. Defendants do not challenge the material fact. | | | |
|---|---|---|---|
| 169. Steven N.'s wife submitted her foreign passport to ORR as proof of identification. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 8, ECF 56-3. | Concede | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 8, ECF 56-3. |
| 170. Steven N. and his wife each completed fingerprint-based background checks and a positive home study in July 2025. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 8, ECF 56-3. | Concede | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Steven N. Decl. ¶ 8, ECF 56-3. |
| 171. Mateo N. and Steven N. completed DNA testing showing they were biologically related. | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Mateo N. Decl. ¶ 6; Steven D. Decl. ¶ 7, ECF 56-3. | Concede | Amended Complaint ¶ 109; Defs.' Answer ¶ 109; Mateo N. Decl. ¶ 6; Steven D. Decl. ¶ 7, ECF 56-3. |
| 172. ORR informed Steven that his sponsorship application cannot proceed until his wife provides a form of identification acceptable under ORR's post-March 2025 rules. | Amended Complaint ¶ 110; Defs. Answer ¶ 110; Steven D. Decl. ¶ 9, ECF 56-3. | Concede | Amended Complaint ¶ 110; Defs. Answer ¶ 110; Steven D. Decl. ¶ 9, ECF 56-3. |
| 173. Massachusetts permits individuals to obtain a driver's license without proof of lawful immigration status but requires proof of lawful presence to obtain a state identification card. | *Compare* Massachusetts Registry of Motor Vehicles, Standard Class D or M Driver's License Documents Checklist, https://www.mass.gov/doc/standard-class-dor- m-drivers-license-documents-checklistenglish/ download (no requirement for proof of lawful presence), *with* REAL ID, | Concede in part, deny in part. Defendants concede that Massachusetts requires evidence of lawful immigration status to qualify for a state identification card. Defendants deny, however, that this fact is relevant when Steven N. or Steven N's wife herself does not claim to lack | *Compare* Massachusetts Registry of Motor Vehicles, Standard Class D or M Driver's License Documents Checklist, https://www.mass.gov/doc/standard-class-dor- m-drivers-license-documents-checklistenglish/ download (no requirement for proof of lawful presence), *with* REAL ID, |

|  | Standard CDL, and Standard ID Card Documents Checklist, https://www.mass.gov/doc/standard-mass- id-documents-checklist/download (requiring proof of lawful presence). | lawful immigration status or evidence thereof. | Standard CDL, and Standard ID Card Documents Checklist, https://www.mass.gov/doc/standard-mass- id-documents-checklist/download (requiring proof of lawful presence). |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| 174. Steven's wife has not yet been able to obtain qualifying identification because she is not eligible for a Massachusetts state identification card and needs to pass a driving test to get a driver's license. | Amended Complaint ¶ 110; Defs. Answer ¶ 110; Steven N. Decl. ¶ 8, ECF 56-3. | Defendants lack sufficient information to concede or deny this factual allegation. The only record evidence that Steven N's wife had to apply for a Massachusetts driver's license is a vaguely described incident in which Steven N and his wife go to an unknown place and are told by unknown people (only identified as "they") that she "could not just get an ID card." | Amended Complaint ¶ 110; Defs. Answer ¶ 110; Steven N. Decl. ¶ 8, ECF 56-3. |
|---|---|---|---|

**Plaintiffs' Reply:** <u>Remains undisputed at the time alleged.</u> On December 8, 2025, Plaintiffs informed Defendants that it is Plaintiffs' understanding that Mateo N.'s sponsorship application is now complete and that Steven N.'s wife was finally able to obtain a Massachusetts driver's license.

| | | | |
|---|---|---|---|
| 175. ORR refuses to release Mateo to his brother because his brother's wife, a household member, is unable to provide the documents required by the updated ORR Policy Guide Section 2.2.4. | Amended Complaint ¶ 17; Defs.' Answer ¶ 17; Steven N. Decl. ¶ 9, ECF 56-3. | Concede | Amended Complaint ¶ 17; Defs.' Answer ¶ 17; Steven N. Decl. ¶ 9, ECF 56-3. |

**Yair G.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 176. Yair G. entered ORR custody in May 2025. | Amended Complaint ¶ 18; Defs.' Answer ¶ 18. | Concede | Amended Complaint ¶ 18; Defs.' Answer ¶ 18. |
| 177. Yair G. is in ORR custody at a shelter in New York. | Amended Complaint ¶ 18; Defs.' Answer ¶ 18; Yair G. Decl. ¶ 4, ECF 56-4. | Concede | Amended Complaint ¶ 18; Defs.' Answer ¶ 18; Yair G. Decl. ¶ 4, ECF 56-4. |
| 178. Yair G. is 17 years old. | Amended Complaint ¶ 18; Defs.' Answer ¶ 18; Yair G. Decl. ¶ 4, ECF 56-4. | Concede | Amended Complaint ¶ 18; Defs.' Answer ¶ 18; Yair G. Decl. ¶ 4, ECF 56-4. |
| 179. Yair G. is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 18; Defs.' Answer ¶ 18 | Concede in part, deny in part. Defendants concede that Yair was a UAC when he was in ORR custody. Defendants deny that the proposition that he is and was a UAC "at all relevant times" is a fact because that proposition is a legal argument and conclusion. | Amended Complaint ¶ 18; Defs.' Answer ¶ 18 |
| **Plaintiffs' Reply:** Remains undisputed. *See* Defs.' Answer ¶ 18 ((stating "Admit" in response to the allegation, "Yair is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2).") | | | |

| | | | |
|---|---|---|---|
| 180. Yair G.'s sister Milagro G. completed a sponsorship application, provided her foreign passport as proof of identification, and completed a fingerprint-based background check. | Amended Complaint ¶ 115; Defs.' Answer ¶ 115; Milagro G. Decl. ¶¶ 5-6, ECF 56-5. | Concede in part. | Amended Complaint ¶ 115; Defs.' Answer ¶ 115; Milagro G. Decl. ¶¶ 5-6, ECF 56-5. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.  Defendants conceded this fact in their Answer.  *See* Defs.' Answer ¶ 115 (answering "admit" to "Milagro completed a sponsorship application and provided a copy of her passport from her country of origin as proof of her identity. She also completed a fingerprint-based background check in July 2025"). | | | |
| 181. After Milagro G. completed fingerprinting in July 2025, ORR informed her that she could not move forward with her sponsorship application for Yair without a form of identification from her home state. | Amended Complaint ¶ 115; Defs.' Answer ¶ 115; Milagro G. Decl. ¶¶ 5-6, ECF 56-5. | Concede | Amended Complaint ¶ 115; Defs.' Answer ¶ 115; Milagro G. Decl. ¶¶ 5-6, ECF 56-5. |

| | | | |
|---|---|---|---|
| 182. Milagro G. is unable to obtain any of the types of identification documents newly required by ORR since March 2025 because of her immigration status. | Amended Complaint ¶ 116; Defs.' Answer ¶ 116; Milagro G. Decl. ¶ 6, ECF 56-5. | Concede in part. Defendants concede that Milagro has been unable to obtain any of the types of identification documents newly required by ORR since March 2025. Defendants deny that the assertion that Milagro was unable to acquire those documents "because of her immigration status" is a fact because it is a legal argument and conclusion. To the extent that a response is required, Defendants lack sufficient information to concede or deny whether Milagro's failure is due to her immigration status when Milagro does not explain in her own declaration why she cannot obtain the necessary identity documents. | Amended Complaint ¶ 116; Defs.' Answer ¶ 116; Milagro G. Decl. ¶ 6, ECF 56-5. |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. The evidence Defendants cite to does not support their assertion, as Milargo G's declaration states "[M]y brother's case worker told me that I could not be a sponsor unless I provided a different form of identification." *See* Milagro G. Decl. ¶ 6, ECF 56-5.

| | | | |
|---|---|---|---|
| 183. Yair G.'s case manager told Milagro to find another family member with the required form of identification to sponsor Yair but Milagro does not have other family members with the right forms of identity document. | Amended Complaint ¶ 117; Defs.' Answer ¶ 117; Milagro G. Decl. ¶ 8, ECF 56-5. | Defendants deny that this factual allegation, even if true, is material when Plaintiffs are making a programmatic challenge to the identity document and proof of income requirements rather than a challenge to the application of those requirements in specific individual cases. Moreover, none of the Plaintiffs are alleging that they were injured as a result of such alleged advice. | Amended Complaint ¶ 117; Defs.' Answer ¶ 117; Milagro G. Decl. ¶ 8, ECF 56-5. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 184. Yair G. pursued sponsorship with Milagro's friend because he does not have any family members with newly required forms of identification. | Amended Complaint ¶ 117; Defs.' Answer ¶ 117; Milagro G. Decl. ¶ 8-9, ECF 56-5; Yair G. Decl. ¶¶ 7-10, ECF 56-4. | Defendants lack sufficient information to concede or deny Yair's reasons for pursuing sponsorship with Milagro's friend. | Amended Complaint ¶ 117; Defs.' Answer ¶ 117; Milagro G. Decl. ¶ 8-9, ECF 56-5; Yair G. Decl. ¶¶ 7-10, ECF 56-4. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

**David D.**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 185. David D. entered ORR custody in May 2025. | ECF No. 53, Answer to First Amended Complaint ¶ 120. | Concede | ECF No. 53, Answer to First Amended Complaint ¶ 120. |
| 186. David D. is in ORR custody at a shelter in California. | Amended Complaint ¶ 19; Defs.' Answer ¶ 19; David D. Decl. ¶¶ 2-3, ECF 56-6. | Deny. David was discharged from ORR custody on September 16, 2025. | ECF No. 63-1, David D.'s Discharge Notification at 2. |
| 187. David D. is 14 years old. | Amended Complaint ¶ 19; Defs.' Answer ¶ 19; David D. Decl. ¶ 2, ECF 56-6. | Concede | Amended Complaint ¶ 19; Defs.' Answer ¶ 19; David D. Decl. ¶ 2, ECF 56-6. |
| 188. David D. is and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2). | Amended Complaint ¶ 19; Defs.' Answer ¶ 19. | Concede in part, deny in part. Defendants concede that David was a UAC when he was in ORR custody. Defendants deny that the proposition that he is and was a UAC "at all relevant times" is a fact because that proposition is a legal argument and conclusion. | Amended Complaint ¶ 19; Defs.' Answer ¶ 19. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. *See* Defs.' Answer ¶ 19 (stating "Admit" in response to the allegation, "David is, and at all relevant times was, an unaccompanied child within the meaning of 6 U.S.C. § 279(g)(2).") | | | |
| 189. David D.'s mother Isabel D. completed an application to sponsor David, provided her consular identification card as proof of identification, and completed a fingerprint-based background check and DNA testing. | Amended Complaint ¶ 121; Defs.' Answer ¶ 121; Isabel D. Decl. ¶ 3, ECF 56-7. | Concede | ECF No. 53, Answer to First Amended Complaint ¶ 121. |

| | | | |
|---|---|---|---|
| 190. When she began the application process, Isabel D. lived with other members of her family who lacked U.S-issued identification. | Isabel D. Decl. ¶ 5, ECF 56-7. | Defendants deny that this factual allegation is material when it appears to be irrelevant to David D.'s claim. His claim is based on his mother Isabel D. being unable to satisfy the identity document requirements, not on the alleged failure of the other family members to satisfy those requirements. Furthermore, the problem posed by this alleged failure is moot when Plaintiffs allege that Isabel D. ended up moving to a new apartment where those family members would not be part of the household to which David D would be released. Moreover, neither David nor Isabel allege that David spent additional time in ORR custody while Isabel was in the process of moving. | Isabel D. Decl. ¶ 5, ECF 56-7. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants concede that David remained in custody throughout Isabel's attempts to sponsor him, until he was finally released to her. *See* ¶¶ 186, 197. | | | |

| | | | |
|---|---|---|---|
| 191. Isabel D. had to move to a new apartment to continue the sponsorship process. | Isabel D. Decl. ¶ 5, ECF 56-7. | Defendants deny that this factual allegation is material when it appears to be irrelevant to David D.'s claim. His claim is based on his mother Isabel D. being unable to satisfy the identity document requirements, not on the alleged failure of the other household members to satisfy those requirements. Defendants also deny Plaintiffs' assertion that Isabel "had to move" is a fact because it is legal argument and conclusion and is a characterization of the fact that she moved, not a fact itself. | Isabel D. Decl. ¶ 5, ECF 56-7. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. The evidence Defendants cite to does not support their assertion, as it states, "I lived with other members of my family, but I had to move to a new apartment because they were not able to provide a United States identification either." *See* Isabel D. Decl. ¶ 5, ECF 56-7. | | | |
| 192. After Isabel D. moved, her new housemate completed a fingerprint-based background check and provided identification acceptable to ORR. | Amended Complaint ¶ 122; Defs.' Answer ¶ 122; Isabel D. Decl. ¶ 5, ECF 56-7. | Concede | Amended Complaint ¶ 122; Defs.' Answer ¶ 122; Isabel D. Decl. ¶ 5, ECF 56-7. |
| 193. ORR conducted a home study of Isabel D.'s new apartment in June 2025, which was positive. | Amended Complaint ¶ 122; Defs.' Answer ¶ 122; Isabel D. Decl. ¶ 5, ECF 56-7. | Concede | ECF No. 53, Answer to First Amended Complaint ¶ 122. |

| | | | |
|---|---|---|---|
| 194. Isabel D. is unable to obtain a state-issued identification because she does not know how to drive. | Isabel D. Decl. ¶¶ 4, 9, ECF 56-7. | This is not a fact; this legal argument and conclusion. To the extent that a response is required, Defendants deny this allegation is material to Plaintiffs' general assertion that potential sponsors who lack lawful immigration status may not be able to obtain qualifying identity documents because Isabel does not claim to lack lawful immigration status. | See ECF No. 58, Plaintiffs' Motion for Summary Judgment at 28 n.7 ("Although some states like California and Massachusetts permit individuals to obtain a driver's license without proof of lawful status, they still require lawful presence to obtain a regular state identification card. PSSUMF ¶¶ 124, 173. This disqualifies sponsors such as Isabel D. and Rosa M. who cannot drive. PSSUMF ¶¶ 125, 194.") |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not contest Isabel's statement that she cannot obtain a qualifying State identification. Isabel D. Decl. ¶ 4. The evidence Defendants cite to does not support their assertion, as it states that certain states may require lawful presence to obtain a state ID card. | | | |
| 195. On July 31, 2025, Isabel attended an appointment at a federal government office to present her identification to an ORR official in person. | Amended Complaint ¶ 124; Defs.' Answer ¶ 124; Isabel D. Decl. ¶ 7, ECF 56-7. | Concede | Amended Complaint ¶ 124; Defs.' Answer ¶ 124; Isabel D. Decl. ¶ 7, ECF 56-7. |
| 196. David D.'s case was submitted to ORR headquarters for an exception to the new proof of identification requirement at the beginning of August. | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Defs.' Answer ¶ 125. | Concede | Isabel D. Decl. ¶¶ 7-8, ECF 56-7; Defs.' Answer ¶ 125. |

| 197. Isabel D.'s request for an exception to the new identification requirements was pending for over five weeks at ORR headquarters before an exception was granted on or around September 10, 2025. | Defs.' Answer ¶ 125; Isabel D. Decl. ¶¶ 7-8, ECF 56-7. | Concede in part, deny in part. Defendants concede that Isabel D's exception request was granted. Defendants deny that the request was granted on September 10, 2025. The request was granted on September 8, 2025. | ECF No. 63-1, David D.'s Discharge Notification at 2. |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact that Isabel D.'s request was pending for over five weeks and do not assert that Isabel was timely notified of the exception decision. David D. was not released until September 16, 2025. ECF No. 63-1, David D.'s Discharge Notification at 2. | | | |

**Immigrant Defenders Law Center ("ImmDef")**

| Plaintiffs' Alleged Undisputed Material Fact | Plaintiffs' Support | Defendants' Response | Defendants' Support |
|---|---|---|---|
| 198.  One of ImmDef's primary activities, and work that is central to its mission is providing zealous, competent counsel to unaccompanied children in their immigration cases. | Felix Decl. ¶¶ 3-4, 7-17, 22, ECF 10-15. Ex. 1, Felix Suppl. Decl. ¶ 4. | Concede in part, deny in part. Defendants concede that ImmDef represents UAC in removal proceedings. Defendants deny that the proposition that this representation is "one of ImmDef's primary activities, and work that is central to its mission" is a fact because it is a characterization of ImmDef's activities, not a fact. It is also legal argument and conclusion meant to address the Court's concerns about ImmDef's standing in this case being based on a "setback to abstract social interests." | *See* ECF No. 35 at 11 ("To establish organizational injury, an organization must do more than allege diversion of resources or a "setback to the organization's abstract social interests" *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))"). |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 199.  ImmDef's mission and vision is that no immigrant has to face removal proceedings alone. | Felix Decl. ¶ 4, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 4. | Concede in part, deny in part. Defendants concede that ImmDef sincerely believes that "no immigrant has to face removal proceedings alone." Defendants deny that the proposition that this belief is "ImmDef's mission and vision"  is a fact because this belief is a characterization of the belief rather than a fact itself. | Felix Decl. ¶ 4, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 4. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 200.  ImmDef is the largest provider of legal services to unaccompanied children in California. | Felix Decl. ¶ 4, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 4. | Defendants deny that this factual allegation is material because the size of ImmDef is not relevant to ImmDef's assertion of injury. | Felix Decl. ¶ 4, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 4. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 201.  ImmDef currently provides legal services to children housed in seventeen ORR facilities throughout Southern California. | Felix Decl. ¶ 3, ECF 10-15. | Concede. | Felix Decl. ¶ 3, ECF 10-15. |

| | | | |
|---|---|---|---|
| 202. The IFR has impeded ImmDef's ability to provide counsel to all unaccompanied children in the ORR shelters it serves. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 203. The IFR has impeded ImmDef's ability to provide counsel to children who are released from ORR shelters it serves to sponsors who live in ImmDef's service area. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 204. The Policy Guide Section 2.2.4 changes have impeded ImmDef's ability to provide counsel to all unaccompanied children in the ORR shelters it serves. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-25. | This is not a fact; this is legal argument and conclusion. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 205. The Policy Guide Section 2.2.4 changes have impeded ImmDef's ability to provide counsel to children who are released from ORR shelters it serves to sponsors who live in ImmDef's service area. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. | This is not a fact; this is legal argument and conclusion. | N/A |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 206. Children ImmDef represents are routinely remaining in custody far longer because of ORR's new identification and proof of income requirements. | Felix Decl. ¶¶ 7-8; Ex. 1, Felix Suppl. Decl. ¶¶ 5, 13, 14-20. | That is not a fact; that is legal argument. Defendants also reject the characterization of these alleged detention as "routine[]" and "far longer" because they are vague. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Defendants concede that following the implementation of the IFR and document policies, most children's length of custody significantly increased. *See* ¶¶ 84-86, *supra*. | | | |
| 207. Potential sponsors of children in ORR custody have been detained by ICE during the sponsorship process. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 8-9. | Concede in part, deny in part. Defendants concede that ICE has detained potential sponsors during the sponsorship process. Defendants deny that this factual allegation is material when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 8-9. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants concede this fact. | | | |

| | | | |
|---|---|---|---|
| 208. In July 2025, after the IFR permitted ORR to share sponsor immigration status with immigration enforcement agencies, ORR began requiring sponsors to appear for in-person verification of identification at Immigration and Customs Enforcement and Homeland Security Investigation offices. | Ex. 1, Felix Suppl. Decl. ¶ 7. | Defendants deny that this factual allegation is material because it is irrelevant. As written, this factual allegation bases a causal relationship between information sharing and in-person verifications entirely on a *post hoc* fallacy. Furthermore, as written, these alleged sponsors would not necessarily be sponsors for ImmDef's clients. | Ex. 1, Felix Suppl. Decl. ¶ 7. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not deny this fact. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 209. Sponsors have been detained by ICE at in-person ID verification appointments required by ORR. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 8. | This is not a fact; this is argument. To the extent that a response is required, Defendants deny that this factual allegation is material because it is irrelevant. As written, the factual allegation does not establish a causal relationship between the IFR, in-person verifications, and subsequent alleged detentions without relying entirely on a *post hoc* fallacy. Additionally, this factual allegation is irrelevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is | N/A |

| | | not particularized to ImmDef. | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not deny this fact. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 210. Some potential sponsors have declined to attend required in-person ID verification appointments for fear of immigration enforcement at the appointment. | Ex. 1, Felix Suppl. Decl. ¶ 7. | This is not a fact; this is argument. To the extent that a response is required, Defendants deny that this factual allegation is material because it is irrelevant. At most, the factual allegation draws a causal relationship between a generalized fear of immigration enforcement and the alleged withdrawal of sponsorship applications, rather than a causal relationship between Defendants' challenged actions (e.g., the IFR) and those alleged withdrawals. Defendants deny that this factual allegation is relevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | *See* ECF No. 35, Mem. Op. at 11 n.2 ("The plaintiffs also allude more generally to other unaccompanied children having difficulty finding sponsors due to fear of immigration enforcement. Rough Hr'g Tr. at 6. But these generalized assertions based on hearsay, absent more, do not amount to "substantial evidence" establishing the necessary causal relationship, especially since even without the IFR, the threat of information sharing looms large as long as the agency continues the rulemaking process. *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015).") |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 211. Some potential sponsors have withdrawn their applications because of fear of | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 10-11, 19. | This is not a fact; this is argument. To the extent that a response is required, | *See* ECF No. 35, Mem. Op. at 11 n.2 ("The plaintiffs also allude more generally to other |

| | | | |
|---|---|---|---|
| information sharing and enforcement. | | Defendants deny that this factual allegation is material because it is irrelevant. At most, the factual allegation draws a causal relationship between a generalized fear of immigration enforcement and the alleged withdrawal of sponsorship applications, rather than a causal relationship between Defendants' challenged actions (e.g., the IFR) and those alleged withdrawals. Defendants deny that this factual allegation is relevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | unaccompanied children having difficulty finding sponsors due to fear of immigration enforcement. Rough Hr'g Tr. at 6. But these generalized assertions based on hearsay, absent more, do not amount to "substantial evidence" establishing the necessary causal relationship, especially since even without the IFR, the threat of information sharing looms large as long as the agency continues the rulemaking process. *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015).") |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| | | | |
|---|---|---|---|
| 212. Children in ORR custody served by ImmDef have decided to forgo reunification for fear that their sponsors will be targeted by immigration enforcement because of ORR's information-sharing with ICE. | Ex. 1, Felix Suppl. Decl. ¶¶ 10-11. | This is not a fact; this is legal argument and conclusion. Defendants deny that this factual allegation is relevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 213. Children in ORR custody served by ImmDef are experiencing negative mental health effects as a result of the detention of their sponsors during the sponsorship process or stress that their sponsors will be detained because of ORR's information-sharing with ICE. | Ex. 1, Felix Suppl. Decl. ¶¶ 8, 11, 17. | This is not a fact; this is legal argument and conclusion. Defendants also do not know what Plaintiffs mean by "negative mental health effects." Defendants deny that this factual allegation is relevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Nor do Defendants dispute ¶¶ 55 or 79, regarding the 2019 HHS OIG report describing similar harms to children stemming from prolonged detention associated with vetting policies imposed at that time. | | | |

| 214. ORR information-sharing with ICE has significantly increased children's time in ORR custody because it is increasingly difficult for children to be released to sponsors. | Ex. 1, Felix Suppl. Decl. ¶¶ 6, 12. | This is not a fact; this is argument. To the extent that a response is required, Defendants deny that Plaintiffs have provided any evidence in support of this proposition because, as the Court noted in its memorandum opinion on Plaintiffs' motion for a preliminary injunction, Plaintiffs rely on evidence of a "generalized" fear of potential immigration enforcement as opposed to a connection to Defendants' challenged actions in this case. Defendants deny that this factual allegation is relevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | *See* ECF No. 35 at 11 n.2 ("The plaintiffs also allude more generally to other unaccompanied children having difficulty finding sponsors due to fear of immigration enforcement. Rough Hr'g Tr. at 6. But these generalized assertions based on hearsay, absent even without the IFR, the threat of information sharing looms large as long as the agency continues the rulemaking process. *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015).") |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 215. The changes to the Policy Guide have significantly increased children's time in ORR custody because it is increasingly difficult for children to be released to sponsors. | Felix Decl. ¶¶ 7-8, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 14-16, 18-19. | This is not a fact; this is argument. Additionally, Defendants do not know what Plaintiffs mean by the terms "significantly increased" and "increasingly difficult" because they are vague. Defendants deny that this factual allegation is relevant | N/A |

| | | when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 216. Some potential sponsors are unable to complete applications because their alternate caregivers are unable or unwilling to share required information. | Ex. 1, Felix Suppl. Decl. ¶ 12. | This is not a fact; this is argument. Additionally, Defendants do not know what Plaintiffs mean by "some potential sponsors" or "unable." Defendants deny that this factual allegation is relevant when, at most, it appears that Plaintiffs are making this allegation to allege injury to ImmDef, but this factual allegation, as written, is not particularized to ImmDef. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 217. Some potential sponsors have had to move homes because their household members are unable or unwilling to share required information with ORR, leading to delays in cases. | Ex. 1, Felix Suppl. Decl. ¶¶ 13, 17. | This is not a fact; this is argument. Additionally, Defendants do not know what Plaintiffs mean by "some potential sponsors" or "unable." | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants concede an example of this material fact which occurred in David's reunification case. *See* ¶ 191, *supra*. | | | |

| | | | |
|---|---|---|---|
| 218. ImmDef must expend a significantly higher portion of its limited resources to advocate on behalf of detained unaccompanied child clients due to the children's significantly longer stay in ORR custody. | Felix Decl. ¶¶ 8, 12-17, 22, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 20-24. | This is not a fact; this is argument.  To the extent that a response is needed, Defendants deny that this factual allegation is relevant because a "diversion of resources" argument for injury is insufficient to establish standing.  *See* ECF No. 35 at 11.  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). | *See* ECF No. 35, Mem. Op. at 12-13 (finding that ImmDef lacks standing because its theory of injury amounts to "'complaining that the organization's ultimate goal has been made more difficult'" (quoting *New England Anti-Vivisection Soc'y v. U.S. Fish and Wildlife Serv.*, 208 F. Supp. 3d 142, 166 (D.D.C. 2016)).  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 219. Between February and September 2024, 44% of ImmDef's new cases for unaccompanied children were on behalf of detained children, but over that same period in 2025 the proportion is approximately 84%. | Ex. 1, Felix Suppl. Decl. ¶ 24. | This is not a fact; this is argument.  To the extent that a response is needed, Defendants deny that this factual allegation is relevant because a "diversion of resources" argument for injury is insufficient to establish standing.  *See* ECF No. 35 at 11.  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). | *See* ECF No. 35, Mem. Op. at 12-13 (finding that ImmDef lacks standing because its theory of injury amounts to "'complaining that the organization's ultimate goal has been made more difficult'" (quoting *New England Anti-Vivisection Soc'y v. U.S. Fish and Wildlife Serv.*, 208 F. Supp. 3d 142, 166 (D.D.C. 2016)).  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| | | | |
|---|---|---|---|
| 220. It is more time and resource-intensive for ImmDef to represent detained children than non-detained children. | Felix Decl. ¶¶ 13-16, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 24-28, 36-38. | This is not a fact; this is argument. To the extent that a response is needed, Defendants deny that this factual allegation is relevant because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 12-13. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 221. Historically, ImmDef has guaranteed representation to children released from ORR facilities ImmDef serves to sponsors in ImmDef's service area, but ImmDef has had to close intake to these children because they must divert resources to serve detained children. | Ex. 1, Felix Suppl. Decl. ¶ 24. | This is not a fact. Rather, this appears to be a characterization of a factual allegation that ImmDef has secured sponsors for detained UACs. To the extent that a response is needed, Defendants deny that this factual allegation is relevant because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 12-13. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

| | | | |
|---|---|---|---|
| 222. Because children are remaining in custody longer, ImmDef must expedite work for a greater number of detained unaccompanied child clients, diverting attention from other ongoing work. | Felix Decl. ¶¶ 8, 12-17, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 20-24. | This is not a fact; this is argument.  To the extent that a response is needed, Defendants deny that this factual allegation is relevant because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 12-13.  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| | | | |
|---|---|---|---|
| 223. Because of new barriers to release, ImmDef must spend time it had not spent previously responding to inquiries from potential sponsors as well as ORR-subcontracted facility staff regarding the policy and procedures of the new sponsorship requirements. | Felix Decl. ¶ 10, ECF 10-15. | This is not a fact; this is argument. | N/A |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| 224. ImmDef is forced to expend resources, otherwise spent on representing child clients in their immigration cases, to revise know-your-rights presentations and screening materials to counteract the diminished immigration relief available to detained children. | Felix Decl. ¶ 21, ECF 10-15. | This is not a fact; this is argument.  To the extent that a response is needed, Defendants deny that this factual allegation is relevant because a "diversion of resources" argument for injury is insufficient to establish standing.  Defendants also deny Plaintiffs' characterization that ImmDef was "forced" to undertake the actions described in this paragraph. | *See* ECF No. 35 at 11.  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Defendants cite to ECF No. 35 at 11, which discusses the IFR, not ImmDef's standing. | | | |
| 225.  ImmDef is hampered from obtaining release for detained unaccompanied child clients because many children no longer have eligible sponsors. | Felix Decl. ¶¶ 7-9, ECF 10-15; Ex. 1, Felix Suppl. Decl. Felix ¶¶ 6-19. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 226.  Because more sponsors are ineligible or have withdrawn from sponsorship, ImmDef must spend time with more clients than typical to discuss Long-Term Foster Care placement instead of using that time and those resources to pursue immigration relief for clients. | Felix Decl. ¶¶ 7-9, 11, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶¶ 22-23, 34-38. | This is not a fact; this is argument. | N/A |

| | | | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 227. From February to September 2024, representation of children in LTFC comprised approximately 12% of ImmDef's new cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. | Defendants deny that this factual allegation is material because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 11. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record. Defendants cite to ECF No. 35 at 11, which discusses the IFR, not ImmDef's standing. | | | |
| 228. From February to September 2025, representation of children in LTFC had more than doubled to 31% of ImmDef's new cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. | Defendants deny that this factual allegation is material because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 11. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record. Defendants cite to ECF No. 35 at 11, which discusses the IFR, not ImmDef's standing. | | | |
| 229. Representation of children in LTFC is more time and resource-intensive than representation of released children. | Ex. 1, Felix Suppl. Decl. ¶¶ 34-38. | This is not a fact; this is argument. Defendants deny that this factual allegation is material because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 11. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Defendants cite to ECF No. 35 at 11, which discusses the IFR, not ImmDef's standing. | | | |

| | | | |
|---|---|---|---|
| 230. If a child is considering LTFC, ImmDef's contract requires they meet with the child one or more times to discuss their options before the care provider can submit a referral. | Ex. 1, Felix Suppl. Decl. ¶¶ 34-35. | Concede in part, deny in part. Defendants concede that this contractual duty exists. Defendants deny that this factual allegation is material because it appears that, regardless of Defendants' actions, ImmDef is contractually bound to perform the duty described in this paragraph. | Ex. 1, Felix Suppl. Decl. ¶¶ 34-35. |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants concede the underlying fact. | | | |
| 231. From February to September 2024, representation for Voluntary Departure comprised 0.03% of new ImmDef cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. | Defendants deny that this factual allegation is material because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 11. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Defendants cite to ECF No. 35 at 11, which discusses the IFR, not ImmDef's standing. | | | |
| 232. From February to September 2025, representation for Voluntary Departure comprised 6% of new ImmDef cases. | Ex. 1, Felix Suppl. Decl. ¶ 23. | Defendants deny that this factual allegation is material because a "diversion of resources" argument for injury is insufficient to establish standing. | *See* ECF No. 35 at 11. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Defendants cite to ECF No. 35 at 11, which discusses the IFR, not ImmDef's standing. | | | |
| 233. If a child is considering Voluntary Departure, ImmDef attorneys must spend significant additional time counseling the child. | Ex. 1, Felix Suppl. Decl. ¶¶ 31-33. | This is not a fact; this is argument. To the extent that a response is required, Defendants deny that this factual allegation is material | N/A |

| | | because it is irrelevant. Regardless of Defendants' actions, ImmDef attorneys—as the counsel for these clients—would be bound by professional obligation to follow the wishes of their clients.  Thus, Defendants deny that this consequence is an injury and that this consequence is fairly traceable to Defendants' actions. Additionally, Defendants do not know what Plaintiffs mean by "significant." | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 234. If a child chooses Voluntary Departure, ImmDef attorneys are contractually required to offer full scale representation and spend significant additional time on their case. | Ex. 1, Felix Suppl. Decl. ¶ 31. | This is not a fact; this is argument.  To the extent that a response is required, Defendants deny that this factual allegation is material because it is irrelevant. Regardless of Defendants' actions, ImmDef attorneys—as the counsel for these clients—would be bound by professional obligation to follow the wishes of their clients.  Thus, Defendants deny that this consequence is an injury and that this consequence is fairly traceable to Defendants' actions. | N/A |

| | | Additionally, Defendants do not know what Plaintiffs mean by "significant." | |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. Defendants concede above that the existence of a contractual requirement is a fact. *See* ¶ 230, *supra*. | | | |
| 235. Because more sponsors are ineligible or have withdrawn from sponsorship, ImmDef must spend time with more clients than typical to discuss voluntary departure instead of using that time and those resources to pursue immigration relief for clients. | Ex. 1, Felix Suppl. Decl. ¶¶ 22-23, 31-33. | This is not a fact; this is argument. To the extent that a response is required, Defendants deny that this factual allegation is material because it is irrelevant. Regardless of Defendants' actions, ImmDef attorneys—as the counsel for these clients—would be bound by professional obligation to follow the wishes of their clients. Additionally, ImmDef attorneys are also bound by their duties of competence and diligence to discuss all options with their clients so that their clients can make informed decisions. Thus, Defendants deny that this consequence is an injury and that this consequence is fairly traceable to Defendants' actions. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the administrative record. | | | |

| | | | |
|---|---|---|---|
| 236. Because of new barriers to release, ImmDef must spend additional time meeting with its detained unaccompanied child clients to support their mental stability. | Felix Decl. ¶ 10, ECF 10-15; Ex. 1, Felix Suppl. Decl. ¶ 22. | This is not a fact; this is argument. | N/A |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| | | | |
|---|---|---|---|
| 237. Because of children's prolonged detention, ImmDef is hampered from effectively representing its detained unaccompanied child clients because clients struggle to provide necessary information without family support. | Felix Decl. ¶¶ 13, 22, ECF 10-15. | This is not a fact; this is argument. | N/A |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| | | | |
|---|---|---|---|
| 238. Because of children's prolonged detention, ImmDef is hampered from effectively representing its detained unaccompanied child clients because their clients are experiencing mental health impacts that impede their participation in their cases. | Felix Decl. ¶¶ 10, 22, ECF 10-15. | This is not a fact; this is argument. | |

**Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record.

| 239. Because of children's prolonged detention, ImmDef has been forced to divert staff time and resources away from defending released children in their removal proceedings to focus almost entirely on representation of detained children. | Ex. 1, Felix Suppl. Decl. ¶¶ 24-26. | This is not a fact; this is argument. | N/A |
|---|---|---|---|
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |
| 240. Because ImmDef must focus its resources on detained children, many children who would otherwise qualify for ImmDef's services are left unserved. | Ex. 1, Felix Suppl. Decl. ¶ 25-26. | This is not a fact; this is argument. | N/A |
| **Plaintiffs' Reply:** <u>Remains undisputed</u>. Defendants do not challenge the underlying fact or cite to any contradictory evidence in the record. | | | |

Date: December 12, 2025

Respectfully submitted,

/s/ *Mishan Wroe*
Mishan Wroe (admitted *pro hac vice*)
Diane de Gramont (admitted *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, California 94612
(510) 835-8098
mwroe@youthlaw.org
ddegramont@youthlaw.org

Rebecca Wolozin (D.C. Bar No. 144369)
David Hinojosa (D.C. Bar No. 1722329)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, DC 20006
(202) 868-4792
dhinojosa@youthlaw.org
bwolozin@youthlaw.org

Cynthia Liao (admitted *pro hac vice*)
Joel McElvain (D.C. Bar No. 448431)
Skye L. Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
cliao@democracyforward.org
jmcelvain@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*